IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC., | ) |
| PLAINTIFF, | ) **Case No. 2:23-cv-02163-TLP-tmp** |
| | ) |
| | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE CIVIL RIGHTS ACT OF 1871, 42** |
| v. | ) **U.S.C. § 1983** |
| | ) |
| | ) |
| | ) |
| THE STATE OF TENNESSEE; BILL LEE, *in his official and individual capacity as Governor of Tennessee*; JONATHAN SKRMETTI, *in his official and individual capacity as the Attorney General of Tennessee*, | ) ) ) ) ) ) |
| DEFENDANTS | |

## FIRST AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Friends of George's, Inc., by and through its designated attorneys, for its First Amended Complaint alleges as follows:

### I. NATURE OF THE ACTION

1. This action is brought under 42 U.S.C. § 1983 and is premised on the First and Fourteenth Amendments to the United States Constitution.

### II. SUBJECT MATTER AND JURISDICTION

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1343 on the grounds that the claims asserted herein arise under U.S.C. §§ 1983 and 1988.

3. Venue is proper in this Court and Division pursuant to 28 U.S.C. § 1391 on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

### III. THE PARTIES AND PERSONAL JURISDICTION

4. Plaintiff Friends of George's, Inc. is a registered 501(c)(3) non-profit organization based in Memphis, Tennessee. Founded in 2011, Friends of George's is a theatre company that produces drag-centric performances, comedy sketches, and plays.

5. Defendant Bill Lee is the Governor of the State of Tennessee. He is sued in his official and individual capacity. Defendant Lee may be served with process at State Capitol, 1st Floor, 600 Dr. Martin L. King, Jr. Blvd. Nashville, TN 37243.

6. Defendant Jonathan Skrmetti is the Attorney General of the State of Tennessee and as such is responsible for enforcing Tennessee laws. He is sued in his official and individual capacity. Defendant Skrmetti can be served with process at 500 Charlotte Ave, Nashville, TN 37219.

7. Defendant State of Tennessee may be served with process on Jonathan Skrmetti at 500 Charlotte Ave, Nashville, TN 37219.

8. All Defendants are collectively referred to hereinafter as "the State."

### IV. FACTUAL ALLEGATIONS

**Tennessee Legislators Fight to Prevent Family Friendly Drag Show**

9. In October of 2022, Jackson Pride planned to host its third annual pride festival celebrating the diversity of the LGBTQIA community in Jackson and West Tennessee.

10. As a part of the festival, Jackson Pride planned a family friendly, appropriate-for-all ages drag show to be performed in Conger Park in Jackson.

11. Drag is defined as "clothing more conventionally worn by the other sex, especially exaggeratedly feminine clothing, makeup, and hair adopted by a man."[1] Drag is usually performed as entertainment and often includes comedy, singing, dancing, lip-syncing, or all of the above.

12. Drag is not a new art form; nor is it inherently – or even frequently – indecent. Drag has been present in western culture dating back to Ancient Greek theatrical productions, where women were often not permitted to perform onstage or become actors. Instead, male actors would don women's attire and perform the female roles.[2]

13. The earliest productions of William Shakespeare's plays also featured male actors in drag playing the female roles.[3]

14. By the 1800s, "male or female impersonation" was known as "drag."

15. The vaudeville shows of the late 1800s and early 1900s popularized drag, or "female impersonators." [4] One of the most well-known vaudeville female impersonators, Julian Eltinge, made his first appearance on Broadway in drag in 1904.[5]

16. By 1927, drag had become specifically linked with the LGBTQIA community, and by the 1950s, drag performers began entertaining in bars and spaces that specifically catered to

---

[1] *Drag*, OxfordLearnersDictionary.com, https://www.oxfordlearnersdictionaries.com/us/definition/english/drag_1 (last visited March 25, 2023).

[2] Ken Gewertz, *When Men Were Men (and Women, Too)*, The Harvard Gazette (July 17, 2003), https://news.harvard.edu/gazette/story/2003/07/when-men-were-men-and-women-too/

[3] Lucas Garcia, *Gender on Shakespeare's Stage: A Brief History*, Writer's Theatre, (November 21, 2018), https://www.writerstheatre.org/blog/gender-shakespeares-stage-history/

[4] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.

[5] Michael F. Moore, Drag! Male and Female Impersonators on Stage, Screen, and Television: An Illustrated World History, McFarland & Company, 1994.

gay people. In the decades that followed, drag solidified itself as an art form.[6]

17. Although drag is still centered around and holds special historical significance for the LGBTQIA community, the art form is now definitively a part of mainstream culture. One is as likely to find straight people at a drag show as gay people. RuPaul's Drag Race – a drag competition television show – has won seven Emmy Awards and is currently in its fifteenth season. The show has spinoffs in the UK, Australia, Chile, Thailand, Canada, Italy, Spain, and elsewhere.

