# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **FRIENDS OF GEORGE'S, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case 2:23-cv-02163-TLP-tmp |
| ) | |
| **THE STATE OF TENNESSEE; BILL LEE,** ) | |
| in his official and individual capacity as ) | |
| Governor of Tennessee; ) | |
| **JONATHAN SKRMETTI,** in his official and ) | |
| individual capacity as the Attorney General ) | |
| of Tennessee, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants, the State of Tennessee; Bill Lee, Governor of the State of Tennessee; and Jonathan Skrmetti, Attorney General and Reporter of the State of Tennessee, by and through the Office of the Tennessee Attorney General and Reporter, file this response in opposition to Plaintiff's Motion for Temporary Restraining Order and Motion for Temporary Restraining Order as to Governor Bill Lee and Attorney General Jonathan Skrmetti filed by Plaintiff Friends of George's, Inc. (ECF 7, 11). The Court should deny Plaintiff's application for a temporary restraining order because Plaintiff cannot demonstrate that it has a strong likelihood of success on the merits. Plaintiff fails to establish that it has standing to maintain its claim against the Governor or the Attorney General, and Defendants' sovereign immunity bars Plaintiff's claims. For these reasons, Plaintiff's request for a TRO should be denied.

## BACKGROUND

On March 2, 2023, the Tennessee General Assembly enacted, and the Governor signed, Public Chapter No. 2, 113th General Assembly (2023) ("2023 Pub. Ch. No. 2") (copy attached as Ex. A). Section 2 of 2023 Pub. Ch. 2 makes it "an offense for a person to perform adult cabaret entertainment" either: (1) on public property; or (2) in a location where the adult cabaret entertainment could be viewed by a person who is not an adult. "Adult cabaret entertainment" is defined as a single or multiple "adult-oriented performances that are harmful to minors, as that term is defined in [Tenn. Code Ann.] § 39-17-901, and that feature topless, dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." 2023 Pub. Ch. No. 2, § 1. A performance is "harmful to minors" when the "quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse": (A) would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful, or morbid interests of minors; (B) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and (C) when taken as a whole, lacks serious literary, artistic, political, or scientific values for minors. Tenn. Code Ann. § 39-17-901(6). A person who commits a first offense of 2023 Pub. Ch. No. 2 is guilty of a Class A misdemeanor; a person guilty of a second or subsequent offense is guilty of a Class E felony. 2023 Pub. Ch. No. 2. By its terms, 2023 Pub. Ch. No. 2 takes effect on April 1, 2023. *Id.* § 3.

Plaintiff alleges that it is a 501(c)(3) non-profit organization that "produces drag-centric performances, comedy sketches, and plays." It filed suit against Defendants pursuant to 42 U.S.C. § 1983. (ECF 10, PageID 51-52.) Plaintiff asserts that 2023 Pub. Ch. No. 2 violates the First Amendment to the United States Constitution because it "seeks to explicitly restrict or chill

2

speech and expression . . . based on its content, its message, and its messenger." (ECF 10, PageID 62-63.)

Plaintiff moves for a temporary restraining order and preliminary injunction. (ECF 7, 11.) It contends that extraordinary relief is warranted because it will likely succeed on the merits of its First Amendment claim (ECF 7, PageID 35-44); Plaintiff would suffer irreparable harm by having to cancel its next production scheduled to begin on April 14 (*id.*, PageID 44-45); and that the equities favor Plaintiff because its "upcoming performances risk no harm to anyone" (*id.*, PageID 45).

## ARGUMENT

### I.    Temporary Restraining Orders

"A TRO is an extraordinary remedy" that is "only granted where the movant carries his burden of proving that the circumstances clearly demand it." *Shelby Cnty. Advocates for Valid Elections v. Hargett*, 348 F. Supp. 3d 764, 768-69 (W.D. Tenn. 2018) (internal quotation marks omitted). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation omitted). In determining whether a temporary restraining order other injunctive relief is proper, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy." *Id.*

Four factors determine whether a temporary restraining order is warranted: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent a temporary restraining order; (3) whether granting a temporary restraining order would cause substantial harm to others; and (4) whether a temporary restraining order would serve the public interest. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361

(6th Cir. 2008). In cases involving a constitutional challenge, "the first factor is typically dispositive." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021).

