IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC., | ) |
| PLAINTIFF, | ) **Case No. 2:23-cv-02163-TLP-tmp** |
| | ) |
| | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE CIVIL RIGHTS ACT OF 1871, 42** |
| v. | ) **U.S.C. § 1983** |
| | ) |
| | ) |
| | ) |
| THE STATE OF TENNESSEE; BILL LEE, *in his official and individual capacity as Governor of Tennessee*; JONATHAN SKRMETTI, *in his official and individual capacity as the Attorney General of Tennessee*, | ) |
| DEFENDANTS | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Friends of George's, Inc., by and through its designated attorneys, file this reply to Defendants' Response in Opposition to Plaintiff's Motion for Temporary Restraining Order (ECF 19).

**I.    Plaintiffs have filed a related suit against the Shelby County District Attorney.**

As a preliminary matter, Plaintiff has filed a related case, *Friends of George's, Inc. v. Mulroy*, and Plaintiff has moved for consolidation with the instant suit. Based on Defendants' assertions that the Attorney General is only empowered to enforce state laws at the appellate level,

1

and that the Governor's power is not specific enough, Plaintiff has determined that *if* these are not the proper parties, then Shelby County District Attorney General Steven J. Mulroy ("DAG Mulroy") necessarily must be. Plaintiff has given DAG Mulroy notice of the proceedings. On March 29, 2023 via telephone at 6:03 p.m. upon learning that Defendants' arguments would potentially render him a proper party, DAG Mulroy confirmed that someone from his office would be present for the hearing March 30, 2023.

Plaintiff seeks a substantially similar injunction in that suit based upon slightly different legal reasoning.

In the meantime, Plaintiff asks that this Court enter an order determining that Plaintiff's likelihood of success on the merits warrants preliminary injunctive relief.[1]

**II.     Plaintiffs have standing and are likely to succeed on the merits of their claims.**

Plaintiffs have standing because they are bringing a facial challenge to a statute under the First Amendment. In their Response, Defendants have set forth the general test for standing, but they have failed to acknowledge that First Amendment challenges are subject to a different set of prudential concerns and thus a different test for standing, including, specifically, organizational standing. It is long settled law that Plaintiffs may levy "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick v. Okla.*, 413 U.S. 601, 608 (1973) (quoting *Dombrowski* v. *Pfister*, 380 U.S. 479, 491-492 (1965)).

Expanding on this principle, in a case in which a professional charitable fundraising corporation asserted that its clients were burdened by a charitable expenditure rule, the Supreme

---

[1] As all parties now have notice of the matter, a temporary preliminary injunction pending more complete adjudication of the claims is appropriate rather than a temporary restraining order.

Court went further in discussing organizations bringing suit on behalf of burdens on its customers, the Supreme Court stated:

> Within the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing. Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956-957 (1984).

Accordingly, *Broadrick, Dombowski,* and *Munson Co.* stand for the proposition that any party sufficiently concerned with the chilling effect that a speech regulation might have may challenge the speech. Certainly, Friends of George's, an organization upon whom the chilling effect has direct impact, whose members are the subject of the legislature's animus, and that, under reasonable interpretations of the statute, could find its shows to be inherently unlawful, is sufficiently invested to have standing even if their own, actual conduct might not be directly regulated by the challenged statute.

The *Munson Co.* Court went further, however, and emphasized that organizations whose customers, members, and affiliates speech would be could also have *jus tertii* standing where "practical obstacles prevent a party from asserting rights on behalf of itself," where "the third party has sufficient injury-in-fact to satisfy the Art. III case-or-controversy requirement;" and where "the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Id.* at 956

Plaintiff is a 501(c)(3) organization consisting of drag performers, who are either "male or female impersonators" or the stage crew who facilitate drag performances. They are, in effect, precisely the people that Rep. Chris Todd, the challenged statute's sponsor, has accused of putting on shows "meant to groom and recruit children to this lifestyle," and whose art form he described as "child abuse" *per se* when viewed by minors. The stigma that legislators, including Rep. Todd, have heaped upon drag performers, whose identities are otherwise typically concealed by heavy costuming, would prevent a reasonable person of ordinary fortitude to consider "refrain[ing] from constitutionally protected speech or expression" or to view bringing suit individually as a "practical obstacle." *Munson Co.*, 467 U.S. 947, 956-957. They have, however, certainly suffered a cognizable injury in that the threatened statute proposes to either criminalize their art form anywhere it might be seen by minors or, upon another reading, merely escalate it to a possible felony already ambiguous conduct deemed "harmful to minors" based solely on the costuming they wear while performing. In either event, it is the speech of the members of Friends of George's that would be chilled, and for the same reason, Friends of George's meets the third prong of the *jus tertii* standing requirement, it is reasonable to expect that it would frame the issues with adequate adversarial zeal. *Id.*

As alleged in the First Amended Complaint, the challenged statute is set to go into effect on Saturday, April 1, 2023. Plaintiff's next drag performance is scheduled for April 14, 2023. Organizing events of this nature takes time, and tickets for this event are already available for purchase. Plaintiff must decide whether its show can remain open to all ages, as it has in the past, or whether it must add an age restriction and take steps to ensure that no minors could possibly view the performance, or whether it should cancel the show entirely. Plaintiff's only other option is to proceed as planned, knowing that Friends of George's drag performers could possibly face

criminal charges under plausible interpretations of this statute. That in itself is sufficient harm for the Court to enter a temporary restraining order barring the implementation of this statute, until a further hearing for a preliminary injunction after full briefing on the merits. Plaintiff's members and performers must also make the decision whether they wish to risk violating a law that they do not and cannot understand or instead self-censor their constitutionally protected speech. This is the very reason for the chilling effect doctrine of standing, and Plaintiffs meet the criteria to challenge the statute.

