IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC.,<br><br>   *Plaintiff*,<br><br> v.<br><br>THE STATE OF TENNESSEE; BILL LEE, in his official and individual capacity as Governor of Tennessee; JONATHAN SKRMETTI, in his official and individual capacity as the Attorney General of Tennessee<br><br>   *Defendants*. | Case No. 2:23-cv-02163-TLP-tmp |
| FRIENDS OF GEORGE'S, INC.,<br><br>   *Plaintiff*,<br><br> v.<br><br>STEVEN J. MULROY, in his official and individual capacity as District Attorney General of Shelby County, Tennessee<br><br>   *Defendant*. | Case No. 2:23-cv-02176-TLP-tmp |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE STATE OF TENNESSEE, BILL LEE AND JONATHAN SKRMETTI, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, AND STEVEN MULROY, IN HIS OFFICIAL CAPACITY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 1

LEGAL STANDARD ..................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

   I.  Plaintiff Fails to Bear Its Burden of Establishing Organizational Standing ........................... 4

   II. The Governor and the Attorney General Are Not Proper Defendants .................................... 7

      A. The Governor and Attorney General cannot be sued in their official capacities ........... 7

      B. The Governor and Attorney General cannot be sued in their individual capacities
         for the requested injunctive relief……………………………………………………..10

   III. The State of Tennessee Should be Dismissed ....................................................................... 11

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdalla v. Tenn. Dep't of Corr.*,
   2021 WL 27305 (W.D. Tenn. Jan. 4, 2021) ........................................................................... 3

*Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*,
   702 F. App'x 416 (6th Cir. 2017) ......................................................................................... 3

*Am. Chem. Council v. Dep't of Transp.*,
   468 F.3d 810 (D.C. Cir. 2006) .............................................................................................. 6

*Ameritech Corp. v. McCann*,
   297 F.3d 582 (7th Cir. 2002) .............................................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 8

*Ass'n of Am. Physicians & Surgeons v. FDA*,
   13 F.4th 531 (6th Cir. 2021) ............................................................................................. 5, 6

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) .............................................................................................................. 1

*Brown v. Montoya*,
   662 F.3d 1152 (10th Cir. 2011) .......................................................................................... 11

*Cartwright v. Garner*,
   751 F.3d 752 (6th Cir. 2014) ............................................................................................ 3, 4

*Children's Healthcare Is a Legal Duty, Inc. v. Deters*,
   92 F.3d 1412 (6th Cir. 1996) ................................................................................................ 8

*Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*,
   150 F. App'x 389 (6th Cir. 2005) ....................................................................................... 11

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) .......................................................................................................... 7

*Constantino v. Michigan Dep't of State Police*,
   707 F. Supp. 2d 724 (W.D. Mich. 2010) ............................................................................ 11

*Cooperrider v. Beshear*,
   2023 WL 2612603 (E.D. Ky. Mar. 23, 2023) .................................................................. 11

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ......................................................................................................... 3

*Do No Harm v. Pfizer Inc.*,
   2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) ................................................................ 6

*Doe v. Porter*,
   370 F.3d 558 (6th Cir. 2004) ........................................................................................... 6

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*,
   920 F.3d 421 (6th Cir. 2019) ........................................................................................... 8

*Ex parte Young*,
   209 U.S. 123 (1908) ......................................................................................................... 8

*Fed. Election Comm'n v. Cruz*,
   142 S. Ct. 1638 (2022) ..................................................................................................... 4

*Feit v. Ward*,
   886 F.2d 848 (7th Cir. 1989) ......................................................................................... 11

*Hans v. Louisiana*,
   134 U.S. 1 (1890) ............................................................................................................. 8

*Harris v. Lexington-Fayette Urb. Cnty. Gov't*,
   685 F. App'x 470 (6th Cir. 2017) .................................................................................... 9

*Hatfill v. Gonzales*,
   519 F. Supp. 2d 13 (D.D.C. 2007) ........................................................................... 10, 11

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ......................................................................................................... 5

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ......................................................................................................... 5

*Milligan v. United States*,
   2008 WL 1994823 (M.D. Tenn. May 2, 2008) ............................................................. 11

*Muhammad v. Azar*,
   2019 WL 4228915 (W.D. Tenn. Aug. 19, 2019) ............................................................. 3

