**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

FRIENDS OF GEORGE'S, INC.,

        *Plaintiff*,


        v.

STEVEN J. MULROY,
    in his official and individual capacities,

        *Defendant*.

Case No. 2:23-cv-02163-TLP-tmp
Case No. 2:23-cv-02176-TLP-tmp

**BRIEF OF STEVEN J. MULROY IN HIS OFFICIAL CAPACITY**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT .................................................................................................................... 7

I.      Plaintiff's Claim Cannot Succeed. ..................................................................... 8

        A.      Plaintiff lacks Article III standing.......................................................... 8

                1.      Plaintiff cannot establish standing as an organization. .............. 9

                2.      Plaintiff cannot prove an imminent injury..............................11

        B.      Plaintiff fails to establish facial invalidity under the First Amendment.. ..............13

                1.      The Adult Entertainment Act can be constitutionally applied to material
                        obscene to minors and adults. ...................................................14

                2.      The Adult Entertainment Act can be constitutionally applied to speech
                        obscene to minors but not adults...............................................17

        C.      The Adult Entertainment Act is not overbroad....................................26

        D.      The Void-for-Vagueness Doctrine does not apply. ...............................29

II.     Other Equitable Factors Favor Defendant.. ...................................................... 31

III.    Mulroy Must Be Dismissed in His Individual Capacity................................... 32

IV.     Any Injunction Should Be Limited in Scope..................................................... 33

        CONCLUSION.................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Am. Booksellers v. Webb,*
   919 F.2d 1493 (11th Cir. 1990) ................................................................................ 18

*Am. Chem. Council v. Dep't of Transp.,*
   468 F.3d 810 (D.C. Cir. 2006) ................................................................................. 10

*Ameritech Corp. v. McCann,*
   297 F.3d 582 (7th Cir. 2002) ................................................................................... 32

*Amoco Prod. Co. v. Vill. of Gambell,*
   480 U.S. 531 (1987) ................................................................................................... 7

*Ams. for Prosperity Found. v. Bonta,*
   141 S. Ct. 2373 (2021) ........................................................................................ 13, 14

*Ashcroft v. Am. Civil Liberties Union,*
   542 U.S. 656 (2004) ............................................................................................ 14, 17

*Ashcroft v. Free Speech Coalition,*
   535 U.S. 234 (2002) ................................................................................... 17, 30, 31

*Ass'n of Am. Physicians & Surgeons v. FDA,*
   13 F.4th 531 (6th Cir. 2021) .......................................................................... 9, 10, 12

*Ayotte v. Planned Parenthood,*
   546 U.S. 320 (2006) ................................................................................................. 33

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ................................................................................................. 11

*Barnes v. Glen Theatre, Inc.,*
   501 U.S. 560 (1991) ................................................................................................. 19

*Barr v. Am. Ass'n of Pol. Consultants,*
   140 S. Ct. 2335 (2020) ............................................................................................. 34

*Bethel Sch. Dist. No. 403 v. Fraser,*
   478 U.S. 675 (1986) ................................................................................................. 17

*Big Dipper Ent., LLC v. City of Warren,*
   641 F.3d 715 (6th Cir. 2011) ................................................................................... 18

*Birmingham v. Nessel*,
   2021 WL 5712150 (6th Cir. Dec. 2, 2021)..................................................................... 12

*Brown v. Montoya*,
   662 F.3d 1152 (10th Cir. 2011) ...................................................................................... 33

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ........................................................................................................ 34

*California v. Texas*,
   141 S. Ct. 2104 (2021)..................................................................................................... 33

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ........................................................................................................ 22

*City of Erie v. Pap's A.M.*,
   529 U.S. 277 (2000) ........................................................................................................ 16

*City of Renton v. Playtime Theatres, Inc.*,
   475 U.S. 41 (1986) ............................................................................................. 16, 23, 24

*Clemons v. Couch*,
   3 F.4th 897 (6th Cir. 2021).............................................................................................. 2

*Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*,
   150 F. App'x 389 (6th Cir. 2005)................................................................................... 33

*Connection Distrib. Co. v. Holder*,
   557 F.3d 321 (6th Cir. 2009) ............................................................................ 1, 25, 26, 33

*Constantino v. Mich. Dep't of State Police*,
   707 F. Supp. 2d 724 (W.D. Mich. 2010) ....................................................................... 33

*Cooperrider v. Beshear*,
   2023 WL 2612603 (E.D. Ky. Mar. 23, 2023) ............................................................... 33

*Crawford v. Lungren*,
   96 F.3d 380 (9th Cir. 1996) ...................................................................................... 23, 24

*Crawford v. United States Dep't of Treasury*,
   868 F.3d 438 (6th Cir. 2017) .......................................................................................... 11

*D.T. v. Sumner Cty. Schs.*,
   942 F.3d 324 (6th Cir. 2019) .......................................................................................... 31

*Daunt v. Benson*,
   956 F.3d 396 (6th Cir. 2020) ............................................................................ 18

*Davis v. Colerain Twp., Ohio*,
   51 F.4th 164 (6th Cir. 2022) ............................................................................ 12

*Davis-Kidd Booksellers, Inc. v. McWherter*,
   866 S.W.2d 520 (Tenn. 1993) ........................................................................... 17

*Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*,
   411 F.3d 777 (6th Cir. 2005) ............................................................................ 28

*Do No Harm v. Pfizer Inc.*,
   2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) .................................................. 10

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2228 (2022) ....................................................................................... 22

*Doe I v. Landry*,
   909 F.3d 99 (5th Cir. 2018) .............................................................................. 25

*Doe v. Porter*,
   370 F.3d 558 (6th Cir. 2004) ............................................................................ 10

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ....................................................................................... 7, 8

*Ent. Prods., Inc. v. Shelby Cty.*,
   588 F.3d 372 (6th Cir. 2009) ....................................................................... 27, 30

*Ent. Prods., Inc. v. Shelby Cty.*,
   721 F.3d 729 (6th Cir. 2013) ............................................................................ 16

*FCC v. Pacifica Found.*,
   438 U.S. 726 (1978) .......................................................................................... 23

*Fed. Election Comm'n v. Cruz*,
   142 S. Ct. 1638 (2022) ........................................................................................ 8

*Feit v. Ward*,
   886 F.2d 848 (7th Cir. 1989) ............................................................................ 33

*Fort Wayne Books, Inc. v. Indiana*,
   489 U.S. 46 (1989) ............................................................................................ 29

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ............................................................................. 25

*Ginsberg v. New York*,
    390 U.S. 629 (1968) ...................................................................... *passim*

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ............................................................................. 29

*Hamling v. United States*,
    418 U.S. 87 (1974) .............................................................................. 30

*Hatfill v. Gonzales*,
    519 F. Supp. 2d 13 (D.D.C. 2007) ..................................................... 32

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .............................................................................. 9

*Hearring v. Sliwowski*,
    806 F.3d 864 (6th Cir. 2015) ......................................................... 7, 13

*Hooper v. California*,
    155 U.S. 648 (1895) ............................................................................. 28

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) .............................................................................. 9

*In re Steven S.*,
    25 Cal. App. 4th 598 (1994) ............................................................... 16

*Jenkins v. Georgia*,
    418 U.S. 153 (1974) ...................................................................... 30, 34

*Jolivette v. Husted*,
    694 F.3d 760 (6th Cir. 2012) ........................................................... 7, 8

*Kallstrom v. City of Columbus*,
    136 F.3d 1055 (6th Cir. 1998) ........................................................ 8, 34

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
    999 F.2d 831 (5th Cir. 1993) .............................................................. 24

*M.S. News Co. v. Casado*,
    721 F.2d 1281 (10th Cir. 1983) .......................................................... 18

*Madsen v. Women's Health Ctr.*,
512 U.S. 753 (1994) ........................................................................ 34

*McKay v. Federspiel*,
823 F.3d 862 (6th Cir. 2016) ......................................................... 13

*McNeilly v. Land*,
684 F.3d 611 (6th Cir. 2012) ......................................................... 31

*Members of City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984) ........................................................................ 27

*Miller v. California*,
413 U.S. 15 (1973) ................................................................. *passim*

*Milligan v. United States*,
2008 WL 1994823 (M.D. Tenn. May 2, 2008) .......................... 33

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .................................................................. 7, 32

*Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*,
63 F.4th 510 (6th Cir. 2023) ......................................................... 33

*Morrison v. Bd. of Educ. of Boyd Cty.*,
521 F.3d 602 (6th Cir. 2008) ................................................. 11, 12

*Universal Life Church Monastery Storehouse v. Nabors*,
35 F.4th 1021 (6th Cir. 2022) ....................................................... 33

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998) ........................................................................ 13

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) .......................................................................... 2

*New York v. Ferber*,
458 U.S. 747 (1982) ................................................................ *passim*

*Nixon v. United States*,
506 U.S. 224 (1993) ........................................................................ 21

*Oklahoma v. Castro-Huerta*,
142 S. Ct. 2486 (2022) ................................................................... 22

*Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*,
    313 U.S. 236 (1941) ............................................................................. 2

*Phillips v. DeWine*,
    841 F.3d 405 (6th Cir. 2016) ........................................................... 1, 12

*Platt v. Bd. of Comm'rs on Grievances & Discipline*,
    894 F.3d 235 (6th Cir. 2018) ............................................................. 24

