IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC. <br><br> PLAINTIFF, <br><br><br> v. <br><br><br><br> STEVEN J. MULROY, *in his individual and official capacity as District Attorney General of Shelby County, Tennessee*, <br><br> DEFENDANT | ) <br> ) **Case No. 2:23-cv-02163-TLP-tmp** <br> ) <br> ) <br> ) <br> ) **COMPLAINT FOR VIOLATIONS OF** <br> ) **THE CIVIL RIGHTS ACT OF 1871, 42** <br> ) **U.S.C. § 1983** <br> ) <br> ) <br> ) |

**PLAINTIFF'S REPLY TO DEFENDANT'S TRIAL BRIEF**

Plaintiff Friends of George's, Inc., (hereinafter "Plaintiff"), by and through its undersigned attorneys, and in reply to Defendant's *Brief of Steven J. Mulroy In His Official Capacity*, states as follows:

At the intersection of child protection and free speech, there is an entire body of modern jurisprudence. The central cases in this body of law are *Reno v. ACLU*, 521 U.S. 844 (1997) and *Ashcroft v. ACLU*, 542 U.S. 656 (2004) (hereinafter, "*Ashcroft II*"). Since 1997, the Supreme Court has been forced to resolve issues arising in a rapidly changing society, and has done so effectively and decisively. In a brief that cites to one hundred and twenty (120) cases, Defendant

has failed to meaningfully engage with this jurisprudence entirely.[1] While Defendant may choose to ignore essential, controlling caselaw, this Court should not.

## I. PLAINTIFF HAS STANDING TO BRING THIS CASE

Plaintiff incorporates herein its arguments in its Supplemental Response to Defendant's Motion to Dismiss. ECF 61.

## II. THE STATUTE IS SUBJECT TO STRICT SCRUTINY

### A. The Statute Is Not A Time, Place, and Manner Restriction.

Defendant first argues broadly that, "strict scrutiny does not apply when a statute prohibits minors from accessing content that is obscene as to minors, but not as to adults, if adults can still obtain the regulated speech," citing *Sable Commc'ns of Cal. V. FCC*. ECF 58 at 795. This is the opposite of the *Sable* holding. In *Sable*, the Supreme Court applied strict scrutiny to and struck down an FCC regulation designed to limit minor children's access to dial-a-porn that was indecent, but not obscene for adults. 492 U.S. 115, 126 (1989).

Nor have courts "routinely declined to apply strict scrutiny" to laws like the one at issue here. ECF 58 at 795. In *Reno v. ACLU*, Congress sought to protect minors from harmful material on the internet by criminalizing the knowing transmission of certain explicit content to minors under the age of 18. The Supreme Court applied strict scrutiny and found that the law was an unconstitutional restriction on protected speech. 521 U.S. 844, 879 (1997). In *Ashcroft II*, the Court applied strict scrutiny to COPA, another federal law regulating sexually explicit internet content that was "harmful to children," that used substantially similar definitions to those at issue in this

---

[1] Defendant's citations are prolific, but are rife with inaccuracies and misrepresentations. In the interest of judicial economy, Plaintiff has attached Appendix A, detailing for the Court's convenience the most glaring errors and misrepresentations.

case and again found the law to be a violation of the First Amendment. Defendant makes no attempt to distinguish *Ashcroft II* from this case, and *Reno* is nowhere to be found.[2]

Defendant claims that this is a time, place, and manner regulation, and asserts that intermediate scrutiny is appropriate. Such restrictions must satisfy the three-prong test from *Ward v. Rock Against Racism*: (1) the restrictions must be content-neutral; (2) the restrictions must be narrowly tailored to serve a significant governmental interest; and (3) the restriction must leave open ample alternative channels. 491 U.S. 781, 791 (1989).

The Statute fails this test. The statute is not content-neutral because it does not serve a purpose "*unrelated to the content of expression*" and does not have only an *incidental* effect on some speakers or messages. *Id*. (emphasis added). Defendant's own brief describes the Statute as a "subject-matter restriction," and is replete with references to the content of the restricted speech. ECF 58 at 797; *see Id.* at 801 (stating that the Act only applies to "sexual speech that is obscene to minors under an adapted *Miller* test."); *Id.* at 802.

