**Appendix – Improper Case Cites in Brief of Steven J. Mulroy in His Official Capacity (ECF 58)**

| Case & Brief Page | Mulroy Brief Cite | Analysis |
|---|---|---|
| *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016), p. 13 | "The Sixth Circuit has 'found a credible threat of prosecution' only when 'plaintiffs allege a subjective chill and point to some combination of the following factors: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action.' *McKay*, 823 F.3d at 869 (citations omitted)." | *First*, the Sixth Circuit did not state that a credible threat of prosecution can "*only*" be found when "plaintiffs allege a subjective chill and point to" one of the three factors. Rather, the *McKay* opinion explained that a plaintiff alleging a "subjective chill" and one of the three enumerated factors can be sufficient to show a credible threat of prosecution.<br><br>*Second*, the Sixth Circuit stated that it has "also taken into consideration a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.* at 869. |
| *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982), p. 13 | "Generally, a 'facial' challenge contends 'that the law is invalid in toto—and therefore incapable of any valid application.' *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982) (quotations omitted)." | *First,* the quote is not relevant, as it was made in the context of an ordinance that did not implicate any significant First Amendment rights, and "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* at 495 n. 7.<br><br>*Second*, the Court also explained "Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 499. |
| *City of Erie v. Pap's A.M.*, 529 U.S. 277, 291 (2000), p. 16 | "The text of the Act extends existing restrictions on adult entertainment and, thereby, mitigates the recognized secondary effects of adult entertainment. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 291 (2000) (plurality) . . . ." | *Erie* is inapposite, as it involved a city ordinance that banned public nudity. *Id*. at 282.  The Court held that the ordinance was a "content-neutral regulation" because the ordinance, "on its face [is] a general prohibition on public nudity.  By its terms, the ordinance regulates conduct alone [, not First Amendment expression]. It does not target nudity that contains an erotic message; rather, it bans all public nudity, regardless of whether that nudity is accompanied by expressive activity." *Id.* at 290, 298. |

| Case & Brief Page | Mulroy Brief Cite | Analysis |
|---|---|---|
| *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986), p. 17 | "'First Amendment jurisprudence has acknowledged limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children.' *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986)." | *Bethel* is not relevant, as it related to restrictions on school-related speech. The Court decided "whether the First Amendment prevents a school district from disciplining a high school student for giving a lewd speech at a school assembly." *Id.* at 677. The Court stated: "The First Amendment does not prevent the school officials from determining that to permit a vulgar and lewd speech such as respondents would undermine the school's basic educational mission. A high school assembly or classroom is no place for a sexually explicit monologue directed towards an unsuspecting audience of teenage students. Accordingly, it was perfectly appropriate for the school to disassociate itself to make the point to the pupils that vulgar speech and lewd conduct is wholly inconsistent with the 'fundamental values' of public school education." *Id.* at 687. |
| *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989), pp. 17–18, 23 | "But the Supreme Court has recognized that *some restrictions* on how and where adults can access material protected for them, but harmful to minors, comport with the First Amendment. *Am. Mini Theatres*, 427 U.S. at 69- 70; *Ginsberg*, 390 U.S. at 640; *cf. Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 130-3118 (1989)."<br><br>"And the Supreme Court has recognized, too, that this 'compelling interest . . . extends to shielding minors from the influence' of speech 'that is not obscene by adult standards.' *Sable Commc'ns*, 492 U.S. at 126." | In *Sable*, the Court found that the provision at issue was "not a narrowly tailored effort to serve the compelling interest of preventing minors from being exposed to indecent telephone messages. . . . It is another case of 'burn[ing] up the house to roast the pig.'" *Id.* at 131 (quoting *Butler v. Michigan*, 352 U.S. 380, 383 (1957)).<br><br>The sentence immediately prior to the quoted material in the second cite states: "The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest *if it chooses the least restrictive means to further the articulated interest*." *Id.* at 126 (emphasis added). The sentence immediately following the quoted material states: "The Government may serve this legitimate interest, but to withstand constitutional scrutiny, 'it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.'" *Id.* |

