**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC.,<br><br>          *Plaintiff,*<br><br><br>    v.<br><br>STEVEN J. MULROY,<br>    in his official and individual capacities,<br><br>          *Defendant.* | Case No. 2:23-cv-02163-TLP-tmp<br>Case No. 2:23-cv-02176-TLP-tmp |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF STEVEN J. MULROY
IN HIS OFFICIAL CAPACITY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.     Plaintiff Fails to Prove a Direct Injury Sufficient to Confer Standing. ............................ 1

II.    Plaintiff Cannot Establish Standing as an Organization. .................................................... 3

III.   Plaintiff Cannot Prove a Risk of Imminent Enforcement of the Act. ................................ 8

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Am. Physicians & Surgeons v. FDA*,
  13 F.4th 531 (6th Cir. 2021) ........................................................................ 4, 5

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ........................................................................................ 8

*Birmingham v. Nessel*,
  No. 21-1297, 2021 WL 5712150 (6th Cir. Dec. 2, 2021) .......................... 10

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ........................................................................................ 6

*Crawford v. Dep't of Treasury*,
  868 F.3d 438 (6th Cir. 2017) ......................................................................... 8

*Davis-Kidd Booksellers, Inc. v. McWherter*,
  866 S.W.2d 520 (Tenn. 1993) ........................................................................ 7

*Fieger v. Mich. Sup. Ct.*,
  553 F.3d 955 (6th Cir. 2009) .............................................................. 8, 9, 10

*Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*,
  807 F.3d 806 (6th Cir. 2015) ..................................................................... 1, 2

*Harris v. Lexington-Fayette Urban Cty. Gov't*,
  685 F. App'x 470 (6th Cir. 2017) .................................................................. 1

*Laird v. Tatum*,
  408 U.S. 1 (1972) ......................................................................................... 1, 9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 1

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir. 2016) ......................................................................... 9

*Phillips v. DeWine*,
  841 F.3d 405 (6th Cir. 2016) ............................................................. 1, 9, 10

*Prime Media, Inc. v. City of Brentwood*,
  485 F.3d 343 (6th Cir. 2007) ....................................................................... 10

*Republican Party of Minn.v. Klobuchar,*
  381 F.3d 785 (8th Cir. 2004) ........................................................................................ 9

*Rotkiske v. Klemm,*
  140 S. Ct. 355 (2019) .................................................................................................... 6

*Shelby Cty. Advocs. for Valid Elections v. Hargett,*
  No. 2:18-cv-02706-TLP-dkv, 2019 WL 4394754 (W.D. Tenn. Sept. 13, 2019) ..................... 5

*St. Martin's Press, Inc. v. Carey,*
  605 F.2d 41 (2d Cir. 1979) ............................................................................................ 9

*Summers v. Earth Island Institute,*
  555 U.S. 488 (2009) .................................................................................................. 4, 5

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ..................................................................................................... 8

*Tenn. Republican Party v. SEC,*
  863 F.3d 507 (6th Cir. 2017) ......................................................................................... 5

*Waskul v. Washtenaw Cty. Cmty. Mental Health,*
  900 F.3d 250 (6th Cir. 2018) ......................................................................................... 5

*Waskul v. Washtenaw Cty. Cmty. Mental Health,*
  979 F.3d 426 (6th Cir. 2020) ......................................................................................... 8

*Weiser v. Benson,*
  48 F.4th 617 (6th Cir. 2022) .......................................................................................... 4

*White v. United States,*
  601 F.3d 545 (6th Cir. 2010) ......................................................................................... 2

*Younger v. Harris,*
  401 U.S. 37 (1971) .................................................................................................... 1, 9

## Statutes

Tenn. Code Ann. § 7-51-1407 .......................................................................................... 6

Tenn. Code Ann. § 39-17-901 ........................................................................................... 6

Tenn. Code Ann. § 39-17-901(6)(C) ................................................................................... 6

Tenn. Code Ann. § 39-17-902(a) ....................................................................................... 6

## INTRODUCTION

Article III standing does not turn on whether a plaintiff "feel[s] inhibited." *Younger v. Harris*, 401 U.S. 37, 41 (1971).  Nor does it arise from mere assertions of "chill" or "overbreadth." *Phillips v. DeWine*, 841 F.3d 405, 417 (6th Cir. 2016).  Federal courts exercise their constitutional authority only when a plaintiff proves "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972).  Plaintiff establishes neither.  Plaintiff cannot show that the Adult Entertainment Act caused it to suffer any direct injury nor that it faces any threat of enforcement.  And Plaintiff cannot invoke associational standing without identifying a specific, named member who has standing to challenge the Act.  Accordingly, the Court should dismiss this case for lack of jurisdiction.