18. Like all forms of performance art, drag encompasses a vast spectrum of expression. Every drag performer makes unique choices about attire, choreography, comedy, and music, which can range from a performer in a floor-length gown lip-syncing to Celine Dion songs and making G-rated puns, to the Rocky Horror Picture Show, to sexual innuendo and the kind of dancing one could expect to see at a Taylor Swift or Miley Cyrus concert.

19. Modern drag performances typically do not contain nudity. More often than not, drag performers wear more clothing than one would expect to see at a public beach, and many drag shows are intended to be appropriate for all ages.

20. According to Bella DuBalle, the host of the 2022 Jackson Pride drag show, the event was intended to be "family-friendly and appropriate for people of all ages." Still, DuBalle acknowledged that not every parent is comfortable with even G-rated drag, and that families should make the choice that is right for them.[7]

21. In spite of the benign content of the Jackson Pride drag show, some members of the local community took issue with the event being held in a public park. After public backlash, city

---

[6] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.

[7] State Rep, Performer Discuss Controversy of Jackson Pride, WBBJ News, (September 21, 2022) https://www.wbbjtv.com/2022/09/21/state-rep-performer-discuss-controversy-of-jackson-pride-drag-show/

officials and members of the Pride Committee agreed to move the event indoors. But for some people, this still was not enough.[8]

22. Tennessee state Representative Chris Todd, along with state Senator Ed Jackson and members of the First United Methodist Church, filed a lawsuit in Madison County chancery court, asking the court to declare the drag show a public nuisance, and to permanently enjoin the City of Jackson from granting a permit to Jackson Pride organizers. The complaint is attached hereto as **EXHIBIT A**.

23. In the complaint, Plaintiffs argued that a drag show, no matter how benign its contents, is an "adult cabaret," and therefore should not be permitted within 1,000 feet of a church.

24. With the date of the event just around the corner, Jackson Pride agreed to make the event age-restricted to those 18 years of age and older. Jackson Pride maintained that the event was family friendly and appropriate for all ages.[9]

25. In his comments to the press, Rep. Todd stated, "This is not something we agree with and it's not something our children need to be exposed to . . . It's been about protecting the kids in our community from something that is harmful to them. It's not age appropriate."[10]

26. Although Jackson Pride organizers had repeatedly stressed that the drag show was thoroughly vetted to be "family-friendly content" with no lewd or sexual content allowed, Rep. Todd insisted that the drag performances were "clearly meant to groom and recruit children to this

---

[8] Jackson Pride organizer expresses 'joy,' Rep. Todd calls a 'win' with drag show ruling, Jackson Sun, (October 7, 2022), https://www.jacksonsun.com/story/news/2022/10/07/jackson-pride-tn-2022-drag-show-age-18-and-older/69547945007/

[9] *Id.*

[10] *Id.*

5

lifestyle . . .that is child abuse and we will not have that here."[11]

27.     When pressed about how he knew it was child abuse if he had not actually inquired about the show's contents, Rep. Todd repeated, "this type of performance and its content is the child abuse."[12]

28.     Rep. Todd also stated, "I think moving forward, we anticipate that any kind of consideration of a drag queen event be nonexistent, and that they would realize this community is not the place for that."[13]

29.     Rep. Todd's actions in Jackson were an unconstitutional government infringement on speech and expression protected by the First Amendment.

30.     Tennessee already has state laws prohibiting obscenity or indecent exposure in front of minors. Rep. Todd was not seeking to enforce those laws. Instead, he sought to prevent *any* drag entertainment, no matter how G-rated, from being performed in front of children, merely because he personally disagrees with the content.

**In Response to Jackson Pride, Tennessee Legislators Pass a New Law**

31.     After violating the First Amendment rights of Jackson Pride, Rep. Todd "was asked to come up with legislation that would make this much more clear" – that drag performances in front of children are a violation of Tennessee law.

32.     In January of 2023, Rep. Todd introduced House Bill 0009, which would amend T.C.A. § 7-51-1407 to ban any "adult cabaret performance" in front of children that "appealed to the prurient interests" of minors.

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

33. The law was later amended to cross-reference the definition of "harmful to minors" from T.C.A § 39-17-901, which regulates in part the sale and distribution of pornography and other sexually explicit content to minors.