The grant or denial of a temporary restraining order is within a district court's discretion. *See id.* at 361-62 (concluding that a district court abused its discretion in granting a temporary restraining order when the plaintiff showed "little likelihood of success on the merits"). But whether the movant has a strong likelihood of success on the merits is a question of law. *See Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). Further, a plaintiff must also show a likelihood of success of establishing jurisdiction. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018). If a plaintiff cannot demonstrate a likelihood of success of establishing jurisdiction or success on the merits, the district court should deny the application for a temporary restraining order. *See id.*; *Ohio Republican Party*, 543 F.3d at 361.

## II. Plaintiff Cannot Demonstrate a Likelihood of Success.

Plaintiff cannot show that it has a likelihood of success on the merits against any named Defendant. Plaintiff lacks standing to assert its claims against the Governor or Attorney General. And the State of Tennessee and its officers in their official capacity are not proper defendants in a § 1983 action.

### A. Plaintiff lacks standing to sue the Governor or the Attorney General.

Article III of the United States Constitution "limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013). That threshold limitation requires a district court to determine whether the plaintiff has standing to raise his claim in federal court. *Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899 F.3d 437, 443 (6th Cir. 2018). "[T]he party invoking federal jurisdiction[] bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To establish standing, the plaintiff must show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

Plaintiff cannot demonstrate that it has standing here. First, it fails to show that it has suffered an injury in fact. The alleged injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Put another way, the "threatened injury must be '*certainly impending*' to constitute injury in fact, and '[a]llegations of *possible* future injury' are not sufficient." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (emphasis in original) (quoting *Clapper*, 568 U.S. at 409). Yet Plaintiff makes no allegation that it intends to engage in conduct that 2023 Pub. Ch. No. 2 prohibits. It does not assert that its production set to begin on April 14—or any other performance—will involve "adult cabaret entertainment," that is, one that involves "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse," as those terms are defined by statute. *See* 2023 Pub. Ch. No. 2, § 1; Tenn. Code Ann. § 39-17-901(6); *see also* Tenn. Code Ann. §§ 39-17-901(4), (9), (13)-(15) (defining the terms "excess violence," "nudity," "sadomasochistic abuse," "sexual conduct," and "sexual excitement" in this context). Nor does Plaintiff assert that its production will be performed "[o]n public property" or "where the adult cabaret entertainment could be viewed by a person who is not an adult." *See* 2023 Pub. Ch. No. 2, § 2. Indeed, Plaintiff asserts that its future productions "risk no harm to anyone." (ECF 7, PageID 45.) Plaintiff's speculative

injury that 2023 Pub. Ch. No. 2 will be enforced against it outside of the law's requirements is insufficient to establish a concrete, particularized injury. *See Memphis A. Philip Randolph*, 978 F.3d at 386; *see also EMW Women's Surgical Ctr. v. Friedlander*, 978 F.3d 418, 442 (6th Cir. 2020) (noting that federal courts must presume that public officials will act in good faith "[a]bsent 'clear evidence to the contrary'").

Even if Plaintiff asserted a proper injury, that injury is neither "fairly traceable" to the Governor or Attorney General or redressable by injunctive relief against them. *R.K. ex rel. J.K. v. Lee*, 53 F.4th 995, 999-1000 (6th Cir. 2022). The "fairly traceable" prong determines "whether the plaintiffs' injury can be traced to [the] allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (internal quotation marks omitted). That is, the plaintiff must assert "specific, plausible allegations about what the [state official] has done, is doing, or might do" to cause an injury. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022).

Here, Plaintiff fails to show—much less plausibly allege—that its alleged injury is traceable to the Governor or Attorney General. As in *Universal Life Church*, Plaintiff's allegations against Defendants are "sparse," consisting of only assertions that the Defendants are parties because of their status as Governor, Attorney General, and the State itself. (ECF 10, PageID 52, ¶¶ 5-7); *see Universal Life Church Monastery Storehouse*, 35 F.4th at 1031. Plaintiff has not asserted that either the Governor or the Attorney General has taken or might take any enforcement action against it under 2023 Pub. Ch. No. 2. Nor could it. Plaintiff identifies no provision in 2023 Pub. Ch. No. 2 that tasks either the Governor or the Attorney General with enforcing its provisions. And to the extent Plaintiff attempts to rely on the Governor's general "take care" power or the Attorney General's "chief law-enforcement officer" status, that reliance

is plainly insufficient to establish Article III standing because neither official has "the power to initiate criminal prosecutions" under Tennessee law. *See Universal Life Church Monastery Storehouse*, 35 F.4th at 1031-33.