### III. The Attorney General or Governor are a Proper Party.

#### a. Attorney General Skrmetti

The State argues that Tennessee's Attorney General is limited to handling appeals and may not initiate criminal proceedings, but Tennessee has dual responsibility for the prosecution of crimes. Either the Tennessee Attorney General or the District Attorney General has the responsibility for enforcement depending on both the stage of prosecution and the willingness of the local District Attorney General to enforce statutes. Pending a factual determination as to whether DAG Mulroy or Defendant Skrmetti will be the official with the duty to enforce this statute, Defendant Skrmetti should remain a party to this litigation. Tenn. Code Ann. § 8-7-106 provides:

> If a district attorney general peremptorily and categorically refuses to prosecute all instances of a criminal offense without regard to facts or circumstances, then the attorney general and reporter may petition the supreme court for appointment of a district attorney general pro tem . . . for the sole purpose of prosecuting persons accused of committing that offense.

Plaintiff concedes and has alleged in the companion litigation that DAG Mulroy has, thus far, made no such categorical statements about any law; presently, therefore, Plaintiff's reasonable fear of prosecution under this law may be more traceable to DAG Mulroy than the Attorney

General. However, should DA Mulroy respond to Plaintiff's Complaint by asserting that he *will not* take action to enforce this law, only Attorney General Skrmetti has the power to further prosecution of the statute.

In short, either DAG Mulroy or Attorney General Skrmetti is the proper defendant in this case, and the answer is a question of both law and fact. If Plaintiff or Defendants can show a credible threat of enforcement from DAG Mulroy – if DAG Mulroy refuses to provide "clear assurances that [he] will *not* prosecute" Friends of George's drag performers under this law – then Attorney General Skrmetti is without enforcement powers and should be dismissed. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1035 (6th Cir. 2022). But should DA Mulroy "disavow intent to prosecute" or "stipulate to the law's unconstitutionality," then Plaintiff's injuries would indeed be traceable to Attorney General Skrmetti. *Id*. The Court should await a response to this question by DAG Mulroy before dismissing Attorney General Skrmetti from this suit.

### b. Governor Bill Lee

Defendants also contend that the allegations against Governor Lee are "sparse" and are based only on his status as Governor. In order to invoke federal jurisdiction against Governor Lee, Plaintiff must make "specific, plausible allegations about what the governor has done, is doing, or might do to injure plaintiffs." *Universal Life Church*, 35. F.4th at 1031.

But Plaintiff has real cause for concern that Governor Lee will take action to enforce this law. Governor Lee made a public statement that this bill addresses "a very serious subject" of children being exposed to "sexualized entertainment," although when reporters asked him for specific examples of the conduct this bill covers, he provided none. He also stated, "We need to

make sure that they [children] are not. I think that's something that needs to happen in Tennessee, and it will because of this bill."

Governor Lee is not without the power to drive enforcement of this bill. The director of Tennessee's state policing agencies, the Tennessee Bureau of Investigations ("TBI") and Tennessee Highway Patrol ("THP") were appointed by and answer to Governor Lee and have all the necessary arrest powers to enforce the challenged statute. Considering that the Governor believes there is a real danger to children that this law addresses, and his statements that "we need to make sure" children are not exposed to "adult cabaret entertainment" as defined in the statute, Plaintiff reasonably fear the Governor will make enforcement of this law a priority for state agencies with arrest power. Reasonable fear of arrest or investigation by TBI or THP is a cognizable harm traceable to Governor Lee; thus, this Court has jurisdiction over Plaintiff's claims against him.

### c. The State of Tennessee

In light of Defendants' Response and recent Sixth Circuit precedent holding that the incorporation doctrine does not abrogate the Eleventh Amendment even as to fully incorporated constitutional amendments, Plaintiff concedes that Sovereign Immunity is not abrogated against the State of Tennessee for the purposes of this suit and consents to dismissal.

### IV. Plaintiffs Must Be *Presumed* to Prevail on the Merits

Plaintiff is likely to succeed on the merits because unlike in most applications for injunctions, even preliminary relief, Plaintiffs are *presumed* to be likely to prevail in suits of this nature. Plaintiffs in First Amendment challenges to non-content-neutral restrictions upon speech "must be deemed likely to prevail unless the Government has shown that respondents' proposed less restrictive alternatives are less effective than [the challenged statute]." *Ashcroft v. ACLU*, 542

7

U.S. 656, 666 (2004). Plaintiff proposes that Tennessee's existing obscenity laws have proven adequate for decades and, that prior to the passage of the challenged statute, the legislature conducted no inquiry into the historical effectiveness of Tennessee's existing obscenity laws and made no findings as to why additional protections specific to "male and female impersonators" were necessary. Though Plaintiff challenges certain cross-referenced aspects of those statutes in connection with this suit, for purposes of this Motion, Plaintiff contends that those laws adequately serve the State's interest in protecting children.

Defendants do not even contend otherwise. They do not cite First Amendment case law. They do not respond to Plaintiff's chilling effect and facial unconstitutionality arguments, and they do not argue for the statute's constitutionality. If either the Governor or Attorney General are a proper party, even while the question of whether they or DAG Mulroy are the proper parties to the suit is litigated factually, then the Court should presume the statute invalid and issue an injunction barring its implementation pending further proceedings.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that this Court grant Plaintiff's Motion for a Temporary Restraining Order as to Attorney General Skrmetti and Governor Bill Lee.

Respectfully submitted,

/s/ *Melissa J. Stewart*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
Melissa J. Stewart (#40638)
Donati Law, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
craig@donatilaw.com
melissa@donatilaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon all parties of record via the Court's ECF system on the 30th day of March, 2023.

*/s/ Melissa J. Stewart*