*Norton v. Beasley*,
    2022 WL 17348385 (6th Cir. Dec. 1, 2022) ................................................................... 9

*Ohio Citizen Action v. City of Englewood*,
    671 F.3d 564 (6th Cir. 2012) ....................................................................................... 5

*Pineda v. Hamilton Cnty.*,
    977 F.3d 483 (6th Cir. 2020) ....................................................................................... 9

*R. K. by & through J. K. v. Lee*,
    53 F.4th 995 (6th Cir. 2022) .................................................................................... 8, 9

*Rauch v. Day & Night Mfg. Corp.*,
    576 F.2d 697 (6th Cir. 1978) ....................................................................................... 5

*Religious Sisters of Mercy v. Becerra*,
    55 F.4th 583 (8th Cir. 2022) ........................................................................................ 6

*Rogers v. Stratton Indus.*,
    798 F.2d 913 (6th Cir. 1986) ....................................................................................... 3

*Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*,
    53 F.4th 1014 (6th Cir. 2022) ...................................................................................... 4

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) ...................................................................................................... 8

*State v. Simmons*,
    610 S.W.2d 141 (Tenn. Crim. App. 1980) ................................................................... 7

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................... 6

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .................................................................................................... 4

*Universal Life Church Monastery Storehouse v. Nabors*,
    35 F.4th 1021 (6th Cir. 2022) ......................................................................... 7, 8, 9, 10

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) .................................................................................................. 8

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ...................................................................................................... 8

**Constitutional and Statutory Provisions**

42 U.S.C. § 1983 ................................................................................................................ 8

Tenn. Code Ann. § 7-51-1401(2) ...................................................................................... 2

Tenn. Code Ann. § 8-7-103(1) .......................................................................................... 7

Tenn. Code Ann. § 8-7-106 ............................................................................................. 10

Tenn. Code Ann. § 7-51-1101 .......................................................................................... 1

Tenn. Code Ann. § 7-51-1102 .......................................................................................... 2

Tenn. Code Ann. § 7-51-1401 .......................................................................................... 1

Tenn. Code Ann. § 7-51-1407 .......................................................................................... 2

Tenn. Code Ann. § 38-6-102 ........................................................................................... 10

Tenn. Code Ann. § 39-17-901 ...................................................................................... 1, 2

Tenn. Const. art. VI, § 5 ................................................................................................... 7

U.S. Constitution art. III .............................................................................................. 4, 6

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 3

Federal Rule of Civil Procedure 12(h)(3) ......................................................................... 5

**INTRODUCTION**

"[U]nder our constitutional system[, federal] courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973). Instead, they resolve concrete disputes between plaintiffs with personalized grievances and defendants who can be haled into federal court to provide relief. This case presents no such dispute. Plaintiff, Friends of George's, Inc., lacks standing to challenge enforcement of the Adult Entertainment Act because it fails to identify any aggrieved member of its organization. And the Governor and Attorney General cannot be haled before this Court as defendants because they do not enforce the challenged law. Accordingly, under well-established precedents, this Court lacks jurisdiction to adjudicate this lawsuit. The complaint should be dismissed.

**BACKGROUND**

This case concerns a recently-enacted Tennessee law prohibiting obscene performances in the presence of minors, Public Chapter No. 2, 113th General Assembly (2023) (the "Adult Entertainment Act").

Like other States, Tennessee has long regulated obscenity, adult entertainment, and adult cabarets—*e.g.*, performances by "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." Tenn. Code Ann. §§ 7-51-1401, *et seq.*; *see also* Tenn. Code Ann. §§ 7-51-1101, *et seq.*; Tenn. Code Ann. §§ 39-17-901, *et seq.* But legislators discovered a "loophole in [Tennessee] law that would allow that type of entertainment to take place . . . where children are present." ECF No. 35-1 (Tr. of Legislative Proceedings) at 521.[1] To close that loophole, the General Assembly enacted the Adult Entertainment Act.