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) .............................................................. 14, 15, 16

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ..................................................................... 20, 21

*Religious Sisters of Mercy v. Becerra*,
    55 F.4th 583 (8th Cir. 2022) .............................................................. 10

*Richland Bookmart, Inc. v. Nichols*,
    137 F.3d 435 (6th Cir. 1998) .............................................................. 18

*Richland Bookmart, Inc. v. Knox Cty.*,
    555 F.3d 512 (6th Cir. 2009) ................................................. 16, 24, 25

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ........................................................................... 34

*Sable Commc'ns of Cal., Inc. v. FCC*,
    492 U.S. 115 (1989) .............................................................. 17, 18, 23

*Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*,
    53 F.4th 1014 (6th Cir. 2022) .............................................................. 8

*Schaffer v. Clinton*,
    240 F.3d 878 (10th Cir. 2001) ............................................................. 1

*Sharpe v. Cureton*,
    319 F.3d 259 (6th Cir. 2003) .............................................................. 34

*Smith v. United States*,
    508 U.S. 223 (1993) ........................................................................... 29

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................. 8, 9, 10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................. 8

*Thompson v. DeWine*,
  976 F.3d 610 (6th Cir. 2020) ............................................................... 31, 32

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ......................................................................... 11

*Triplett Grille, Inc. v. City of Akron*,
  40 F.3d 129 (6th Cir. 1994) ................................................................. 19

*Turco v. City of Englewood*,
  935 F.3d 155 (3d Cir. 2019) ................................................................. 25

*Turner Broad. Sys. v. FCC*,
  512 U.S. 622 (1994) ......................................................................... 19, 20

*United States v. 12 200-Ft. Reels of Super 8mm.*
  413 U.S. 123 (1973) ............................................................................ 27

*United States v. Little*,
  365 F. App'x 159 (11th Cir. 2010) ......................................................... 30

*United States v. O'Brien*,
  391 U.S. 367 (1968) ............................................................................ 22

*United States v. Richards*,
  755 F.3d 269 (5th Cir. 2014) ................................................................. 15

*United States v. Sineneng-Smith*,
  140 S. Ct. 1575 (2020) ......................................................................... 26

*United States v. Stevens*,
  559 U.S. 460 (2010) ......................................................................... 26, 30

*United States v. Thomas*,
  74 F.3d 701 (6th Cir. 1996) ................................................................. 30

*United States v. Whorley*,
  550 F.3d 326 (4th Cir. 2008) ................................................................. 27

*United States v. Williams*,
  553 U.S. 285 (2008) ............................................................................ 26

*United States v. Yung*,
   37 F.4th 70 (3d Cir. 2022) ...................................................................... 26

*Upper Midwest Booksellers Ass'n v. City of Minneapolis*,
   780 F.2d 1389 (8th Cir. 1985) ................................................................ 18

*Wash. State Grange v. Wash. State Repub. Party*,
   552 U.S. 442 (2008) ................................................................................ 26

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464  (1982) ............................................................................... 13

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ................................................................................ 13

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988) .......................................................................... 28, 29

*Virginia v. Black*,
   538 U.S. 343 (2003) .......................................................................... 14, 15

*Virginia v. Hicks*,
   539 U.S. 113 (2003) .............................................................. 26, 27, 28, 29

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) .................................................................................. 8

*Whole Woman's Health v. Jackson*,
   141 S. Ct. 2494 (2021) ............................................................................ 33

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) .......................................................................... 23, 24, 25

*Young v. Am. Mini Theatres, Inc.*,
   427 U.S. 50 (1976) .................................................................... 16, 17, 18

## Constitutional and Statutory Provisions

U.S. Const. art. III ...................................................................................... 8

Tenn. Code Ann. § 7-51-1113(e) ...................................................... 4, 25, 27

Tenn. Code Ann. §§ 7-51-1401 ................................................................ 4, 29

Tenn. Code Ann. §§ 7-51-1401(2) ........................................................ 4, 5, 6

Tenn. Code Ann. § 7-51-1401(4) ........................................................................... 28

Tenn. Code Ann. § 7-51-1401(12) ......................................................................... 20

Tenn. Code Ann. § 7-51-1407(a)(1). ....................................................................... 4

Tenn. Code Ann. § 7-51-1407(c)(1)(B) ................................................................. 26

Tenn. Code Ann § 39-17-901 ........................................................................ *passim*

Tenn. Code Ann. § 39-17-901(2) ..................................................................... 30, 34

Tenn. Code Ann. § 39-17-901(6) ................................................................... *passim*

Tenn. Code Ann. § 39-17-901(9) ............................................................................. 3

Tenn. Code Ann. § 39-17-901(10) ........................................................................... 3

Tenn. Code Ann. § 39-17-901(13) ........................................................................... 3

Tenn. Code Ann. § 39-17-901(15) ........................................................................... 3

Tenn. Code Ann. § 39-17-902(a) ............................................................................. 3

## INTRODUCTION

Tennessee's elected representatives passed a law to protect children from sexually-explicit performances—the Adult Entertainment Act.  Public Chapter No. 2, 113th General Assembly (2023).  Contrary to public portrayal, that law *did not ban drag shows*.  It extended existing obscenity and adult-entertainment standards to prohibit sexual performances in the presence of minors in certain locations.  By its text, the Act regulates only performances that (1) "feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers" *and* (2) include "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse" that "appeal[s] predominantly to prurient, shameful or morbid interests of minors," in a "patently offensive" way that "lacks serious literary, artistic, political or scientific value for minors."  Tenn. Code Ann. § 39-17-901(6); ECF No. 19-1 (Adult Entertainment Act) at 93.[1]  No amount of mischaracterization or misleading references to the Ms. Piggy Idol contest can change the text of the Act.  *See* ECF No. 34 (TRO Hearing Transcript) at 423-24.

Unconcerned with the text, Plaintiff claims that the Act is facially invalid because it "targets the free speech and expression of drag performers."  ECF No. 35 (Plaintiff's Br.) at 500.  But "[a] facial challenge to a law is no small matter."  *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc).  And this challenge is not up to snuff.

As a threshold matter, Plaintiff lacks standing to challenge the Act.  "Bringing an overbreadth claim does not give [Plaintiff] carte blanche to maintain a suit in federal court."  *Phillips v. DeWine*, 841 F.3d 405, 417 (6th Cir. 2016).  Nor does "moral outrage . . . endow [Plaintiff] with standing to sue."  *Schaffer v. Clinton*, 240 F.3d 878, 884 (10th Cir. 2001).  Plaintiff must establish an imminent injury, and it simply cannot do so.  Plaintiff admits that "[e]verything

---

[1] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

[it] do[es] is for comedy," Ex. A at 75, and "[n]othing [that it] do[es is] for purpose of sexual gratification." *Id.* at 69.  Its shows involve no nudity, no obscene sexual simulations, and no patently offensive content.  *Id.* at 67-70.  Taking Plaintiff at its word, it does not have standing to maintain this suit: no threat of prosecution exists and, therefore, no imminent injury exists.

Even if Plaintiff had standing to sue, its challenge lacks merit because the Adult Entertainment Act comports with the First Amendment.  The First Amendment unquestionably allows States to restrict the availability of adult entertainment—like strip clubs or pornography—and to prohibit minors from accessing that content.  Surely the First Amendment allows States to apply *the same standards* "to protect the welfare of children and to see that they are safeguarded" from the same type of sexual or sadomasochistic performances in spaces accessible to minors.  *See Ginsberg v. New York*, 390 U.S. 629, 640-41 (1968) (quotations omitted).  A long line of cases has upheld statutes that prohibit minors from accessing content that is obscene as to minors, but not as to adults, when adults can still obtain the regulated speech.  If this Court reaches the merits, it should, likewise, uphold the Act.

The question here is not "the wisdom, need, or appropriateness of [Tennessee's] legislation."  *Olsen v. Nebraska ex rel. W. Reference & Bond Ass'n*, 313 U.S. 236, 246 (1941).  Federal courts "possess neither the expertise nor the prerogative" to question the political branches' "policy judgment[]." *Clemons v. Couch*, 3 F.4th 897, 906 (6th Cir. 2021) (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012)).  Rather, courts interpret the law, and an interpretation of the actual text of the law here dooms Plaintiff's facial challenge.

# BACKGROUND

## A. Tennessee Law on Obscenity and Adult Entertainment

Like every other State in the country, Tennessee has long regulated obscenity and adult entertainment. Through a series of related statutes, the Tennessee Code imposes restrictions governing access to this type of content.

Tennessee's obscenity statutes make it a crime to knowingly produce, sell, distribute, or possess "obscene matter." Tenn. Code Ann. § 39-17-902(a). And they make it "unlawful to direct, present or produce any obscene . . . live performance." *Id.* These restrictions incorporate a definition of "obscene" that mirrors the three-factor obscenity standard established in *Miller v. California*, 413 U.S. 15 (1973). *See* Tenn. Code Ann. § 39-17-901(10).