Thus, Defendant has the burden of production and persuasion to show that the Statute can survive strict scrutiny.

**B. The Secondary Affects Doctrine Does Not Apply.**

Defendant asserts that, should the Court find that the Statute is content-based, strict scrutiny is still unwarranted under the secondary effects doctrine, because "by protecting children from obscene content, the Adult Entertainment Act (hereinafter "the Act") inherently addresses the secondary effects associated with exposure to such content – namely, an increase in 'sexual exploitation crimes.'" This argument too fails.

---

[2] Defendant's brief contains two citations to *Ashcroft II*, both of which are only to the dissent. ECF 58 at 791.

First, the secondary effects doctrine requires that the *predominant concerns* motivating the Statute "were the secondary effects of adult speech, and not with the content of adult speech." *City of L.A. v. Alameda Books*, 535 U.S. 425, 440-41 (2002). As in *Reno*, the law seeks "to protect children from the alleged 'primary effects'" of the speech itself, "rather than any 'secondary' effect of such speech." *Reno v. ACLU*, 521 U.S. at 868.

For the secondary-effects doctrine to apply, the restriction must be "justified without reference to the content of the regulated speech." *Renton v. Playtime Theatres*, 475 U.S. 41, 48 (1986).

**The Statute Was Adopted for an Impermissible Purpose.**

Should the Court decide to construe the statute as content-neutral, the Statute is still subject to strict scrutiny, because "an impermissible purpose or justification underpins the law." *Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015).

Defendant argues that the "legislature sought to apply the existing standards for adult entertainment to additional locations." ECF 58 at 800. That is patently false. This new offense created by the Act does not use the definitions within the Adult-Oriented Business statute. Instead, the Act amends the definitions section, § 7-51-1401, to include a wholly new term, "adult cabaret entertainment." That definition is unique within the Adult-Oriented Business statute, because unlike any other part of that statute, it cross-references and borrows definitions from Tennessee's 1980 criminal obscenity statute, Tenn. Code Ann. §39-17-901. These definitions were never used in regulating adult-oriented businesses or entertainers. They were only used in regulating the sale of indecent materials such as pornography magazines and videos to minors. These definitions and § 1407 make "representation[s] or description[s]" of sexually explicit content a class A misdemeanor for a first offense and an E felony for a second.

If the State had only intended to "apply the existing standards for adult entertainment to additional locations," it would have actually done so rather than create a new offense.

But the final nail in the coffin is found in T.C.A. § 39-13-511, which contains Tennessee's public indecency and indecent exposure laws. The statute reads in part:

**T.C.A § 39-13-511**

**(b) (1)** A person commits the offense of indecent exposure who:

**(B) (i)** Knowingly invites, entices or fraudulently induces the child of another into the person's residence for the purpose of attaining sexual arousal or gratification by intentionally engaging in the following conduct in the presence of the child:

**(a)** Exposure of such person's genitals, buttocks or female breasts; or

**(b)** Masturbation.

If the child is under 13 this is a Class A misdemeanor. If the child is over 13 it is a Class B misdemeanor. An adult who knowingly lures a thirteen-year-old child into their home and intentionally masturbates in front of that child faces a lesser penalty than a drag performer who *describes* masturbation on stage in front of a 17-year-old. The Act is aimed at criminalizing speakers, not protecting children. If children were the concern, actual child predators would face stiffer penalties than risqué drag performers.

### III. The Adult Entertainment Act is Overbroad Because it Criminalizes a Substantial Amount of Protected Speech and is Therefore not Narrowly Tailored.

Defendant argues that to prevail on a facial challenge, Plaintiff must "establish that no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep." ECF 58 at 790 (quoting *Ams. for Propserity Found. V. Bonta*, 141 S. Ct 2373, 2387 (2021)). Defendant is incorrect, as the very next sentence in *Ams. for Prosperity Found v. Bonata* makes clear: "In the First Amendment context, however, a second type of facial challenge

is recognized, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*.

Defendant misstates Plaintiff's position dramatically, arguing that Plaintiff's sole basis for arguing overbreadth is "because [the Act] applies 'in a location where the adult cabaret entertainment could be viewed by a person who is not an adult.'" ECF 58 at 803. Again, this is wide of the mark. Defendant has confused Plaintiff's position that the Act is not narrowly tailored and is unconstitutionally vague with its argument that the Act is overbroad. "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Free Speech Coalition*, 535 U.S. at 244.