| Case & Brief Page | Mulroy Brief Cite | Analysis |
|---|---|---|
| **Turner Broad. Sys. v. FCC**, 512 U.S. 622, (1994), p. 19 | "But '[t]o the extent [that] argument rests on the view that all regulations distinguishing between speakers warrant strict scrutiny . . . it is mistaken.' *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 657 (1994)." | *First,* the quote is not relevant, as the case related to cable television systems, and the Court found that the provisions at issue were content-neutral and that the provisions at issue in *Turner* imposed no "restriction, penalty, or burden by reason of the views, programs, or stations the cable operator has selected or will select." *Id.* at 644.<br><br>*Second,* the Court also recognized that "[a]s a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based. . . . By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral." *Id.* at. 643.<br><br>*Third,* shortly following the quoted material, the Court stated, "the proposition that speaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *Id.* at 658. |
| **New York v. Ferber**, 458 U.S. 747 (1982), pp. 23, 24, 26, 28, 31 | "The Adult Entertainment Act furthers a core state interest—the protection of minors. This interest is so foundational that '[i]t is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling.' *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (quotations omitted)."<br><br>"And 'a documentary record is unnecessary to substantiate' the State's compelling interest in protecting children here. *Platt v. Bd. of Comm'rs on Grievances & Discipline*, 894 F.3d 235, 243-44 (6th Cir. 2018) (emphasis omitted); *Ferber*, 458 U.S. at 756-57 (describing the interest as 'evident beyond the need for elaboration')." | *Ferber* is not relevant because it concerned a criminal statute that criminalized child pornography, which the Court recognized was a category of material "***outside the protection of the First Amendment*** . . . ." *Id.* at 763 (emphasis added).<br><br>The fourth cite is missing a key part of the sentence: "When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, ***if the statute is subject to such a limiting construction.***" *Id.* at 769 n.24 (emphasis added). |

3

| Case & Brief Page | Mulroy Brief Cite | Analysis |
|---|---|---|
| | "But invalidation for overbreadth is 'strong medicine' that courts dispense 'with hesitation, and . . . only as a last resort,' *Ferber*, 458 U.S. at 769 (quotations omitted), even in free-speech cases."<br><br>"In any event, this Court must 'construe the statute to avoid constitutional [overbreadth] problems.' *Ferber*, 458 U.S. at 769 n.24; *see Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 786 (6th Cir. 2005)."<br><br>"And, here, the State has a well-recognized, compelling interest 'in safeguarding the physical and psychological well-being of . . . minor[s].' *Ferber*, 458 U.S. at 756 57 (quotations omitted); *see supra* at 23." | |
| *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), p. 30; 31 | "In fact, defining the relevant community as the judicial district mirrors the default rule—that 'obscenity is determined by the standards of the community where the trial takes place.'" [Citation]; "*see also Ashcroft*, 535 U.S. at 576-77 ('Absent geographic specification, a juror applying community standards will inevitably draw upon personal knowledge of the community or vicinage from which he comes.' (quotations omitted))."<br><br>"'If a [performer] chooses to [perform] in[] a particular community, . . . it is the [performer's] responsibility to abide by that community's standards.' *Ashcroft*, 535 U.S. at 583." | The cited case does not include the quoted language. Defendants conflated the following two cases:<br><br>*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) ("*Free Speech Coalition*"),<br><br>*Ashcroft v. ACLU*, 535 U.S. 564 (2002) ("*Ashcroft I*").<br><br>*Ashcroft I* was the first appeal in a case that also gave rise to *Ashcroft v. ACLU*, 542 U.S. 656 (2004) ("*Ashcroft II*").<br><br>Although the citations for *Ashcroft I* and *Free Speech Coalition* are confusingly similar, they arise from two entirely different cases – *Ashcroft I* and *II* arose from *COPA*, a federal statute remarkably similar to this case, whereas *Free Speech Coalition* is about child pornography.<br><br>Defendants quote from all three cases, but cite only to *Ashcroft II* and *Free Speech Coalition*. |