## ARGUMENT

### I.     Plaintiff Fails to Prove a Direct Injury Sufficient to Confer Standing.

Plaintiff has presented no evidence that, as an organization, it has suffered a direct injury from the Adult Entertainment Act.  Each of Plaintiff's three contrary arguments lacks merit.

*First*, Plaintiff contends that "allegations contained in Plaintiff's operative Complaint" assert that the Adult Entertainment Act would force Plaintiff to impose an "unnecessary age restriction" that would "impact[]" "ticket sales" and "might even" lead to "cancelled" shows.  ECF No. 61 (Supp. Resp. to MTD) at 858.[1]  But "the plaintiff can no longer rest on such mere allegations." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted).  "[W]hen a defendant produces evidence challenging the factual existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017); *see also Glob. Tech., Inc. v.*

---

[1] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

*Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).  And Plaintiff has not presented a single piece of evidence to support its allegations.

Quite the contrary, the evidence developed in this case affirmatively refutes Plaintiff's allegations.  For one, Plaintiff has failed to establish an intention to engage in performances prohibited by the Act or a certain threat of prosecution under the Act.  *See* ECF No. 58 (State Br.) at 788-90.  In fact, Plaintiff admits "[n]othing [it] do[es is] for purpose of sexual gratification" and—though it "does not know the precise content of [ ] future productions"—at the time of filing, it had not planned productions that include conduct covered by the Adult Entertainment Act.  ECF No. 58-2 (Ex. A) at 841; Ex. B at 15-18.  Accordingly, Plaintiff has failed to establish that the Act would force it to impose any "age restriction."  Supp. Resp. to MTD at 858.

And even assuming the Act would require Plaintiff to impose an age restriction for its shows, Plaintiff still fails to establish an injury.  Plaintiff presents no evidence that excluding minors would harm it fiscally.  In fact, it admits that no more than a "handful" of minors have attended its productions, Ex. A at 832, and that Plaintiff "normally sell[s] out [its] Friday and Saturday shows [during] every show [it] ha[s]," Ex. C at 23.  Unless Plaintiff proves that, without the handful of minors in attendance, it would not sell out, then it cannot show any harmful "impact[]" to "ticket sales."  Supp. Resp. to MTD at 858; *see also White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010) (finding no injury when unsupported allegations "rest[ed] on a string of actions the occurrence of which [wa]s merely speculative" (quotations omitted)).

Plaintiff's suggestion that it might have to cancel shows is even more puzzling.  Plaintiff cannot seriously be suggesting that it cannot impose an age-limit on its performances.  As Plaintiff recognizes, it previously performed shows at various venues that imposed age-limits, including

bars and casinos.  Ex. C at 61-62.  And no evidence suggests that it could not do so at the Evergreen moving forward.

Put simply, Plaintiff presents no evidence whatsoever to show a particularized injury and, as a matter of law, its unsupported allegations do not suffice to establish standing.

*Second*, Plaintiff claims that the statute "criminalize[s] *mere participation* in a performance" and that "the entire performing troupe could be penalized even if only one individual violated the Act."  Supp. Resp. to MTD at 859 (emphasis in original).  Both assertions are incorrect, *see infra* at 5-6, and also irrelevant for purposes of showing a direct injury to the "entity itself." Supp. Resp. to MTD at 858.  An injury to members is not the same thing as an injury to the organization.  And even treating Plaintiff as a "person" subject to the law, it faces no direct threat because an organization cannot "perform adult cabaret entertainment"—only actual performers can do that.   ECF No. 19-1 (Adult Entertainment Act) at 93 (§ 1).

*Third*, Plaintiff claims that a hypothetical company wanting to produce *Romeo and Juliet* may have to omit the final scene of the play due to the constraints of the Adult Entertainment Act. Supp. Resp. to MTD at 859.  That contention rests on a misinterpretation of the statute.  But, regardless, the posited situation is a hypothetical, not a direct limitation on Plaintiff as an organization.  Plaintiff cannot point to any scene that it has been forced to cut from a performance. So, again, Plaintiff has no evidence of a direct injury.