34. When asked on the House floor why this law was necessary if such conduct was already illegal to perform in front of children, Rep. Todd stated that the bill was intended to cover conduct like that which he "dealt with in my own community this past year."[14]

35. When asked on the House floor if he knew of any instances of children being harmed by "adult cabaret performances," Rep. Todd recounted how his lawsuit forced Jackson Pride to move the family-friendly drag show indoors and to apply age restrictions, and explained, "that's exactly how this bill is structured. It doesn't prevent those performances, but it certainly says they must not be held in front of minors, and we intend to uphold that and expect law enforcement across this great state to uphold that principle and to uphold what we pass here in this legislature."[15]

36. Rep. Todd's bill did pass the legislature, and was signed into law by Governor Lee on February 27, 2023.

37. The final text of the bill, which takes effect April 1, 2023, reads as follows:

**T.C.A. § 7-51-1407**

>   (c)(1) It is an offense for a person to perform adult cabaret entertainment:
>
>>   (A) On public property; or
>>
>>   (B) In a location where the adult cabaret entertainment could be viewed by a person who is not an adult.
>
>   (3) A first offense for a violation of subdivision (c)(1) is a Class A misdemeanor, and a

---

[14] 113th General Assembly, 9th Legislative Day, (February 23, 2023) House Floor Session - 9th Legislative Day (granicus.com)

[15] *Id.*

second or subsequent such offense is a Class E felony.

**T.C.A. § 7-51-1401**

(3) "Adult cabaret entertainment":

(A) Means adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901 and that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers; and

(B) Includes a single performance or multiple performances by an entertainer;

**T.C.A § 39-17-901**

(6) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:

(A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;

(B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) Taken as whole lacks serious literary, artistic, political or scientific values for minors;

(2) "Community" means the judicial district, as defined in § 16-2-506, in which a violation is alleged to have occurred.

38. This statute is facially unconstitutional under the First Amendment for several reasons.

39. First, the statute is not content-neutral, and is therefore subject to strict scrutiny. It prohibits protected speech based on the identity of the speaker. *City of Austin v. Reagan Nat'l Adver. Of Austin, LLC.*, 142 S. Ct. 1464, 1471 (2022).

40. "[L]aws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys. Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015).

8

41. There are two possible ways to read the definition of "adult cabaret entertainment," and both interpretations define the prohibited conduct – at least in part – by the identity of the speaker. It is unclear if "adult cabaret entertainment includes:

1) conduct that is harmful to minors, and that separately also includes conduct that features "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers;"

2) *or* if the conduct that is "harmful to minors" *must also include* one of the delineated entertainers.

42. Either reading of the statute is unconstitutional. The first reading of the statute sweeps any performance by a male or female impersonator – regardless of content - into the prohibition. The law "sweeps in mainstream artistic performances" as well as subjects the performer to prosecution based on "the presentation of a single performance." Those two factors are precisely what the Sixth Circuit has held "doomed the statutes . . . which were invalidated by this and other circuit courts" on First Amendment grounds. *Entm't Prods., Inc. v. Shelby Cty.,* 588 F.3d 372, 386 (6th Cir. 2009).

43. Under this reading of the law, a drag queen wearing a mini skirt and a cropped top and dancing in front of children violates this statute, but a Tennessee Titans cheerleader wearing precisely the same outfit doing precisely the same routine does not, because she is not a "female impersonator." Thus, the prohibited speech is defined by the identity of the drag performer – and the message he conveys. That is a content-based restriction of speech protected by the First Amendment.

44. The alternative reading of the statute is no better. If the prohibited conduct *must* include one of the defined performers, then a woman in a dress who publicly performs material

"harmful to minors" cannot be charged under this statute, but a man in a dress engaged in the exact same conduct could be. Once again, the restricted speech is defined in significant part by the speaker, and the message that speaker conveys.

45. Second, the statute is so broad, it is certain to have a chilling effect on protected speech.

46. The law prohibits such performances, "in a location where the adult cabaret entertainment could be viewed by a person who is not an adult."

47. There are no defined "locations" in the law. The prohibition is not limited to commercial establishments or paid performances, which means that a drag performer could be arrested for providing free entertainment at a family member's birthday party held *at that family member's house*, as long as children are present.

48. If a restaurant hosts an 18+ drag brunch, and children walk by and see it through the windows, nothing prevents the drag performers from being charged under this statute.

49. There are no affirmative defenses included in the law, and no exceptions for minors who see drag shows with parental consent.

50. Additionally, T.C.A. § 39-17-901, which defines "harmful to minors" also defines "community" as "the judicial district, as defined in § 16-2-506, in which a violation is alleged to have occurred."