Finally, a temporary restraining order against the Governor or Attorney General would not redress Plaintiff's asserted injury. To establish redressability, a plaintiff must "plead facts sufficient to establish that the court is capable of providing relief that would redress the alleged injury." *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017). And since Plaintiff has not shown that it has an injury fairly traceable to the Governor or the Attorney General, "no remedy applicable to those defendants (be it an injunction or a declaration) would redress [Plaintiff's] alleged injuries." *R.K.*, 53 F.4th at 1001. Since Plaintiff lacks standing to seek relief against the Governor or Attorney General, the Court should deny Plaintiff's request for a TRO against those officials.

**B.    Defendants Are Not Proper Defendants to Plaintiff's § 1983 Action.**

Plaintiff also cannot obtain a temporary restraining order against Defendants because it has no proper § 1983 claim against them. First, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also id.* at 64 ("[A] State is not a person within the meaning of § 1983."). Second, the State and its officials sued in their official capacity have sovereign immunity under the Eleventh Amendment (as well as immunity that "flows from the nature of sovereignty itself") from suit in federal court. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005); *see also Mikel v. Quin*, 58 F.4th 252, 256 (6th Cir. 2023) (concluding that claims against Tennessee and its agencies failed "due to sovereign immunity" and "due to the inapplicability of §1983").

Although exceptions to sovereign immunity exist, none are applicable here. A state can waive its sovereign immunity if it has consented to suit in federal court. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). But the State of Tennessee has not consented to § 1983 suits in federal court. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986). And although Congress can expressly abrogate a state's sovereign immunity through legislation, "Section 1983 does not abrogate Eleventh Amendment immunity." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).

The final exception is whether the doctrine in *Ex parte Young*, 209 U.S. 123 (1908), applies, which allows a federal court to issue "prospective injunctive and declaratory relief [to] compel[] a state official to comply with federal law." *S & M Brands*, 527 F.3d at 507. But for *Ex parte Young* to apply, a plaintiff must "challenge[] the constitutionality of a state official's action." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). The doctrine "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Id.* Here, *Ex parte Young* cannot overcome Defendants' immunity. First, as shown above, neither the Governor nor the Attorney General have enforcement authority under 2023 Pub. Ch. No. 2. Thus, Plaintiff cannot show that either Defendant has enforced or threatened to enforce it. *See id.*; *see also id.* at 1416 (noting that an official's general authority to enforce the laws of the state "is not sufficient to make government officials the proper parties to litigation challenging the law" (internal quotation marks omitted)). Second, *Ex parte Young* doctrine only applies to state officials. And since the State of Tennessee is not an "official," *Ex parte Young* cannot overcome the State's own immunity. *See id.* at 1415. In sum, since Plaintiff cannot show a likelihood of success on the merits, the Court should deny its application for a temporary restraining order.

8

### III. The Equities Also Favor Defendants.

Although Plaintiff's failure to show a likelihood of success is dispositive to application for a temporary restraining order, the equities also favor denying its request. Plaintiff cannot show that it would suffer irreparable harm without an injunction against Defendants. As explained above, Plaintiff does not contend that it intends to engage in conduct prohibited by 2023 Pub. Ch. No. 2, and a "hypothetical threat of prosecution is not an immediate, irreparable injury that warrants the extraordinary remedy of" injunctive relief. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (quotation omitted). And no Defendants have enforcement authority under 2023 Pub. Ch. No. 2 anyways. So even if Plaintiff could show irreparable harm, a remedy enjoining Defendants would not prevent the asserted harm.

The remaining factors—substantial harm and the public interest—merge when the government is the defendant. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And this merged factor favors Defendants as well. Since Plaintiff has no traceable injury to assert or a redressable remedy to obtain against Defendants, the public has an interest in ensuring that its officials are not subject to an aimless injunction.

## CONCLUSION

For the reasons stated, Plaintiff's application for a temporary restraining order against Defendants should be denied.

                    Respectfully submitted,

                    JONATHAN SKRMETTI
                    Attorney General and Reporter

                    s/Robert W. Wilson
                    James R. Newsom (TN BPR No. 6683)
                    Special Counsel
                    Robert W. Wilson (TN BPR No. 34492)
                    Senior Assistant Attorney General
                    Steven J. Griffin (TN BPR No. 40708)
                    Assistant Attorney General
                    Office of the Tennessee Attorney General
                    40 South Main Street, Suite 1014
                    Memphis, TN 38103
                    (901) 543-2473
                    Jim.Newsom@ag.tn.gov
                    Robert.Wilson@ag.tn.gov
                    Steven.Griffin@ag.tn.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 29th day of March, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report. Parties may access this filing through the Court's electronic filing system.

      s/Robert W. Wilson
      Robert W. Wilson
      Senior Assistant Attorney General