---

[1] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

1

Because the legislature sought to effectively "apply the same standards" from existing law to locations where children could be present, Tr. of Legislative Proceedings at 521, the Act builds on and cross-references Tennessee's existing statutes. Specifically, it adds a provision to Tennessee's law on adult-oriented establishments—Tenn. Code Ann. § 7-51-1407—that makes it unlawful "for a person to perform adult cabaret entertainment: (a) on public property; or (b) In a location where the adult cabaret entertainment could be viewed by a person who is not an adult." ECF No. 19-1 (Adult Entertainment Act) at 93 (§ 2). The Act defines "adult cabaret entertainment" to have two components: [1] "adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901, *and* [2] that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." *Id.* (§ 1) (emphasis added). The first component explicitly refers to and incorporates longstanding obscenity law, § 39-17-901, and the second component verbatim mirrors the longstanding definition of regulated "adult cabaret." *See* Tenn. Code Ann. § 7-51-1401(2); *cf. id.* § 7-51-1102(2).

Plaintiff, Friends of George's, Inc., is a Memphis-based organization that "produces drag-centric performances, comedy sketches, and plays" "open to all ages." ECF No. 10 (First Amended Complaint) at 52, 62 (¶¶ 4, 62). Five days before the Adult Entertainment Act went into effect, Plaintiff filed suit seeking an injunction that prohibits enforcement of the Act by the State of Tennessee, Governor Bill Lee, and Attorney General Jonathan Skrmetti. ECF No. 1 (Complaint). Plaintiff simultaneously moved for a temporary restraining order. ECF No. 7 (TRO Motion).

That motion proceeded expeditiously. Defendants had approximately 24 hours to provide their written response to Plaintiff's motion, and a hearing on the motion took place just a few days after suit was filed. ECF Nos. 12, 13. The morning of the TRO hearing, Plaintiff filed a *new* civil

action against Shelby County District Attorney Steven Mulroy, "which was admittedly filed in response to the state's briefing" in the initial action. *See* ECF No. 34 (TRO Hearing Transcript) at 429; *see also* ECF No. 32-1 (Complaint in Case No. 2:23-cv-02176). The TRO issued based on this meager record and limited briefing, temporarily enjoining D.A. Mulroy, Governor Lee, and General Skrmetti from enforcing the Adult Entertainment Act. ECF No. 26 (TRO Order).

Following a status conference, the Court extended its temporary restraining order until May 26, 2023, consolidated Plaintiff's two suits, and set a preliminary injunction hearing/merits trial for May 22, 2023. ECF No. 31. For the reasons set out below, the Court should dismiss Plaintiff's suits before that hearing—or, at a minimum, dismiss the claims against the Governor, the Attorney General, and the State to streamline the issues for the hearing on May 22.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A motion to dismiss on that basis "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* Either way, the Court must "presume that [it] lack[s] jurisdiction," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006), and "the *plaintiff* . . . [must] prov[e] jurisdiction" exists "in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986) (emphasis in original).

"Article III standing is a question of subject matter jurisdiction properly decided under 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). And when a State asserts sovereign immunity, this Court generally treats the assertion as a "factual" challenge to subject matter jurisdiction as well. *Abdalla v. Tenn. Dep't of Corr.*, No. 2:20-cv-02041, 2021 WL 27305, at *2 (W.D. Tenn. Jan. 4, 2021); *Muhammad v. Azar*, No. 2:18-

3

cv-2857, 2019 WL 4228915, at *4 (W.D. Tenn. Aug. 19, 2019), *report & recommendation adopted*, 2019 WL 4228901 (W.D. Tenn. Sept. 5, 2019). In such a challenge, this Court has "broad discretion with respect to what evidence to consider," and the burden remains on the plaintiff to prove that jurisdiction exists. *Cartwright*, 751 F.3d at 759-60.

## ARGUMENT

Plaintiff's First Amendment claim misconstrues the Adult Entertainment Act and misapplies the governing law. But given the concurrent briefing schedule, this motion does not tackle every problem baked into the complaints. Rather, this motion focuses only on certain jurisdictional defects that prevent review of the Act in this case: the Plaintiff's lack of organizational standing and inability to sue the Governor or Attorney General to prevent the Act's enforcement. Recognizing those defects, and narrowing the suit accordingly, will obviate or streamline the issues in dispute at trial. This Court should grant the motion and dismiss the asserted claims.

**I.      Plaintiff Fails to Bear Its Burden of Establishing Organizational Standing.**

Article III of the U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (quoting U.S. Const. art. III, § 2). The "standing" doctrine "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (internal quotation marks omitted). To establish standing, the plaintiff must show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022).