And when it comes to minors, Tennessee law provides heightened protections. For example, Tennessee law prohibits minors from being admitted "to a movie theatre if the movie has been found to be 'harmful to minors,'" *id.* § 39-17-907(b), and it prohibits minors from accessing premises "exhibit[ing] a motion picture, show or other presentation which . . . depicts nudity, sexual conduct, excess violence, or sadomasochistic abuse, and which is harmful to minors," *id.* § 39-17-911(b). These statutes have long used a statutory definition of "harmful to minors" that adapts the *Miller* test for minors: "any description or representation . . . of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse"[2] that (1) "[w]ould be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests *of minors*;" (2) "[i]s patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable *for minors*;" and (3)

---

[2] The statute also defines the terms "nudity," "sexual excitement," "sexual conduct," and "sadomasochistic abuse." Tenn. Code Ann. § 39-17-901(9), -(13)-(15).

"[t]aken as whole lacks serious literary, artistic, political or scientific values *for minors*." *Id.* § 39-17-901(6) (emphasis added).

Tennessee law separately governs the location and accessibility of adult entertainment. *See* Tenn. Code Ann. §§ 7-51-1401, *et seq.* Adult-oriented establishments and adult cabarets that feature "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers" cannot be located "within one thousand feet (1,000') of a child care facility, a private, public, or charter school, a public park, family recreation center, a residence, or a place of worship." Tenn. Code Ann. §§ 7-51-1401(2), -1407(a)(1). And minors cannot be admitted into any such establishment. *See id.* §§ 7-51-1109(7), -1113(e).

### B.  The Adult Entertainment Act

The Adult Entertainment Act builds upon and cross-references these statutes—which have long been in effect in Tennessee—to address obscenity and adult entertainment.

Over the past couple years, videos emerged "where entertainers or performers simulated anal sex, oral sex, [and] other graphic activities with children sitting a few feet away from them" in various "places across the state." ECF No. 35-1 (Tr. of Legislative Proceedings) at 566; *see also id.* at 520. And an event occurred "where an adult performer . . . talk[ed] about their tits and rubb[ed] their genitalia, grinding on the ground and spreading their legs in front of children." *Id.* at 530. This prompted calls for action. "[H]undreds, if not thousands, of . . . constituents" reached out to legislators "wanting to know why in the world . . . overtly sexual entertainment could be taking place in a public area where kids are present." *Id.* at 547; *see also id.* at 520.

Those concerns drove legislators to investigate whether additional legislation was needed to protect minors. *Id.* at 521. They "had some conversations with district attorneys, law enforcement relative to the existing statute[s]" and identified what some believed to be a

"loophole." *Id.*   Legislators were told "that the law was not clear enough[;] it wasn't specific enough[;] it wasn't strong enough that a prosecutor felt like they could get in front of a judge and get a conviction," even when sex acts were simulated in front of minors.  *Id.* at 567.   To "clarify current law by requiring that adult-oriented performances may only be held in age-restricted venues," *id.* at 515, the General Assembly passed the Adult Entertainment Act.

The Act adds a provision to Tennessee's longstanding law on adult establishments—Tenn. Code Ann. § 7-51-1407—that makes it unlawful "for a person to perform adult cabaret entertainment: (a) [o]n public property; or (b) [i]n a location where the adult cabaret entertainment could be viewed by a person who is not an adult."  Adult Entertainment Act at 93 (§ 2).  The Act defines "adult cabaret entertainment" to have two components: [1] "adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901, and [2] that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers."  *Id.* (§ 1).

Each of these components draws from existing law.  The first component defines "harmful to minors" by cross referencing an existing obscenity law, § 39-17-901.  And that definition "has been in [the Tennessee Code] for many years."  Tr. of Legislative Proceedings at 546; *see also id.* at 516-17; Crimes-Pornography-Protection of Children Against Sexual Exploitation Act, Tenn. Code Ann. § 39-17-901 (1990).  The second component—referencing "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers"—mirrors the longstanding definition of regulated "adult cabaret."  *See* Tenn. Code Ann. § 7-51-1401(2). And, again, the Act's language was copied "word-for-word out of the current law" that "has been on the books for many, many decades."  Tr. of Legislative Proceedings at 538, 588; Consolidated Governments-Adult-Oriented Establishments-Definitions, Restrictions on Opening/Closing Hours

and on Motion Picture Viewing Booths, § 7-51-1401(2) (1995).  The Act thus provides that the "type of [adult] entertainment that is already defined in [existing] statute[s] cannot take place on public property, nor can it take place in a private venue where children are present."  Tr. of Legislative Proceedings at 517; *see also id.* at 547, 579-80.  The legislature sought to "apply the same standards" from existing law to locations where children could be present.  *Id.* at 521.

### C.  Factual and Procedural Background.

Plaintiff, Friends of George's, Inc., is a Memphis-based organization that "produces drag-centric performances, comedy sketches, and plays."  ECF No. 10 (First Amended Compl.) at 52, 62 (¶¶ 4, 62).  Nearly all of these performances occur at the Evergreen Theater in Memphis, Ex. A. at 14, 20, 38, and all performances require payment for admission, *id.* at 19.  The performances never occur on public property, *id.* at 46, and Plaintiff has never sought a license to provide adult-oriented entertainment, *id.* at 53, because the theme of the show is "comedy," *id.* at 37, not "sexual gratification," *id.* at 69.  The shows involve no nudity, no obscene sexual simulations, no masturbation, no excretory functions, and no patently offensive content.  *Id.* at 67-70, 72. "Everything [Plaintiff] do[es] is for comedy."  *Id.* at 75.  And while some minors attend the show, it is no more than a "handful" over the course of the whole production of the troupe.  *Id.* at 42.

Nonetheless, five days before the Adult Entertainment Act went into effect, Plaintiff filed suit seeking an injunction prohibiting enforcement of the Act by the State of Tennessee, Governor Bill Lee, and Attorney General Jonathan Skrmetti.  ECF No. 1 (Compl.).  Plaintiff simultaneously moved for a temporary restraining order.  ECF No. 7 (TRO Motion).

That motion proceeded expeditiously.  Defendants had approximately 24 hours to provide their written response to Plaintiff's motion, and a hearing on the motion took place just a few days later.  ECF Nos. 12, 13.  The morning of the TRO hearing, Plaintiff filed a *new* civil action against

Shelby County District Attorney Steven Mulroy, "which was admittedly filed in response to the state's briefing" in the initial action.  *See* ECF No. 34 (TRO Hearing Transcript) at 429; *see also* ECF No. 32-1 (Complaint in Case No. 2:23-cv-02176).  The TRO issued based on this meager record and limited briefing, temporarily enjoining D.A. Mulroy, Governor Lee, and General Skrmetti from enforcing the Adult Entertainment Act.  ECF No. 26 (TRO Order).

Following a status conference, the Court extended its temporary restraining order until May 26, 2023, consolidated Plaintiff's two suits, and set a preliminary injunction hearing/merits trial for May 22, 2023.  ECF No. 31.  For the reasons set out below, the Court should deny injunctive relief and enter judgment for Defendant after that hearing.

## ARGUMENT

There is no basis for granting relief, much less a sweeping injunction.  An injunction is a "drastic and extraordinary" order that "should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  To obtain an injunction, a plaintiff must first prove "actual success" on the asserted claim.  *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotations omitted).[3]  Without an actual or imminent "constitutional violation, there is no . . . unconstitutional conduct to enjoin."  *Hearring v. Sliwowski*, 806 F.3d 864, 867 (6th Cir. 2015) (quotations omitted).  Next, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate . . . ; (3) that . . . the balance of hardships between the plaintiff and defendant . . . warrant[]" a "remedy in equity . . .; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v.*

---

[3] "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for the preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success."  *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).  Because the Court consolidated the preliminary injunction hearing with a trial on the merits, ECF No. 30, the permanent injunction standard applies here.

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  And even then, a plaintiff has no *right* to an injunction.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982).  The Court retains "discretion" to deny or limit relief as it deems appropriate.  *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 (6th Cir. 1998).  In this case, Plaintiff has not carried its burden of persuasion at any step of the analysis.

## I.      Plaintiff's Claim Cannot Succeed.

Plaintiff's inability to show "actual success" on the asserted claim ends its quest for an injunction.  *Jolivette*, 694 F.3d at 765 (quotations omitted).  Plaintiff cannot establish standing and cannot point to any violation of the First Amendment.  The bottom line: This suit is meritless.

### A.      Plaintiff lacks Article III standing.

Article III "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (quoting U.S. Const. art. III, § 2).  The "standing" doctrine "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quotations omitted).  The plaintiff bears the burden of establishing standing, *id.* at 158, and, even if the parties fail to raise standing, "the [C]ourt has an independent obligation to assure that standing exists," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

To establish standing, the plaintiff must show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief."  *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022).  Plaintiff lacks standing here because it fails to identify any injured party and fails to present facts establishing an imminent violation of the challenged statute.

8

1.   <u>Plaintiff cannot establish standing as an organization.</u>

An organization can establish standing through "the same inquiry" that applies to "individual[s]," because organizations (just like people) can suffer legally redressable harms. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982).   But Friends of George's as an organization alleges no such harm in this case.   Instead, it relies on the doctrine of "associational standing," *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021), in purporting to "represent[]" the interest of "a group of male and female impersonators," TRO Hearing Transcript at 455; *see also* ECF No. 20 (TRO Reply) at 99.