The primary question in the overbreadth analysis is whether the *type* of speech the Act regulates "falls within the First Amendment's vast and privileged sphere." *Id.* "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft II*, 535 U.S. at 255. "[I]t is important to ensure that legitimate speech is not chilled or punished." *Ashcroft II,* 542 U.S. at 666. (Affirming the 3d Circuit's determination that a preliminary injunction barring implementation of the Child Online Protection Act ("COPA") was not narrowly tailored.) "The purpose of the test is to ensure that speech is restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished." *Ashcroft II*, 542 U.S. at 666.

The Supreme Court decided *Ashcroft II* on the basis that the statute was not narrowly tailored, but on remand the Third Circuit applied a detailed overbreadth analysis to the definition of "harmful to minors" used in COPA and found the statutory definitions both overbroad and not narrowly tailored. *ACLU v. Mukasey,* 534 F.3d 181 (3d Cir., 2008) (*Ashcroft II* on remand to the

3d Cir.). The definition of "harmful to minors" used in COPA is substantially similar (indeed nearly identical) to the statutory definitions found at § 39-17-901. *Ashcroft II,* 542 U.S. at 661-62.

> Material that is "harmful to minors" is defined as:
>
> "any communication, picture, image, graphic image file, article, recording, writing, or other matter of any kind that is obscene or that—
>
> "(A) the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest;
>
> "(B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual contact, an actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast; and
>
> "(C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." § 231(e)(6).
>
> "Minor[s]" are defined as "any person under 17 years of age." § 231(e)(7).

*Id.*

> Compare this to the definitions employed by the Adult Entertainment Act:
>
> (6) "Harmful to minors" means that quality of any description or representation, in whatever form, of nudity, sexual excitement, sexual conduct, excess violence or sadomasochistic abuse when the matter or performance:
>
> (A) Would be found by the average person applying contemporary community standards to appeal predominantly to the prurient, shameful or morbid interests of minors;
>
> (B) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and
>
> (C) Taken as whole lacks serious literary, artistic, political or scientific values for minors;

Tenn. Code Ann. § 39-17-901.

As these definitions of "harmful to minors" are substantially similar, the Third Circuit's detailed analysis in *Mukasey* is highly instructive. The *Mukasey* Court held that COPA was

7

overbroad in part simply because of its definition of "minor." The Act defines "minor" as any person under the age of eighteen. COPA defined it as any person under the age of seventeen. *Mukasey,* 534 F.3d at 662. The Third Circuit held that these definitions were overbroad because COPA "impermissibly places at risk a wide spectrum of speech that is constitutionally protected. . . . " *Id.* at 206. The Court held that "COPA's definition of "minors" renders the statute overinclusive because it "broadens the reach of 'material that is harmful to minors' under the statute to encompass a vast array of speech that is clearly protected for adults – and indeed, may not be obscene as to older minors." *Id.*

Applying its prior reasoning from *Ashcroft II*, the Third Circuit noted that this definition of "minor" causes the statute to "appl[y] in a literal sense to an infant, a five-year old, or a person just shy of age seventeen." *Id.* at 191. The Court reasoned that the definition of "harmful to minors" predicated on community standards, when coupled with the definition of "minor" itself, rendered the statute impermissibly vague and overbroad because speech fit for a five-year-old is not the same as speech fit for a seventeen year old, subjecting publishers "to great uncertainty in deciding what minor could be exposed to its publication." *Id.* The reason is not that the definition of "minor" is not clear by itself; rather, "contemporary community standards" are not the same for a five-year-old and a seventeen-year-old. *Id.* The *Mukasey* Court expressly rejected the Government's reasoning that the statute should be read to apply "only to normal, older adolescents." *Id.* Likewise, in the case at bar, the sliding scale of what is "harmful to minors" slides too far and too readily. These are decisions best left to private citizens and parents, not a government intent on childproofing the world as though it were a nursery.