## II.    Plaintiff Cannot Establish Standing as an Organization.

Nor can Plaintiff establish associational standing, because it failed to name any member of its organization with individual standing to sue.  State Br. at 786-87.  Again, each of Plaintiff's three contrary arguments lacks merit.

*First*, Plaintiff contests the notion that to invoke associational standing a plaintiff organization must identify by name a member with standing.  And Plaintiff not only contests this

point, it vigorously claims that Defendant "relies on a fast-and-loose quotation out of context," "cherry pick[s] a few words from an inapposite case's dicta to string together a fabricated holding," and "resort[s] to these methods [because of] the absolute lack of actual law to support th[is] position[]." Supp. Resp. to MTD at 860, 862. Strong rhetoric, for a point that the Supreme Court, Sixth Circuit, and *this very Court* have resolved exactly as Defendant describes.

The Supreme Court, in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), held that a plaintiff must "name the individuals" in the organization "who were harmed" to establish associational standing. *Id.* at 498. The Court explained that a court cannot "accept[] the organizations' self-descriptions of their membership" because "the court has an independent obligation to assure that standing exists." *Id.* at 499. "[S]peculation does not suffice." *Id.* Indeed, the "requirement of naming the affected members has [not even] been dispensed with in light of statistical probabilities" that a member is affected. *Id.* at 498-99.

Citing *Summers*, the Sixth Circuit, in *Association of American Physicians & Surgeons v. FDA*, 13 F.4th 531 (6th Cir. 2021), reiterated this well-established rule. It stated that to satisfy the first element of the associational-standing test, Plaintiff "must do more than identify a likelihood that" the defendant "will harm an unknown member"; the organization must actually "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.* at 543. No matter how fervently Plaintiff proclaims that "nothing in *Ass'n of Am. Physicians* specifies that the individual members who would be harmed must be identified in the Complaint by name," Supp. Resp. to MTD at 861, that is exactly what the opinion says.

And the Sixth Circuit has repeated this holding over and over again. *Weiser v. Benson*, 48 F.4th 617, 623 n.4 (6th Cir. 2022) ("an organization must 'identify a member who has suffered (or

4

is about to suffer) a concrete and particularized injury from the defendant's conduct' to establish associational standing" (quoting *Ass'n of Am. Physicians*, 13 F.4th at 543-44)); *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018) (requiring organization to show that "one of its named members" has standing); *Tenn. Republican Party v. SEC*, 863 F.3d 507, 520 (6th Cir. 2017) (noting that "the plaintiff-organization [must] 'name the individuals who were harmed'" (quoting *Summers*, 555 U.S. at 498)).  Unsurprisingly, other courts agree.  *See* State Br. at 10 (compiling cases).

Even this very Court has agreed that associational standing "requires a specific allegation of the name of [a] member harmed unless all members of the organization have been harmed by the defendant's conduct."  *Shelby Cty. Advocs. for Valid Elections v. Hargett*, No. 2:18-cv-02706-TLP-dkv, 2019 WL 4394754, at *8 (W.D. Tenn. Sept. 13, 2019) (Parker, J.).  It specifically stated that an "organization must show that one of its named members" has standing, *id.* (quotations omitted), and then analyzed standing as to each member named in the complaint, *id.* at *10-11.  The same rule governs the standing determination here.

*Second*, Plaintiff half-heartedly suggests that it should not have to identify a named member with standing because all its members have standing to challenge the Act.  It is true that the "requirement of naming the affected members has . . . been dispensed with . . . where *all* the members of the organization are affected by the challenged activity."  *Summers*, 555 U.S. at 498-99 (emphasis in original).  But Plaintiff has not—and cannot—show that all its members would be "harmed" by the Act.  *Shelby Cty. Advocs. for Valid Elections*, 2019 WL 4394754, at *8.

Plaintiff's primary contention is that "the statute . . . criminalize[s] *mere participation* in a performance," Supp. Resp. to MTD at 859 (emphasis by Plaintiff), and that Plaintiff's "organization [is] comprised entirely of drag performers and the crew that supports their

performances," *id.* at 862.  But Plaintiff has presented no evidence as to who "comprise[s]" its organization and how they participate in performances.  *Id.*  That should end the inquiry.