51. This means that there are thirty-one (31) potential definitions of prohibited conduct. There is no way for a performer to know what is and is not specifically prohibited from district to district.

52. There is no way for a citizen of Tennessee to be on notice for what conduct could violate this law – and possibly subject them to felony charges.

53. "The severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images. As a practical matter, this increased deterrent effect, coupled with the risk of discriminatory enforcement of vague regulations, poses greater U.S. Const. amend. I concerns than those implicated by certain civil regulations." *Reno v. ACLU*, 521 U.S. 844, 872 (1997).

54. The law also opens up any establishment – or even private home – that hosts drag shows to police raids, so law enforcement can be certain that no children are present at the event.

55. Indeed, even after Jackson Pride agreed to move their family-friendly drag show indoors and restrict attendance to 18+, Rep. Todd told press that "the event will be carefully monitored by the Jackson Police Department to 'watch for' these violations."[16]

56. The fear of felony charges and the uncertainty about what *could* give rise to those charges will certainly keep citizens of Tennessee from engaging in protected speech – even speech that might fall entirely outside the purview of the statute.

57. The resulting chilling effect has already been felt across the state of Tennessee, particularly by the LGBTQIA community, for whom drag is a central and vital part of their history, culture, and celebration of identity.

58. The organizers of Knoxville Pride stated that they intend to cancel their annual October Pride events, for the safety of their employees.

59. This law, which specifically targets drag performances, threatens to return the LGBTQIA community to the days when they had to hide their identity and their art behind blacked-out windows.

---

[16] Jackson Pride organizer expresses 'joy,' Rep. Todd calls a 'win' with drag show ruling, Jackson Sun, (October 7, 2022).

**This Law Will Violate the Constitutional Rights of Plaintiff Friends of George's, Inc.**

60. The uncertainty about what specific conduct this law prohibits, as well as the threat of police surveillance and felony charges, is precisely what concerns the Plaintiff in this case.

61. Friends of George's, Inc. is a 501(c)3 nonprofit theatre company based in Memphis, Tennessee.

62. Since their founding in 2011, Friends of George's has produced drag-centric performances, comedy sketches, and plays. Their performances are open to all ages.

63. Friends of George's also recognized the LGBTQIA community's growing need for events and activities outside of bars and nightclubs, and specifically sought to provide new drag entertainment alternatives with a focus on quality.[17]

64. Friends of George's next production is scheduled to begin on April 14, 2023, two weeks after the legislation takes effect.

65. Given that Plaintiff cannot identify what conduct is covered by this law or what locations are included in the prohibition, they are reasonably concerned that the 6 performances of their all-ages drag show could subject them to felony charges.

66. If the law takes effect on April 1, Plaintiff will suffer a deprivation of its First Amendment rights.

## V. CAUSES OF ACTION

**COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 UNDER THE FIRST AMENDMENT**

67. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

68. As alleged above, the State seeks to explicitly restrict or chill speech and expression

---

[17] Friends of George's, Inc. Home Page, https://www.friendsofgeorges.org/about/ (last accessed March 27, 2023).

protected by the First Amendment based on its content, its message, and its messenger. The statute is therefore "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. at 163.

69. This statute cannot survive strict scrutiny. While the government has a recognized interest in "protecting children from harmful materials," Tennessee law already protects children from obscenity and sexually explicit conduct and materials. *See generally* T.C.A. §§ 39-13-511; 39-17-910, *et seq*.

70. Legislators have made it clear that this law was created to prevent children from drag shows. The government does not have a compelling interest in protecting children from drag shows.

71. Even if the State could identify a compelling interest, this law is far from narrowly tailored. It is broad enough to encompass even the most innocent drag performances, to reach into the private homes of Tennessee citizens, and to determine on behalf of parents what is and is not appropriate entertainment for their children.

72. The broad, sweeping nature of the statute, and the vagueness regarding what conduct is and is not prohibited, will have a chilling effect on the First Amendment rights of citizens of Tennessee.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each Count of the Complaint and pray for the following relief:

1. Permit Plaintiff leave to amend this Complaint after reasonable discovery;

2. Grant Plaintiff a Temporary Restraining Order and Preliminary Injunction, preventing this unconstitutional statute from taking effect;

3. Award Plaintiff its reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

4. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

5. Grant the Plaintiff such further relief as the Court may deem just and proper

Respectfully submitted,

/s/ *Melissa J. Stewart*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
Melissa J. Stewart (#40638)
Donati Law, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
craig@donatilaw.com
melissa@donatilaw.com
**Counsel for Plaintiff**