An organization can establish standing through "the same inquiry" that applies to "individual[s]," because organizations (just like people) can suffer legally redressable harms.

4

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982).  But Friends of George's as an organization alleges no such harm in this case.  Instead, it seeks to "represent[]" the interest of "a group of male and female impersonators," TRO Hearing Transcript at 455; *see also* ECF No. 20 (TRO Reply) at 99, through the doctrine of "associational standing."  *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021).

Although Supreme Court precedent has recognized associational standing in certain cases, *see id.* at 542 (questioning the viability of associational standing in light of recent decisions), the doctrine comes with its own set of requirements.  To invoke associational standing, an organization must show that "its members would otherwise have standing to sue in their own right"; the "interests" that the suit "seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiff cannot make that showing here.[2]  In fact, Plaintiff fails the most basic requirement: it never identifies a single member of its organization with individual standing to sue.  To satisfy the first element of the associational-standing test, Plaintiff "must do more than identify a likelihood that" one of the defendants "will harm an unknown member"; the organization must actually "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from [at least one of] the defendant[s'] conduct."  *Ass'n of Am. Physicians*, 13 F.4th at 543.

---

[2] The parties did not brief—and the Court did not address—organizational standing in the context of the TRO, given the expedited nature of the proceedings.  But under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  This rule "recognizes the court's time-honored obligation, even sua sponte, to dismiss any action over which it has no subject matter jurisdiction." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978).  No matter when the issue is raised, the Court must evaluate standing as of the time Plaintiff filed suit.  *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012).

That is, "[s]tanding . . . requires . . . a factual showing of perceptible harm," so Plaintiff must specifically "identify members who have [or will] suffer[] the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (internal citations omitted). The mere "possib[ility] . . . that one individual will meet all of th[e] criteria . . . does not suffice." *Id.*; *see also Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) (same). Because Plaintiff failed to point to even "one specifically-identified member [who will] suffer[] an injury-in-fact," *Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006), it cannot establish associational standing.

It is no retort that the "stigma" allegedly put on "drag performers" prevents Plaintiff from identifying a specific member. TRO Reply at 99. Indeed, drag is presumably *not* stigmatizing since Plaintiff itself claims that drag "is now definitively a part of mainstream culture." First Amended Complaint at 54. But even if the Court were "sympathetic that individuals may wish not to publicize their identities," Plaintiff must still "bear[] [its] burden of establishing the Court's Article III power to adjudicate its case." *Do No Harm v. Pfizer Inc.*, No. 1:22-cv-07908, 2022 WL 17740157, at *9 (S.D.N.Y. Dec. 16, 2022), *appeal docketed*, No. 23-15 (2d Cir. Jan. 4, 2023). "There are procedures for keeping information confidential in a litigation if legal standards are met; indeed, courts have carved out procedures that allow even a party to request to proceed anonymously when warranted and the requisite showing is made." *Id.*; *see Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (setting out standard for excusing plaintiffs from identifying themselves). Plaintiff (and its performers) could have attempted to use those procedures. What Plaintiff cannot do is ignore a clear jurisdictional standing requirement imposed by the Supreme Court and the Sixth Circuit. *Summers*, 555 U.S. at 499; *Ass'n of Am. Physicians*, 13 F.4th at 542.

Put simply, Plaintiff's failure to identify a performer who will supposedly suffer harm defeats its claim to associational standing and deprives this Court of jurisdiction.

## II.     The Governor and the Attorney General Are Not Proper Defendants

Even if Plaintiff had standing, it still could not sue the Governor or the Attorney General. Plaintiff's claims against those defendants should be dismissed.