Although Supreme Court precedent has recognized associational standing in certain cases, *but see Ass'n of Am. Physicians*, 13 F.4th at 542 (questioning the continued viability of associational standing), the doctrine comes with its own set of requirements.   To invoke associational standing, an organization must show that "its members would otherwise have standing to sue in their own right"; the "interests" that the suit "seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."   *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiff has not made that showing here.   In fact, Plaintiff fails the most basic requirement: It never identifies a member of its organization with individual standing to sue.   To satisfy the first element of the associational-standing test, Plaintiff "must do more than identify a likelihood that" the defendant "will harm an unknown member"; the organization must actually "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct."   *Ass'n of Am. Physicians*, 13 F.4th at 543.   That is, "[s]tanding . . . requires . . . a factual showing of perceptible harm," so Plaintiff must specifically "identify members who have [or will] suffer[] the requisite harm."   *Summers*, 555 U.S. at 499 (quotations omitted).   The mere

9

"possib[ility] . . . that one individual will meet all of th[e] criteria . . . does not suffice." *Id.*; *see*
*Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) (same).  Because Plaintiff
failed to point to even "one specifically-identified member [who will] suffer[] an injury-in-fact,"
*Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006), it cannot establish
associational standing.

It is no retort that the "stigma" allegedly put on "drag performers" prevents Plaintiff from
identifying a specific member.  TRO Reply at 99.  Indeed, drag is presumably *not* stigmatizing
since Plaintiff itself claims that drag "is now definitively a part of mainstream culture."   First
Amended Compl. at 54.  And even if the Court were "sympathetic that individuals may wish not
to publicize their identities," Plaintiff must still "bear[] [its] burden of establishing the Court's
Article III power to adjudicate its case." *Do No Harm v. Pfizer Inc.*, No. 1:22-cv-07908, 2022 WL
17740157, at *9 (S.D.N.Y. Dec. 16, 2022), *appeal docketed*, No. 23-15 (2d Cir. Jan. 4, 2023).
"There are procedures for keeping information confidential in a litigation if legal standards are
met; indeed, courts have carved out procedures that allow even a party to request to proceed
anonymously when warranted and the requisite showing is made." *Id.*; *see Doe v. Porter*, 370
F.3d 558, 560 (6th Cir. 2004) (setting out standard for excusing plaintiffs from identifying
themselves).  Plaintiff (and its performers) could have attempted to invoke those procedures.  What
Plaintiff cannot do is ignore a clear jurisdictional standing requirement imposed by the Supreme
Court and the Sixth Circuit.  *Summers*, 555 U.S. at 499; *Ass'n of Am. Physicians*, 13 F.4th at 542.

In sum, Plaintiff's failure to identify a performer who is one of its members and who will
supposedly suffer harm defeats its claim to associational standing and deprives the Court of
jurisdiction.

2.   <u>Plaintiff cannot prove an imminent injury.</u>

Setting aside the lack of associational standing, Plaintiff fails to produce evidence on standing's first element: a "particularized" injury-in-fact it will "imminent[ly]" suffer. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  A plaintiff in a pre-enforcement *Ex parte Young* action must prove "an intention to engage in a course of conduct arguably affected with a constitutional interest[] but proscribed by" state law.  *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  He must then prove "a *certain* threat of prosecution if the plaintiff does indeed engage in that conduct." *Id.* at 455.

That standard creates an insurmountable obstacle for Plaintiff, because Plaintiff explicitly disclaims that it has or will engage in any conduct that even arguably violates the Adult Entertainment Act.  Plaintiff's shows are comedy-based, not sexual.  "Everything [it] do[es] is for comedy." Ex. A at 75; *id.* at 37 ("[C]omedy is what we are.").  And "[n]othing [that it] do[es is] for purpose of sexual gratification." *Id.* at 69.  Its shows involve no nudity, no obscene sexual simulations, and no patently offensive content. *Id.* at 67-70.

That should end the matter.  If the shows are not sexual in nature, then they do not qualify as performances that include "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse" and that rise to the level of violating the adapted *Miller* obscenity standard. Tenn. Code Ann. § 39-17-901(6); ECF No. 19-1 (Adult Entertainment Act) at 93.  As a result, Plaintiff has not established a "*certain* threat of prosecution." *Crawford*, 868 F.3d at 454.  Just the opposite, Plaintiff has pointed to nothing "beyond [its] own subjective apprehension" and "imaginative," "speculative" "[f]ears of prosecution" that have no basis in reality—or the actual scope of the Act. *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 610 (6th Cir. 2008) (quotations omitted).

Plaintiff contends that, even if it lacks an imminent injury, it can bring suit because plaintiffs alleging overbreadth do not have to show standing and "any party sufficiently concerned with the chilling effect that a speech regulation might have may challenge the speech." TRO Reply at 98. Nonsense, on both fronts. "Bringing an overbreadth claim does not give [Plaintiff] carte blanche to maintain a suit in federal court." *Phillips*, 841 F.3d at 417. "Although the overbreadth doctrine creates a relaxed approach to *prudential* standing" rules,[4] the doctrine "does not affect constitutional standing, which is a *constitutional* mandate that is absolute and irrevocable." *Birmingham v. Nessel*, No. 21-1297, 2021 WL 5712150, at *3 (6th Cir. Dec. 2, 2021) (emphasis in original) (quotations omitted). In other words, in an overbreadth challenge, the plaintiff can sometimes point to applications that reach beyond the facts presented to demonstrate a substantial number of unconstitutional applications, *see infra* at 26, but it must first show an injury that satisfies Article III's irreducible requirements. *Phillips*, 841 F.3d at 417. "Because the [Act] has not injured [Plaintiff], [it] cannot rely on the rights of others to challenge it." *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 173 (6th Cir. 2022).

The Sixth Circuit has likewise "repeatedly rejected . . . claims that concerns about 'chilling' speech allow[s] [courts] to water down Article III's core constitutional components." *Id.*; *see also, e.g.*, *Phillips*, 841 F.3d at 417; *Birmingham*, 2021 WL 5712150 at *3; *Morrison*, 521 F.3d at 610. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Phillips*, 841 F.3d at 417; *see also McKay v.*

---

[4] "The Supreme Court at one time regularly followed 'prudential standing' rules that arose from what it viewed as the judiciary's discretionary case-management power rather than from any mandatory constitutional command." *Ass'n of Am. Physicians*, 13 F.4th at 541-42. But the Supreme Court has recently questioned (more accurately, undermined) that line of precedent. *Id.* This Court need not tangle with that issue here, though, because Plaintiff fails to satisfy the Article III standing requirements, not any prudential standing requirement.

*Federspiel*, 823 F.3d 862, 868-69 (6th Cir. 2016).  The Sixth Circuit has "found a credible threat of prosecution" only when "plaintiffs allege a subjective chill *and* point to some combination of the following factors: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action."  *McKay*, 823 F.3d at 869 (citations omitted).  Plaintiff has not attempted to bear its burden of proof on these factors; nor could it.  Accordingly, unsupported assertions of "chilling effect" cannot save this suit.  Plaintiff's Br. at 497.

*     *     *

"[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486, (1982).  Regardless of this Court's views on the merits of the First Amendment claim, an order granting injunctive relief would be "beyond the scope of Article III" and would "exercise power over real people and real institutions . . . with no basis for doing so."  *Hearring*, 806 F.3d at 868.  Plaintiff lacks standing and, therefore, this Court lacks jurisdiction.

### B.     Plaintiff fails to establish facial invalidity under the First Amendment.

Plaintiff cannot carry the "heavy burden" of establishing that the Adult Entertainment Act is *facially* invalid.  *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quotations omitted).  Generally, a "facial" challenge contends "that the law is invalid *in toto*— and therefore incapable of any valid application."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982) (quotations omitted).  To prevail on such a claim, the challenger typically must "establish that no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep."  *Ams. for Prosperity Found. v. Bonta*, 141

13

S. Ct. 2373, 2387 (2021) (cleaned up).

Plaintiff cannot carry that burden here.  The Adult Entertainment Act restricts access to certain content that is "harmful to minors"—i.e., content that is obscene as to minors under an adapted *Miller* test.  *See* Tenn. Code Ann. § 39-17-901(6); *Ginsberg*, 390 U.S. at 635-36.  What is obscene for minors is not necessarily obscene for adults, but the difference is "slight[]" because "material that appeals to the prurient interests of some group of adolescents or postadolescents will almost inevitably appeal to the prurient interests of some group of adults as well."  *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 679 (2004) (Breyer, J., dissenting) (cleaned up).  Thus, the Act covers two types of speech: (1) speech obscene to adults *and* minors and (2) speech obscene to minors but *not* adults.  And it can be constitutionally applied to regulate each.

     1.   <u>The Adult Entertainment Act can be constitutionally applied to material obscene to minors and adults.</u>

"[O]bscene material is unprotected by the First Amendment," *Miller*, 413 U.S. at 20, 23, and the rules on content discrimination "appl[y] differently in the context of proscribable speech than in the area of fully protected speech," *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992). Generally, States "may regulate [unprotected speech] without infringing on the First Amendment as applicable to the States through the Fourteenth Amendment."  *Miller*, 413 U.S. at 20.