The Act applies to both commercial and noncommercial speech and applies to even a single performance. Tenn. Code. Ann. § 7-51-1401. This, too, runs afoul of the *Mukasey* reasoning. In

passing COPA, Congress attempted to limit its regulation to commercial speech. *Id*. at 192. But the Third Circuit reasoned that the term "commercial" was overbroad because it would encompass even non-paid transactions that made up only a small portion of a publisher's work. *Id.* The Act *explicitly* encompasses uncompensated performances and could subject performers to liability; worse, it could subject performers who did not actually engage in the conduct that is "harmful to minors" to arrest and prosecution. The Act makes it "an offense for a person to perform adult cabaret entertainment," and "[a]dult cabaret entertainment . . . [m]eans adult-oriented performances that are harmful to minors, as that term is defined in § 39-17-901, and that feature topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." When determining whether a performance is "harmful to minors," it must be "taken as a whole." Tenn. Code Ann. § 39-17-901(6)(c). It is clear from this language that the offense is *merely participating* in a performance that features these entertainers and is "harmful to minors." Tenn. Code Ann. § 7-51-1401 & 1407. And because the statute contains no *mens rea* requirement whatsoever, a person could be subject to prison for merely appearing in such a performance *even without the intent* to be in a stage play or musical performance that does violate the statute.

This is essentially the same reasoning that the *Mukasey* court used when finally invalidating COPA. *Id* at 181. COPA's requirement that the content be "taken as a whole" to determine whether it "lacked serious literary, artistic, political or scientific value for minors" meant that an entire publication would be treated as violating COPA even if only a single exhibit crossed the line of what was "harmful to minors." The definitions used in the Act are the same. Something is "harmful to minors," "when the matter or performance . . . taken as a whole lacks serious literary, artistic, political or scientific value for minors."

9

In the context of a performance, that would mean that only a single performer in a single scene or song need violate the Act for the entire performance and all of its performers to have violated the Act, a sort of felony murder doctrine for the stage.

The Defendant will likely argue that the statute must be read to exclude performances that contain *any* literary, artistic, political, or scientific value for minors, but this would render the law virtually meaningless. Recall, these definitions were originally only used in § 39-17-911, the portion of the statute regulating the sale and display of, *inter alia*, pornographic magazines to minors. Certainly, the legislature did not intend to regulate magazines that were *exclusively* smut while leaving those, like *Playboy*, that also contained serious literature and political editorials available for purchase by minors. Under that interpretation of the definition, a single performer who engaged in the most lascivious, overt, perverse sexual acts on stage in front of a child could then completely cure the performance by donning a lab coat and teaching the audience how to make a volcano for their science fair project. Thus, "taken as a whole" must be read such that an act that is "harmful to minors" must criminalize the entire performance and everyone in it.

Defendant fails to engage with any of these issues, instead preferring to hinge their case on the conclusory insistence that this statute aims to protect minors from a perceived "increase in sexual exploitation crimes," which they argue justifies this burden on protected speech. But "the mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it," and "the Government may not prohibit speech on the ground that it may encourage pedophiles to engage in illegal conduct," absent a "significantly stronger, more direct connection." *Free Speech Coalition*, 535 U.S. at 253; *but see United States v. Williamson*, 553 U.S. 285 (2008) (holding that a ban on specific and explicit offers to distribute or requests to receive actual child pornography constituted unprotected speech).

Defendant asks this Court to invert the First Amendment and determine whether the Act could further the governmental interest in protecting children against abuse, something that is already quite illegal and punishable by lengthy prison terms. The overbreadth and narrow tailoring analyses do not permit this. "[T]he test does not begin with the status quo of existing regulations, then ask whether the challenged restriction has some additional ability to achieve Congress' legitimate interest. Any restriction on speech could be justified under that analysis. Instead, the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives." *Ashcroft II*, 542 U.S. 666.

The Act is overbroad and should be held unconstitutional.

Respectfully submitted,

/s/ *Brice M. Timmons*
Brice M. Timmons (#29582)
Melissa J. Stewart (#40638)
Craig A. Edgington (#38205)
Donati Law, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
Brice@donatilaw.com
Melissa@donatilaw.com
Craig@donatilaw.com
**Counsel for Plaintiff**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was served upon all parties of record via the Court's ECF system on the 5th day of May, 2023.

*/s/ Brice M. Timmons*