Regardless, Plaintiff's argument rests on an atextual interpretation of the Act.  The text of the Act states that "[i]t is an offense for a person *to perform* adult cabaret entertainment."  Adult Entertainment Act at 93 (emphasis added).  That language unambiguously covers only those who "perform," not anyone tangential to a performance.  And this Court presumes that the "legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

"Atextual judicial supplementation is particularly inappropriate when, as here, [the legislature] has shown that it knows how to adopt" language that encompasses conduct beyond the act of performing.  *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019).  Tennessee's obscenity and adult entertainment statutes are chock-a-block with provisions that cover "locat[ing]," "produc[ing]," "send[ing]," "distribut[ing]," "exhibit[ing]," "print[ing]," "publish[ing]," and "direct[ing]."  Tenn. Code Ann. §§ 7-51-1407, 39-17-902(a).  If the Tennessee legislature wanted the Adult Entertainment Act to cover those who are in any way related to a performance, it could have used those terms.  But, instead, the Act limits the offense to those who themselves "perform" entertainment that violates the Act.  Adult Entertainment Act at 93.

Plaintiff disagrees, claiming that "the Act criminalizes performances 'taken as a whole.'"  Supp. Resp. to MTD at 859 (quoting Tenn. Code Ann. § 39-17-901).  But the language "taken as a whole" in § 39-17-901 helps define what content qualifies as "harmful to minors" under the adapted *Miller* standard; it does not dictate who is liable for the performance of such content.  That is, to determine whether content is "harmful to minors," courts consider whether the performance "[t]aken as whole lacks serious literary, artistic, political or scientific values for minors."  Tenn.

Code Ann. § 39-17-901(6)(C).  The Act does not punish all persons tangential to content "harmful to minors"—only those who "perform" such content in prohibited locations.  Adult Entertainment Act at 93.

The fact that the Act applies only to performers means that not *all* members of the organization face harm from the Act.  But Plaintiff's theory fails for an independent reason:  the Act includes a mens rea element.  The Reply asserts that "the statute contains no mens rea requirement whatsoever" and, therefore, "a person could be subject to prison for merely appearing in such a performance even without the intent to be in a stage play or musical performance that does violate the statute."  Resp. to MTD at 867.  But the Tennessee Supreme Court has clearly stated that "[i]n the context of criminal statutes regulating obscenity, the State must establish that the defendant had knowledge of the contents and character of the" speech at issue.  *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 528 (Tenn. 1993).

In short, not all members of Plaintiff's organization perform—some members participate without performing.  Because those members fall outside the scope of the Adult Entertainment Act, Plaintiff cannot establish that all its members face harm from enforcement of the Act.

*Third*, in a footnote, Plaintiff identifies Vanessa Rodley as "a member whose speech would be restricted and chilled by this statute."  Supp. Resp. to MTD at 862.  That argument fails on multiple fronts.  For one, Rodley admits that she does not "perform"; she "run[s] . . . production, business management, social media, marketing, [and] operations."  Ex. C at 14-15.  Therefore, the Act does not govern her conduct in any way.  Second, as is true for all of Plaintiff's performers, there is no threat of imminent enforcement because Plaintiff has expressed no intention to violate the statute.  *See infra* at 8-10.  And, third, Rodley is not identified in the operative complaint, *see* ECF No. 10 (First Amended Compl.), and Plaintiff cannot "amend their complaint in an opposition

brief." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quotations omitted).

The bottom line: None of Plaintiff's arguments establishes associational standing.

### III.    Plaintiff Cannot Prove a Risk of Imminent Enforcement of the Act.

Plaintiff cannot establish that the Adult Entertainment Act will cause it to suffer a particularized, imminent injury, because Plaintiff disclaims any intent to engage in conduct that even arguably violates the Act. State Br. at 788-90; Ex. B at 15-18 (stating that though it "does not know the precise content of [ ] future productions," at the time of filing, it had not planned productions that include conduct that falls under the Adult Entertainment Act). And the Response does not attempt to prove any "intended speech or conduct" that "demonstrate[s] a threat of sanction." *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 964 (6th Cir. 2009). Instead, it relies on flawed legal theories that have been squarely and repeatedly rejected by binding precedent.

Plaintiff first claims that Defendant "puts the cart before the horse [by] argu[ing] that Plaintiff lacks organizational standing because it cannot prove that it or its members intend to violate the statute." Supp. Resp. to MTD at 853. But that is literally what the Supreme Court and Sixth Circuit say must be shown to establish standing in a pre-enforcement *Ex parte Young* action. In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), the Court stated that plaintiffs must show "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute.'" *Id.* at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). And the Sixth Circuit reiterated that rule in *Crawford v. Department of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017). In other words, while "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law," *Susan B. Anthony List*, 573 U.S. at 158, the intention to engage in conduct arguably covered by the law is.