### A.     The Governor and Attorney General cannot be sued in their official capacities.

Neither the Governor, nor the Attorney General, nor *any* state-wide official, has authority to prosecute offenses under the Adult Entertainment Act.  In Tennessee, district attorneys prosecute violations of criminal law, so "D.A. Mulroy . . . is the official who would be responsible for enforcing the law in Shelby County."  Ex. A (Steve Mulroy FAQ: The "Drag Show" Law); *see also Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022) (citing Tenn. Code Ann. § 8-7-103(1)); *State v. Simmons*, 610 S.W.2d 141, 142 (Tenn. Crim. App. 1980). And if D.A. Mulroy, "fails or refuses to attend and prosecute according to law"—contrary to his public representation, Ex. A—"the [*Supreme*] *Court* shall have power to appoint an attorney *pro tempore*." Tenn. Const. art. VI, § 5 (emphasis added).  Unlike in other States, the Governor and "Attorney General never step[] in." *Nabors*, 35 F.4th at 1032. This lack of prosecutorial authority dooms Plaintiff's claims against the Governor and Attorney General on three separate fronts.

*First*, no enforcement authority means no standing.  A plaintiff must "*separately*" demonstrate standing to sue *each* defendant on *each* claim for *each* form of relief.  *Id.* at 1031. Standing's "traceab[ility]" prong requires Plaintiff to prove that its supposed injury "can be traced to [the] allegedly unlawful conduct of" the Governor and Attorney General, "not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (internal citations omitted).  And the "redressability" prong requires Plaintiff to show "how the requested relief

7

against" the Governor and Attorney General "could redress [its] alleged injuries-in-fact." *Nabors*, 35 F.4th at 1031 (emphasis added).  Plaintiff can do neither here because neither the Governor nor the Attorney General enforces the Act.  The Sixth Circuit has been abundantly clear that, in such circumstances, the Plaintiff lacks standing to sue, and the Court lacks authority to enjoin these particular defendants. *Nabors*, 35 F.4th 1031-32; *see also R. K. by & through J. K. v. Lee*, 53 F.4th 995, 999-1000 (6th Cir. 2022) (same).

*Second*, Plaintiff cannot overcome Tennessee's sovereign immunity.  A claim against "a state official in his or her official capacity" is generally treated as a claim against "the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and a State is not "amenable to the suit of an individual without its consent," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).  The Supreme Court, in *Ex parte Young*, 209 U.S. 123 (1908), created a "narrow exception" to that rule, allowing suit to enjoin a state official "from enforcing state laws" in ways that run "contrary to federal law." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021).  But because the Governor and Attorney General cannot enforce the Act, the *Ex parte Young* exception "does not apply," and sovereign immunity bars the asserted official capacity claims. *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019) (quoting *Children's Health Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)).

*Third*, Plaintiff lacks a right of action against the Governor or Attorney General under 42 U.S.C. § 1983.  "Because vicarious liability is inapplicable to . . . suits" under the Civil Rights Act, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Such a claimant must also show "a causal connection between the defendant's unconstitutional

8

action and the plaintiff's injury." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020). Plaintiff has not—and cannot—show as much, because the Governor and Attorney General play no role in enforcing the Adult Entertainment Act.

To overcome these issues, Plaintiff argues that the Governor and Attorney General might attempt to enforce the Act if D.A. Mulroy refuses to do so. ECF No. 35 (Plaintiff's Brief) at 495-97; TRO Reply at 100-02. Every aspect of that argument fails.

For one, Plaintiff cannot prove the conditional premise of its argument. D.A. Mulroy has candidly informed the public that his "office enforces the laws as written, so it is possible that there could be prosecutions under th[e Adult Entertainment Act] in Shelby County." Ex. A. It thus comes as no surprise that Plaintiff has failed to produce evidence supporting its speculative theory—and they do need *actual evidence* to invoke this Court's jurisdiction. While "unsupported shoulda-coulda-woulda," "some day" allegations may have supported temporary emergency relief, *Norton v. Beasley*, No. 21-6053, 2022 WL 17348385, at *8-9 (6th Cir. Dec. 1, 2022), the Court must now dismiss any claim lacking evidence to establish standing, *Harris v. Lexington-Fayette Urb. Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) ("[W]hen a defendant produces evidence challenging the factual existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage.").

Moreover, even if D.A. Mulroy backtracks from his publicly stated position, the Sixth Circuit has squarely rejected the idea that Tennessee's Governor and Attorney General have residual prosecution authority. For the Governor, Plaintiff points to the "Tennessee Constitution's 'take care clause' [and] the Governor's executive power over the State's policing agencies like the [TBI]." TRO Order at 182. But "a general allegation about the Governor's 'take care' power does not suffice to invoke federal jurisdiction," *Nabors*, 35 F.4th at 1031; *see also R.K.,* 53 F.4th

9

at 999 ("Governor Lee's obligation to ensure that the state's laws are faithfully executed does not, by itself, mean that any injury caused by the Act is fairly traceable to him."). And Plaintiff identifies no statutory authority that state-wide agencies could wield to enforce the Adult Entertainment Act. *See, e.g.*, Tenn. Code Ann. § 38-6-102 (authorizing TBI to investigate only certain crimes).