To prevent restrictions on unprotected speech from becoming "vehicles for content discrimination unrelated to their distinctively proscribable content," though, the Supreme Court has held that constitutional questions arise when, within a category of unprotected speech, the government engages in content discrimination.  *R.A.V.*, 505 U.S. at 383-84.  But, even then, "some types of content discrimination d[o] not violate the First Amendment."  *Virginia v. Black*, 538 U.S. 343, 361 (2003).  *R.A.V.* sets out three "exceptions" to the general content-discrimination rules in the context of restrictions on unprotected speech.  The Court "allows content discrimination"

(1) "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable"; (2) when a "content-defined subclass of proscribable speech . . . happens to be associated with particular 'secondary effects' of the speech, so that the regulation is justified without reference to the content of the . . . speech"; and (3) when "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." *R.A.V.*, 505 U.S. at 388, 389, 390 (cleaned up); *see also United States v. Richards*, 755 F.3d 269, 277 (5th Cir. 2014) (analyzing these three exceptions).

Here, the Adult Entertainment Act applies to a subset of obscene speech. It restricts a specific type of obscene performance (those involving "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse") featuring specific performers ("topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers"). Tenn. Code Ann. § 39-17-901(6); Adult Entertainment Act at 93. Even assuming these subclasses of obscene speech qualify as content-based, *but see infra* 17-22, each of *R.A.V.*'s exceptions applies.

*First*, the basis of any "content discrimination" in the Act "consists entirely of the very reason the entire class of speech at issue [i.e., obscenity] is proscribable." *Black*, 538 U.S. at 361-62 (quotations omitted). *R.A.V.* explicitly contemplated that "[a] State might choose to prohibit only that obscenity which is the most patently offensive in its prurience—i.e., that which involves the most lascivious displays of sexual activity." *R.A.V.*, 505 U.S. at 388 (emphasis omitted). And that is exactly what has happened here: the Act "regulate[s] [a] subset" of unprotected obscene speech. *Black*, 538 U.S. at 363. This case thus presents the paradigmatic example contemplated by the Supreme Court. *R.A.V.*, 505 U.S. at 388. By targeting "only a particular type of" obscenity within a broader unprotected category, *id.* at 362, the Act falls squarely within the first *R.A.V.* exception.

15

*Second*, the Adult Entertainment Act reduces the "'secondary effects'" associated with the adult entertainment, "so [Tennessee's] regulation is justified without reference to the content of the . . . speech." *R.A.V.*, 505 U.S. at 389 (quotations omitted). The text of the Act extends existing restrictions on adult entertainment and, thereby, mitigates the recognized secondary effects of adult entertainment. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 291 (2000) (plurality); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 53 (1986); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 55 (1976). Plaintiff protests that the "legislature undertook no studies, gathered no data, and presented no evidence" in support of the Act. Plaintiff's Br. at 500. Not true. *See infra* at 19, 23-24. But, regardless, the legislature did not need to compile such evidence; the effects associated with adult entertainment are well-established. *Erie*, 529 U.S. at 299. Moreover, the Sixth Circuit has held that "there is no hard-and-fast rule that the government have *any* empirical data directly supporting a link between a given regulation and the secondary effect it is purported to ameliorate." *Ent. Prods., Inc. v. Shelby Cty.*, 721 F.3d 729, 734 (6th Cir. 2013) (emphasis in original); *Richland Bookmart, Inc. v. Knox Cty.*, 555 F.3d 512, 524 (6th Cir. 2009) (same). The second *R.A.V.* exception thus applies.

*Third*, "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." *R.A.V.*, 505 U.S. at 390. Properly interpreted, the Act imposes restrictions on performances that satisfy the *Miller* standard. "[T]he expressive element" of such obscene speech "is incidental at best." *In re Steven S.*, 25 Cal. App. 4th 598, 612 (1994). With minimal expressive content at issue, the Act poses no risk that "official suppression of ideas is afoot," *R.A.V.*, 505 U.S. at 390—meaning the third *R.A.V.* exception applies.

In short, under each of the three independent *R.A.V.* exceptions, the Adult Entertainment Act can be constitutionally applied to restrict material obscene to both children and adults.

2. <u>The Adult Entertainment Act can be constitutionally applied to speech obscene to minors but not adults.</u>

The Adult Entertainment Act also applies to performances that are obscene to minors but not to adults. The difference between those obscenity standards is "slight." *Ashcroft*, 542 U.S. at 679 (Breyer, J., dissenting). And that is particularly true in Tennessee, where the State's Supreme Court has narrowly construed "harmful to minors" to include "only to those materials which lack serious literary, artistic, political, or scientific value *for a reasonable 17-year-old minor*." *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 528 (Tenn. 1993) (emphasis added). This hardly qualifies as a "substantial" class of applications. *See infra* at 26. And, in any event, the application of the Act to material obscene to minors comports with the First Amendment.

**Heightened scrutiny is not warranted.** This Court should subject the Adult Entertainment Act to the time-place-manner standard, not strict scrutiny. But whatever the standard, the Act satisfies constitutional review.

i. For two independent reasons, strict scrutiny does not apply. *First*, strict scrutiny does not apply when a statute prohibits minors from accessing content that is obscene as to minors, but not as to adults, if adults can still obtain the regulated speech. "First Amendment jurisprudence has acknowledged limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986). Of course, "speech within the rights of adults to hear may not be silenced completely in an attempt to shield children from it." *See Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 252 (2002). But the Supreme Court has recognized that *some restrictions* on how and where adults can access material protected for them, but harmful to minors, comport with the First Amendment. *Am. Mini Theatres*, 427 U.S. at 69-70; *Ginsberg*, 390 U.S. at 640; *cf. Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 130-31

(1989). That is, the First Amendment allows States to impose "subject matter" restrictions, Plaintiff's Br. at 497, that create zones for adult content, *without* imposing heightened scrutiny.

In fact, when analyzing the "regulation of speech unprotected as to minors that indirectly affects speech protected as to adults," courts have routinely declined to apply strict scrutiny. *Am. Booksellers v. Webb*, 919 F.2d 1493, 1502 (11th Cir. 1990). "A number of courts have evaluated variously defined restrictions on the display of material 'harmful to minors' in light of the constitutional standards for a reasonable time, place, and manner regulation" or a similar balancing test. *Id.* at 1501-02; *see also, e.g.*, *Am. Mini Theatres*, 427 U.S. at 63 n.18; *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 780 F.2d 1389, 1394 (8th Cir. 1985); *M.S. News Co. v. Casado*, 721 F.2d 1281, 1288 (10th Cir. 1983).

The Court should do the same here. The Act does not bar adults' access to the performances at issue; it merely requires these performances to take place in "adult-only zones." Accordingly, the time-place-manner standard should govern.

*Second*, the Supreme Court's secondary-effects doctrine cuts against the application of strict scrutiny. Under that doctrine, "the government [can] accord differential treatment to a content-defined subclass of speech [if] that subclass [i]s associated with specific 'secondary effects' of the speech." *Daunt v. Benson*, 956 F.3d 396, 420 (6th Cir. 2020). That is, even if a law is "plainly content-based" in a technical sense, courts apply "the standard applicable to content-neutral regulations" to statutes that curb the secondary effects of the restricted speech. *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 440 (6th Cir. 1998); *see also Big Dipper Ent., LLC. v. City of Warren*, 641 F.3d 715, 717 (6th Cir. 2011) ("So long as they aim to limit the secondary effects of adult businesses, we treat the ordinances as content-neutral, which means they get less scrutiny.").

18

And, here, by protecting children from obscene content, the Act inherently addresses the secondary effects associated with exposure to such content—namely, an increase in "sexual exploitation crimes."  Tr. of Legislative Proceedings at 528.  During legislative proceedings, a witness testified that obscene performances "sexual[ly] desensitiz[e] [children,] . . . render[ing] them more vulnerable to sexual predation," "empower[ing] child predators and increas[ing] the demand to exploit and sexually abuse children."  *Id.* at 525-26.  The testimony further demonstrated that "those who exposed children to sexually explicit material do so with a very clear purpose in mind"—later "act[ing] on what they had shown [the child]."  *Id.* (quoting Dr. Jennisue Jessen).

The prevention of this type of "sexual assault" qualifies as a secondary effect.  *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 583 (1991) (Souter, J., concurring in judgment); *see Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 134 (6th Cir. 1994) (noting Justice Souter's *Barnes* concurrence as the narrowest-grounds and, thus, controlling).  And it is no logical "leap to say that [performances harmful to minors] [are] likely to produce the same pernicious secondary effects as the adult films . . . at issue in" prior Supreme Court cases.  *Id.* at 584 (Souter, J., concurring in judgment).  Because the Act curbs secondary effects, the Court has yet another basis for analyzing it as a content-neutral regulation under the time-place-manner standard.

ii.   Plaintiff's contrary arguments for heightened scrutiny do not pass muster.  *First*, Plaintiff seeks strict scrutiny on the theory that the law targets disfavored "messenger[s]."  Plaintiff's Br. at 498.  But "[t]o the extent [that] argument rests on the view that all regulations distinguishing between speakers warrant strict scrutiny . . . it is mistaken."  *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 657 (1994).  "[S]peaker distinctions . . . are not presumed invalid under the First Amendment" or subjected to "strict scrutiny" unless "they reflect the Government's

preference for[,] . . . or aversion to[,] what the disfavored speakers have to say." *Id.* at 645, 658.