Undeterred, Plaintiff suggests that judicial interpretation of the statute would resolve the constitutional question and, therefore, any attempt to determine whether Plaintiff intends to violate the statute is "circular." Supp. Resp. to MTD at 853. Not so. To analyze standing in a pre-enforcement challenge, courts must analyze what the statute actually "prevents," *Republican Party of Minn.*, 381 F.3d 785, 793 (8th Cir. 2004), and look to the proper "construction" of the restriction imposed, even in cases alleging a "purported 'chilling effect.'" *Fieger*, 553 F.3d at 965; *see also St. Martin's Press, Inc. v. Carey*, 605 F.2d 41, 44 (2d Cir. 1979). Only by interpreting the statute can courts determine whether the asserted "fears of state prosecution . . . are imaginary or speculative." *Younger v. Harris*, 401 U.S. 37, 42 (1971).

Plaintiff then repeats its claim that if "the public at large is chilled by the statute . . . then Plaintiff has standing," Supp. Resp. to MTD at 853, without ever acknowledging or rebutting the abundance of case law refuting that position, State Br. at 789-90. Nowhere does Plaintiff address the Supreme Court's and Sixth Circuit's insistence that "'[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Phillips*, 841 F.3d at 417 (quoting *Laird*, 408 U.S. at 14). Both courts have been "emphatic" on this point, repeatedly explaining that "an allegation of 'chill,' by itself, is insufficient to establish standing in a First Amendment case." *Fieger*, 553 F.3d at 962 (quoting *Laird*, 408 U.S. at 13-14). Allegations of chill must be combined with one of the three factors set out in *McKay v. Federspiel*, 823 F.3d 862, 868-69 (6th Cir. 2016). Plaintiff fails to even recognize, let alone satisfy, those factors. *See* State Br. at 789-90.

Worse still, Plaintiff doubles down on its contention that "*anyone* may bring a First Amendment overbreadth and vagueness challenge." Supp. Resp. to MTD at 852 (emphasis in original); *see also id.* at 862-63. That is simply not accurate. State Br. at 789. "Bringing an

overbreadth claim does not give the Plaintiff[] carte blanche to maintain a suit in federal court." *Phillips*, 841 F.3d at 417.  The Sixth Circuit has explained that courts "relax certain standing doctrines" in overbreadth cases "because of . . . the judicial prediction or assumption that the statute's very existence may cause others before the court to refrain from constitutionally protected speech or expression." *Id.* (quotations omitted).  But this relaxation "applies only to the *prudential* standing doctrines . . . and not to those mandated by Article III itself, such as the injury-in-fact requirement." *Id.* (emphasis added); *see also Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007); State Br. at 789 n.4 (explaining prudential standing rules).  "Even where a litigant challenges a law or regulation as overbroad, that litigant must still 'show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action.'" *Birmingham v. Nessel*, No. 21-1297, 2021 WL 5712150, at *3 (6th Cir. Dec. 2, 2021); *see also Fieger*, 553 F.3d at 961-62.

Finally, Plaintiff goes on at length about the merits of its overbreadth argument.  Supp. Resp. to MTD at 863-70.  But that analysis does not help it establish Article III standing.  Even if this statute were overbroad (it is not), Plaintiff still lacks standing to challenge it.

## CONCLUSION

The Court should grant the motion and dismiss this case.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter


s/James R. Newsom III
James R. Newsom III (TN BPR No. 6683)
Special Counsel
J. Matthew Rice (TN BPR No. 40032)
Special Assistant to the Solicitor General
Robert W. Wilson (TN BPR No. 34492)
Senior Assistant Attorney General
Steven J. Griffin (TN BPR No. 40708)
Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
Jim.Newsom@ag.tn.gov
Matt.Rice@ag.tn.gov
Robert.Wilson@ag.tn.gov
Steven.Griffin@ag.tn.gov

*Counsel for Steven J. Mulroy, in his official
capacity as District Attorney General for the
Thirtieth Judicial District of Tennessee*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report.  Parties may access this filing through the Court's electronic filing system.


s/James R. Newsom III
James R. Newsom III
Special Counsel