As for the Attorney General, Plaintiff points to the "divided prosecutorial scheme [allegedly] giving the Attorney General power to begin a criminal prosecution should the local district attorney 'peremptorily and categorically' refuse to enforce criminal laws." TRO Order at 182 (quoting Tenn. Code Ann. § 8-7-106). But the Attorney General lacks statutory authority to "initiate criminal prosecutions." *Nabors*, 35 F.4th at 1032. He has only the power to petition the Tennessee Supreme Court, which decides whether to appoint an attorney general pro tempore who, in turn, decides whether to prosecute. Tenn. Code Ann. § 8-7-106. It defies reality to characterize the Attorney General's discretion to petition the Supreme Court to consider appointing a potential prosecutor for failure to enforce a class of claims as authority to bring a specific enforcement action, and the Sixth Circuit has already held as much. *Nabors*, 35 F.4th at 1032-33.

**B.     The Governor and Attorney General cannot be sued in their individual capacities for the requested injunctive relief.**

Finally, the complaint fails to state a claim against the Governor or Attorney General in their respective individual capacities. "[I]ndividual (or personal) capacity suits do not seek to conform the State's conduct to federal law." *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). Instead, such suits seek relief "from the defendant personally." *Id.* Plaintiff seeks the former, not the latter. First Amended Complaint at 63-64. That makes good sense, because "only by acting as a government official (not as an individual acting personally), can [the defendants'] compliance with a court decree remedy the . . . policy or practice that is being challenged." *Hatfill*

10

*v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007).  Put otherwise, the requested injunctive relief "can only be provided by the individual defendants in their official capacities—not the individual defendants in their personal capacities." *Id.* at 25. A mountain of precedent thus bars the individual-capacity claims.  *See, e.g.*, *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *Cooperrider v. Beshear*, No. 3:22-cv-00016, 2023 WL 2612603, at *5 (E.D. Ky. Mar. 23, 2023); *Constantino v. Michigan Dep't of State Police*, 707 F. Supp. 2d 724, 731-32 (W.D. Mich. 2010); *Milligan v. United States*, No. 3:07-cv-1053, 2008 WL 1994823, at *15 (M.D. Tenn. May 2, 2008).[3]

### III. The State of Tennessee Should be Dismissed.

As this Court noted in its order granting a temporary restraining order, Plaintiff has "consented to dismissal of the Defendant State of Tennessee under the doctrine of sovereign immunity."  TRO Order at 181 n.1.  Accordingly, the State should be dismissed as a party to the suit.

### CONCLUSION

The Court should grant the motion and dismiss this case in its entirety.  At a minimum, the Court should dismiss all claims against the Governor, the Attorney General, and the State of Tennessee.

---

[3] This same argument supports dismissal of D.A. Mulroy in his individual capacity.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

<u>s/James R. Newsom III</u>
James R. Newsom III (TN BPR No. 6683)
Special Counsel
Robert W. Wilson (TN BPR No. 34492)
Senior Assistant Attorney General
Steven J. Griffin (TN BPR No. 40708)
Assistant Attorney General
J. Matthew Rice (TN BPR No. 040032)
Special Assistant to the Solicitor General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
Jim.Newsom@ag.tn.gov
Robert.Wilson@ag.tn.gov
Steven.Griffin@ag.tn.gov
Matt.Rice@ag.tn.gov

*Counsel for the State of Tennessee, Bill Lee in his official and individual capacity as Governor of Tennessee, Jonathan Skrmetti, in his official and individual capacity as Tennessee Attorney General and Reporter, and Steven J. Mulroy, in his official capacity as District Attorney General for the Thirtieth Judicial District of Tennessee*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 18, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report. Parties may access this filing through the Court's electronic filing system.

                                                s/James R. Newsom III
                                                James R. Newsom III
                                                Special Counsel