The Act does no such thing. Rather, it targets performances that are (1) "harmful to minors, as that term is defined in § 39-17-901" and (2) "that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." Adult Entertainment Act at 93 (codified at Tenn. Code Ann. § 7-51-1401(12)). The first component imposes a constitutionally permissible subject-matter restriction that is analyzed as a time-place-manner restriction. *See supra* at 17-19. And the second component merely identifies performers who engage in that type of performance. In other words, the reference to specific types of performers clarifies the type of speech that is "harmful to minors" *without* narrowing the covered speech. And since it does not reach additional speech, it cannot possibly impose a content-based restriction.

An example illustrates the point. If the list of covered performers included *only* "male or female impersonators," then an argument could be made that the State was using an identity-based restriction as a "means of exercising a content preference." *Turner*, 512 U.S. at 645. In that example, the State would be singling out performances "harmful to minors" given by a particular group that engages in a specific type of speech. But the Act does just the opposite. It lists types of performers that may engage in sexual speech "harmful to minors" and then includes a catchall— "*or similar entertainers.*" Plaintiff has not—and cannot—identify a situation where a performer engages in a performance "harmful to minors" but does *not* qualify as a "similar entertainer." Tenn. Code Ann. § 39-17-901(6); *id* § 7-51-1401(12). That is, there is no instance in which some performers can engage in performances "harmful to minors" and other performers cannot. Therefore, the identity-based clause adds no content-based restriction to the constitutionally permissible "harmful to minors" clause, which is analyzed as a time-place-manner restriction.

*Second*, Plaintiff argues that "an impermissible purpose or justification underpins the law"

20

so strict scrutiny applies.  Plaintiff's Br. at 499 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015)).  Specifically, Plaintiff claims that "th[e] Statute was created in direct response to Jackson Pride's 2022 family-friendly drag show" and "targets . . . expression of drag performers solely because lawmakers disagree with the message drag communicates." *Id.* at 500.  Both the text of the Act and the legislative history refute those contentions.

The text of the Adult Entertainment Act—"the best indicator of intent," *Nixon v. United States*, 506 U.S. 224, 232 (1993)—affirmatively undermines the contention that the Act targets family-friendly drag shows.  The statute prohibits only performances that include "nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse" that "appeal[s] predominantly to prurient, shameful or morbid interests of minors," in a "patently offensive" way that "lacks serious literary, artistic, political or scientific value for minors." Tenn. Code Ann. § 39-17-901(6); Adult Entertainment Act at 93.  And it imposes the same restrictions on drag performers that it imposes on other entertainers who may provide sexually-explicit performances. *Id.*  In fact, the Act copies verbatim from longstanding laws governing adult establishments and adult cabaret—laws that existed long before the 2022 Jackson Pride drag show. *See supra* at 5-6.  The text of the statute thus directly contradicts Plaintiff's proffered narrative.

The legislative history likewise debunks Plaintiff's argument.  The legislature was clearly not attempting to ban all drag performances.  Tr. of Legislative Proceedings at 523, 537-38, 567, 593, 602, 605.  The legislative history is chock full of legislators expressing their intent to protect minors from sexually-explicit performances. *Id.* at 516-17, 520-21, 547 (Sen. Johnson); *id.* at 549 (Sen. Massey); *id.* at 567-68 (Sen. Roberts); *id.* at 576 (Rep. Todd); *id.* at 602 (Rep. Zachary); *id.* at 606 (Rep. Bulso).  And it contains repeated references to the goal of applying the same standards governing adult establishments to additional locations. *Id.* at 516-17, 519, 524, 547, 557.

21

To counter this overwhelming evidence, Plaintiff points to statements from a single legislator (Representative Chris Todd) and argues that he introduced the bill to eliminate drag shows. Plaintiff's Br. at 491-93, 499-500. But most of the cited statements come from a news article in the *Jackson Sun*, not from legislative history. *Id*. And members of the Tennessee *Senate* filed for introduction of the bill nearly a month before Representative Todd filed for introduction in the House. *See Bill History SB0003*, Tennessee General Assembly, https://wapp.capitol.tn.gov/apps/BillInfo/Default.aspx?BillNumber=SB0003&ga=113.

Moreover, the legislative intent inquiry does not turn on a single legislator. "Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, [the Supreme Court] ha[s] been reluctant to attribute those motives to the legislative body as a whole" because "'[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). "The remarks of a single legislator, even [a] sponsor, are not controlling in analyzing legislative history," *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979)—especially when the text of the statute departs dramatically from the alleged intentions. "[T]he text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022). And the text here tells a clear story: The legislature sought to apply the existing standards for adult entertainment to additional locations.[5]

***The Act satisfies constitutional review***. The Adult Entertainment Act easily satisfies the applicable time-place-manner standard: It furthers a government interest of the utmost importance

---

[5] These laws—like many criminal laws—have *some* overlap. But that does not create any First Amendment problem. If a defendant is charged with multiple crimes, the *Blockburger* test shields him from any double-jeopardy concerns.

(protecting the physical and psychological health of children), and it leaves open "alternative avenues of communication" (any location that complies with existing laws and excludes minors). *City of Renton*, 475 U.S. at 46-47.  Indeed, even if Plaintiff's First Amendment claim warranted strict scrutiny, the Act would be constitutional because it "is narrowly tailored to serve a compelling interest."  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015).

i. The Adult Entertainment Act furthers a core state interest—the protection of minors. This interest is so foundational that "[i]t is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling."  *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (quotations omitted).  And the Supreme Court has recognized, too, that this "compelling interest . . . extends to shielding minors from the influence" of speech "that is not obscene by adult standards."  *Sable Commc'ns*, 492 U.S. at 126.  Binding precedent thus resolves the question of whether a compelling interest exists here.  *See id.*; *FCC v. Pacifica Found.*, 438 U.S. 726, 749-50 (1978); *Ginsberg*, 390 U.S. at 640; *see also, e.g.*, *Crawford v. Lungren*, 96 F.3d 380, 386 (9th Cir. 1996) (compiling Supreme Court precedent).

Plaintiff suggests that no compelling interest exists because "[t]he legislature undertook no studies, gathered no data, and presented no evidence."  Plaintiff's Br. at 500.  But that argument fails on the facts and the law.  As a factual matter, the legislature *did* take evidence from witnesses who explained that exposure to sexually explicit content "grooms [children] into accepting adult sexual behavior as normal, healthy, and even celebrated while it encourages them to simulate and participate in high-risk sexual behaviors."  Tr. of Legislative Proceedings at 525.  The legislature heard that "sexual desensitization" experienced by children exposed to sexually-explicit entertainment "renders them more vulnerable to sexual predation," "empowers child predators," teaches children "that sexuality is a vehicle for attention, affirmation, and money," and

"normaliz[es] . . . sexual exploitation." *Id.* at 525-28, 532 (referencing statement from child sex trafficking survivor and expert Dr. Jennisue Jessen).

Moreover, Plaintiff's argument fails as a matter of law by asking this Court to impose an evidentiary requirement rejected by binding precedent. Where "issues of substantive due process, equal protection, and the First Amendment" are at stake, "the weight of a state's interest has always been a *legal* question, not a factual one." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 871 (5th Cir. 1993) (emphasis added). In most cases, a State's interest will "not easily reduce to precise definition," much less "lend itself to proof by documentary record." *Williams-Yulee*, 575 U.S. at 447. And "a documentary record is unnecessary to substantiate" the State's compelling interest in protecting children here. *Platt v. Bd. of Comm'rs on Grievances & Discipline*, 894 F.3d 235, 243-44 (6th Cir. 2018) (emphasis omitted); *Ferber*, 458 U.S. at 756-57 (describing the interest as "evident beyond the need for elaboration"). It is likewise unnecessary to "demonstrat[e] that adverse secondary effects result from the operation of sexually oriented businesses." *Richland Bookmart*, 555 F.3d at 524; *see also City of Renton,* 475 U.S. at 51-52 (same).

ii. The Adult Entertainment Act is narrowly tailored to address Tennessee's compelling interest in shielding minors from exposure to obscene performances. The Act applies only to "a narrow slice of speech"—sexual speech that is obscene to minors under an adapted *Miller* test. *Williams-Yulee*, 575 U.S. at 452. And it does not ban that speech; it merely requires the performances to occur in adult-only zones. Adult Entertainment Act at 93; Tenn. Code Ann. § 39-17-901(6). The Act thus "tightly fits the State's compelling interest" by "limiting children's exposure," while "still allow[ing] adults to" view the performances. *Crawford*, 96 F.3d at 387 (holding that a restriction on adult-oriented publications satisfied strict scrutiny). It "targets and

eliminates no more than the exact source of the 'evil' it seeks to remedy": exposure of children to obscene speech. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). And there is no narrower way to further the State's interest. Accordingly, the Act is narrowly tailored.

Plaintiff's contrary argument is hard to follow because it "conflate[s] the narrow-tailoring analysis with the overbreadth analysis." *Turco v. City of Englewood*, 935 F.3d 155, 170 (3d Cir. 2019); Plaintiff's Br. at 502-07. "The concepts are distinct, though." *Doe I v. Landry*, 909 F.3d 99, 108 (5th Cir. 2018). The narrow-tailoring inquiry asks whether the government has "regulate[d] expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals," *Richland Bookmart*, 555 F.3d at 528, whereas overbreadth compares constitutional applications with allegedly unconstitutional applications, *see infra* at 26. Plaintiff's merger of the doctrines may be "grammatically reasonable," but it is "doctrinally conflating." *Doe I*, 909 F.3d at 108-09.

The only argument in Plaintiff's brief that even colorably addresses narrow tailoring is Plaintiff's objection to the lack of a parental-consent exception. Plaintiff's Br. at 506-07. But the State is not required to provide a parental-consent exception for every restriction related to minors. When it comes to regulating minors' access to sexually explicit materials, the State has its own "independent interest in the well-being of its youth." *Ginsberg*, 390 U.S. at 639-40; *see supra* at 23. This is why, for example, children are not allowed in adult-oriented establishments—like strip clubs—even with their parents' consent. *See* Tenn. Code Ann. § 7-51-1113(e). And it is why children cannot participate in pornography, even if their parents would allow it. *Connection Distrib.*, 557 F.3d at 328-29 ("Congress may suppress child pornography in its entirety due to its scarring impact on the children."). Plaintiff simply errs in suggesting that laws without parental-consent exceptions categorically fail the narrow tailoring requirement.

In sum, strict scrutiny does not apply.  And even if it did, the Act uses appropriate means to pursue compelling government interests, so the First Amendment claim lacks merit.

### C.    The Adult Entertainment Act is not overbroad.

Plaintiff cannot show that the Adult Entertainment Act is unconstitutionally overbroad. The overbreadth doctrine allows courts to "invalidate[] [a statute] as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 n.6 (2008)).  But invalidation for overbreadth is "strong medicine" that courts dispense "with hesitation, and . . . only as a last resort," *Ferber*, 458 U.S. at 769 (quotations omitted), even in free-speech cases.  *Connection Distrib.*, 557 F.3d at 336. Consistent with the limited scope of the doctrine, courts have "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep," *United States v. Williams*, 553 U.S. 285, 292 (2008), and have placed "the burden of demonstrating . . . substantial overbreadth" on the challenger, *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).[6]

Here, Plaintiff claims that the Adult Entertainment Act is unconstitutionally overbroad because it applies "in a location where the adult cabaret entertainment could be viewed by a person who is not an adult."  Plaintiff's Br. at 506; Tenn. Code Ann. § 7-51-1407(c)(1)(B).  This subsection, Plaintiff contends, could regulate obscene performances at birthday parties, private homes, and age-restricted restaurant brunches—or even the internet.  Plaintiff's Br. at 506.  But

---

[6] The State preserves the right to challenge the viability of the overbreadth doctrine.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1583 (2020) (Thomas, J., concurring).  And given the "cogent[] critici[sm]" of the doctrine, this Court should decline to "expand it" in any way.  *See United States v. Yung*, 37 F.4th 70, 76 (3d Cir. 2022) (citing *Sineneng-Smith*, 140 S. Ct. at 1583-88 (Thomas, J., concurring)).

Plaintiff nowhere demonstrates, "from the text of the law and from actual fact, that substantial overbreadth exists." *Hicks*, 539 U.S. at 122 (quotations omitted).

As a threshold matter, Plaintiff fails to establish why the application of the Adult Entertainment Act in the stated locations violates the First Amendment. Just because a statute applies broadly does not mean that it is unconstitutionally overbroad; the plaintiff must show the supposed breadth causes a "substantial number of *unconstitutional* applications." *Ent. Prods., Inc. v. Shelby Cty.*, 588 F.3d 372, 394 (6th Cir. 2009) (quotations omitted) (emphasis added). That is, an overbreadth argument rests on the premise that the breadth of the statute *causes some applications to be unconstitutional* and then compares those unconstitutional applications to constitutional ones. It is not enough to point out that the Act is widely applicable.

Many of the posited applications of the Act pose no constitutional problem. Other than the "explicitly narrow and precisely delineated" right to *possess* obscenity in the privacy of one's own home, the State has nearly unfettered ability to prohibit obscenity because it "is not protected by the First Amendment." *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 126-27 (1973); *United States v. Worley*, 550 F.3d 326, 332 (4th Cir. 2008). And the State can prevent an "age-restricted drag brunch" that is "harmful to minors" from intentionally allowing "children [to] see the show through the windows," Plaintiff's Br. at 506, just like it can prevent strip clubs from intentionally allowing children to see their performers through the windows of an adult establishment. Tenn. Code Ann. § 7-51-1113(e).

Moreover, even assuming that some of Plaintiff's farfetched hypotheticals violate the First Amendment, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Plaintiff must show "*substantial* overbreadth"—

and fails to do so.  *Hicks*, 539 U.S. at 122 (emphasis added).

In any event, this Court must "construe the statute to avoid constitutional [overbreadth] problems."  *Ferber*, 458 U.S. at 769 n.24; *see Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 786 (6th Cir. 2005).  "[E]very reasonable construction must be resorted to in order to save a [legislative act] from unconstitutionality."  *Hooper v. California*, 155 U.S. 648, 657 (1895).  And the language "in a location where the adult cabaret entertainment could be viewed by a person who is not an adult" can be narrowly construed to avoid any constitutional issue.

The Court can construe the term "location" to refer to *physical* locations—not the internet.  That interpretation comports with the plain meaning of the text.  *Location*, Black's Law Dictionary (11th ed. 2019) ("The designation of the boundaries of a particular piece of land, either on the record or on the land itself."); *Location*, Merriam-Webster's Dictionary ("a tract of land designated for a purpose"), https://www.merriam-webster.com/dictionary/location (last visited Apr. 21, 2023).  It comports with the statutory scheme's focus on physical structures and locations. Tenn. Code Ann. §§ 7-51-1401(4) (definition), -1407 (location), -1403 (structure), -1402 (hours).  And it comports with the legislative history.  Tr. of Legislative Proceedings at 515-16 (referring to "age-restricted venues" and "public property"); *id.* at 516 (discussing application to "locations that are not required to be regulated under the current adult entertainment law"); *id.* at 521 (referencing establishments "in some of [Tennessee's] larger cities"); *id.* at 539 (contemplating "public park[s]" and "private venue[s]").

The Court could also construe the phrase "in a location where the adult cabaret entertainment could be viewed by a person who is not an adult" to refer to locations *accessible by the public*—not private property to which the public is excluded.  The text of the Act is "readily susceptible to [such a] limitation."  *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397

(1988) (quotations omitted).   And adopting the proposed construction would fit with the statutory scheme and context: the statute as a whole covers publicly accessible spaces, and the Act otherwise imposes restrictions on publicly accessible "public property."  *See* Tenn. Code Ann. §§ 7-51-1401, *et seq.*; Adult Entertainment Act at 93; *Smith v. United States*, 508 U.S. 223, 229 (1993) ("Language, of course, cannot be interpreted apart from context.").   Moreover, the legislative history supports the limitation.  Tr. of Legislative Proceedings at 515-16 (referring to performances "held in public"); *id.* at 521 (discussing entertainment in "public settings"); *id.* at 539 (referencing "public park[s]" and "private venue[s]" where you have "to check IDs at the door"); *id.* at 549 ("open forum").

In short, Plaintiff has not carried its "burden of demonstrating . . . substantial overbreadth," *Hicks*, 539 U.S. at 122, and even if it had, this Court can—and must—adopt a narrowing construction to avoid any constitutional issue.

### D.    The Void-for-Vagueness Doctrine does not apply.

Nor can Plaintiff establish that the Adult Entertainment Act is unconstitutionally vague. Courts apply the void-for-vagueness doctrine only to statutes that do not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).   And the Supreme Court has made clear that state statutes following the *Miller* obscenity test are not unconstitutionally vague.  *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57 (1989).  "The mere fact juries may reach different conclusions as to the same material does not mean that constitutional rights are abridged."  *Miller*, 413 U.S. at 26 n.9.

Plaintiff suggests that the Act is different because it defines the prohibited obscenity based on community standards in "*the judicial district.*"  Plaintiff's Br. at 504; *see also* Tenn. Code Ann.

§ 39-17-901(2), (6)(A)-(B).[7]  But Plaintiff cites no case law to support that proposition.  And there is a reason for that: the Supreme Court has explicitly stated that "[a] State may choose to define an obscenity offense in terms of 'contemporary community standards' as defined in *Miller* without further specification . . . *or it may choose to define the standards in more precise geographic terms*."  *Jenkins v. Georgia*, 418 U.S. 153, 157 (1974) (emphasis added).

The Adult Entertainment Act does just that.  And there is no constitutional problem with defining the relevant "community" for a *Miller* analysis as the judicial district.  *See Hamling v. United States*, 418 U.S. 87, 106 (1974) ("The fact that distributors of allegedly obscene materials may be subjected to varying community standards *in the various federal judicial districts* into which they transmit the materials does not render a . . . statute unconstitutional." (emphasis added)); *United States v. Little*, 365 F. App'x 159, 164 (11th Cir. 2010) (finding no error in defining the community standard to include those in "the Middle District of Florida").  In fact, defining the relevant community as the judicial district mirrors the default rule—that "obscenity is determined by the standards of the community where the trial takes place."  *United States v. Thomas*, 74 F.3d 701, 711 (6th Cir. 1996); *see also Ashcroft*, 535 U.S. at 576-77 ("Absent geographic specification, a juror applying community standards will inevitably draw upon personal knowledge of the community or vicinage from which he comes." (quotations omitted)).

Put simply, even assuming that the Act creates "31 separate" obscenity standards (which,

---

[7] Plaintiff claims that "th[e] definition of 'community' renders the law vague *and overbroad*." Plaintiff's Br. at 504 (emphasis added).  While it is true that "[t]he void-for-vagueness doctrine and the overbreadth doctrine vindicate overlapping values in First Amendment jurisprudence," *Ent. Prods.*, 588 F.3d at 379, they remain distinct doctrines.  And this argument does not appear to turn on a comparison of "unconstitutional" applications of the statute to "legitimate" applications.  *Stevens*, 559 U.S. at 473.  Rather, the contention seems to be that the statute is unconstitutional in *all* of its applications due to the (supposedly) varying community standards. Accordingly, Defendant analyzes the issue under the vagueness rubric.

as a practical matter, seems hyperbolic), Plaintiff's Br. at 504, that creates no vagueness problem. The *Miller* standard is not unconstitutionally vague. And the district-based definition of "community" causes no constitutional issue. "If a [performer] chooses to [perform] in[] a particular community, . . . it is the [performer's] responsibility to abide by that community's standards." *Ashcroft*, 535 U.S. at 583.

## II.   Other Equitable Factors Favor Defendant.

Equity also cuts against injunctive relief: Plaintiff fails to bear its burden of establishing irreparable harm, ignores the harm an injunction would impose on the State, and disregards the public's interest. The Court should deny the motion on these independent grounds.

*First*, Plaintiff has not—and cannot—demonstrate irreparable harm. For one, Plaintiff's First Amendment claim lacks merit, *see supra* Part I.B, so it necessarily follows that Plaintiff's claim "that [it] is irreparably harmed by the deprivation of [its] First Amendment rights also fails." *McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012). What is more, Plaintiff cannot show that it has provided or will provide performances that violate the Act. *See supra* Part I.A.2. An unsubstantiated "fear" or purely "hypothetical threat of prosecution is not an immediate, irreparable injury that warrants the extraordinary remedy of" injunctive relief. *D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (quotations omitted).

*Second*, the balance of equities tips sharply in favor of denying injunctive relief: Plaintiff's injury is non-existent, and the State will suffer significant harm. As a general matter, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) (cleaned up). And, here, the State has a well-recognized, compelling interest "in safeguarding the physical and psychological well-being of . . . minor[s]." *Ferber*, 458 U.S. at 756-57 (quotations omitted); *see supra* at 23. An injunction reaching beyond the Plaintiff would thwart the State's

efforts to ensure its children are "safeguarded from abuses which might prevent their growth into free and independent well-developed . . . citizens" and would leave Tennessee kids "vulnerable to sexual predation."  Tr. of Legislative Proceedings at 525.  The State's interests thus vastly outweigh Plaintiff's illusory harm.

*Third*, for obvious reasons, the public interest also cuts against the Court's intervention. Nothing is more important than protecting the well-being of children, and the Act furthers that interest by shielding kids from exposure to sexual/sadomasochistic performances that are obscene to minors.  "[H]undreds, if not thousands" of citizens called on the legislature to carry out the public interest of protecting children from exposure to "overtly sexual entertainment . . . in a public area." Tr. of Legislative Proceedings at 547.  "It's in the public interest that [this Court] give effect to the will of the people by enforcing the laws they and their representatives enact." *Thompson*, 976 F.3d at 619.  This Court should decline to grant the "drastic and extraordinary remedy" of injunctive relief.  *Monsanto Co.*, 561 U.S. at 165.

## III.    Mulroy Must Be Dismissed in His Individual Capacity.

Plaintiff erred in suing D.A. Mulroy in his individual capacity.  "[I]ndividual (or personal) capacity suits do not seek to conform the State's conduct to federal law." *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002).  Instead, such suits seek relief "from the defendant personally." *Id.*  Plaintiff seeks the former, not the latter, First Amended Compl. at 63-64, and D.A. Mulroy cannot provide that requested relief in his individual capacity.  "[O]nly by acting as a government official (not as an individual acting personally), can [Mulroy's] compliance with a court decree remedy the . . . policy or practice that is being challenged." *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007).  Put otherwise, the requested injunctive relief "can only be provided by the individual defendant[] in [his] official capacit[y]—not the individual defendant[] in [his] personal capacit[y]." *Id.* at 25.  A mountain of precedent thus bars the individual-capacity

claim.  *See, e.g.*, *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 518
(6th Cir. 2023); *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389,
401 (6th Cir. 2005); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989); *Brown v. Montoya*, 662 F.3d
1152, 1161 n.5 (10th Cir. 2011); *Cooperrider v. Beshear*, No. 3:22-cv-00016, 2023 WL 2612603,
at *5 (E.D. Ky. Mar. 23, 2023); *Constantino v. Mich. Dep't of State Police*, 707 F. Supp. 2d 724,
731-32 (W.D. Mich. 2010); *Milligan v. United States*, No. 3:07-cv-1053, 2008 WL 1994823, at
*15 (M.D. Tenn. May 2, 2008).

## IV.    Any Injunction Should Be Limited in Scope.

If the Court does issue an injunction, it should tailor relief to this suit's proper boundaries.
The injunction should only apply to D.A. Mulroy, and it should not extend beyond the allegedly
unconstitutional component of the statute.

*Limited to Proper Defendant*:  To the extent an injunction issues, it should be limited to
D.A. Mulroy in his official capacity.  "[F]ederal courts enjoy the power to enjoin individuals tasked
with enforcing laws, not the laws themselves."  *Whole Woman's Health v. Jackson*, 141 S. Ct.
2494, 2495 (2021) (citing *California v. Texas*, 141 S. Ct. 2104, 2115-16 (2021) (denying
application for an injunction pending appeal)).  So this Court's authority is limited to granting
injunctive relief that operates on "an *in personam*" basis, "coercing" a particular party—D.A.
Mulroy—into "refraining from acting."  *Universal Life Church Monastery Storehouse v. Nabors*,
35 F.4th 1021, 1032 (6th Cir. 2022).

*Limited in Scope*:  Any injunctive relief should also be limited in scope.  In general, courts
seek "to enjoin only the unconstitutional applications of a statute . . . or to sever its problematic
portions while leaving the remainder intact."  *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329
(2006) (citations omitted); *see also Connection Distrib.*, 557 F.3d at 335, 342.  Indeed, the
Supreme Court has imposed a "strong presumption" that "an unconstitutional provision in a law

is severable from the remainder of the law or statute," even in the absence of a severability clause. *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2350 (2020).

Here, each of the challenged aspects of the statute can be cleanly severed.  The Act's reference to "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers" can be severed—and doing so would not even narrow the scope of the statute.  *See supra* at 19-20.  The Act's application "in a location where the adult cabaret entertainment could be viewed by a person who is not an adult" could be severed *if* this language renders the statute substantially overbroad *and* the Court declines to adopt a narrowing construction. *See supra* at 28-29.  And the applicable definition of "community" as the "judicial district" could be severed if the Court somehow finds it constitutionally problematic.  Tenn. Code Ann. § 39-17-901(2), (6); *Jenkins*, 418 U.S. at 157 ("A State may choose to define an obscenity offense in terms of 'contemporary community standards' as defined in Miller without further specification.").

In each of these instances, "the remainder of the statute [would be] capable of functioning independently."  *Barr*, 140 S. Ct. at 2352 (quotations omitted).  The injunction would protect Plaintiff's supposed interests. *Cf. Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994).  And the relief would respect federalism interests that "restrain a federal court" in issuing injunctive relief.  *Rizzo v. Goode*, 423 U.S. 362, 379-80 (1976); *see also Kallstrom*, 136 F.3d at 1069.  Any injunction reaching beyond the allegedly problematic aspects of the statute would be "overly broad" and "completely unnecessary to provide [Plaintiff] the relief to which [Plaintiff is supposedly] entitled." *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003); *see also Califano v. Yamasaki*, 442 U.S. 682, 702–03 (1979).

In short, Plaintiff has not carried the burden of justifying an injunction, much less the

sweeping facial invalidation Plaintiff requests.

## CONCLUSION

The Court should deny the requested injunction and enter judgment in favor of Defendant.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

s/James R. Newsom III
James R. Newsom III (TN BPR No. 6683)
Special Counsel
J. Matthew Rice (TN BPR No. 40032)
Special Assistant to the Solicitor General
Robert W. Wilson (TN BPR No. 34492)
Senior Assistant Attorney General
Steven J. Griffin (TN BPR No. 40708)
Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
Jim.Newsom@ag.tn.gov
Matt.Rice@ag.tn.gov
Robert.Wilson@ag.tn.gov
Steven.Griffin@ag.tn.gov

**CERTIFICATE OF SERVICE**

I certify that I filed the above document using the Court's CM/ECF system on August 16, 2022, which electronically served a copy to all counsel of record.