# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> STEVEN J. MULROY, <br>    in his official and individual capacities, <br><br> *Defendant*. | Case No. 2:23-cv-02163-TLP-tmp <br> Case No. 2:23-cv-02176-TLP-tmp |

**SURREPLY OF STEVEN J. MULROY IN HIS OFFICIAL CAPACITY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.      Plaintiff Lacks Standing. ........................................................................................... 1

    II.     The Adult Entertainment Act Is Not Facially Invalid Under the First Amendment. .......... 1

    III.    Plaintiff Presents No Coherent Vagueness Argument. ....................................................... 8

    IV.    Plaintiff Forfeits Any Arguments as to the Equitable Factors or Scope of the
           Injunction ................................................................................................................ 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Booksellers Ass'n v. Virginia*,
  882 F.2d 125 (4th Cir. 1989) ............................................................................................. 7, 9

*Am. Booksellers v. Webb*,
  919 F.2d 1493 (11th Cir. 1990) ..................................................................................... 5, 7, 9

*ACLU v. Mukasey*,
  534 F.3d 181 (3d Cir. 2008) ................................................................................................ 8, 9

*ARJN #3 v. Cooper*,
  517 F. Supp. 3d 732 (M.D. Tenn. 2021) ................................................................................. 10

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004) ................................................................................................................ 5

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ................................................................................................................ 2

*Athenaco, Ltd. v. Cox*,
  335 F. Supp. 2d 773 (E.D. Mich. 2004) .................................................................................. 5

*Audi AG v. D'Amato*,
  469 F.3d 534 (6th Cir. 2006) ................................................................................................. 10

*Brown v. Ent. Merch. Ass'n*,
  564 U.S. 786 (2011) ................................................................................................................ 2

*Connection Distrib. Co. v. Holder*,
  557 F.3d 321 (6th Cir. 2009) .................................................................................................. 8

*Cyberspace, Commc'ns, Inc. v. Engler*,
  55 F. Supp. 2d 737 (E.D. Mich. 1999) .................................................................................... 6

*Davis-Kidd Booksellers, Inc. v. McWherter*,
  866 S.W.2d 520 (Tenn. 1993) .......................................................................................... 7, 10

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .............................................................................................................. 10

*Fort Wayne Books, Inc. v. Indiana*,
  489 U.S. 46 (1989) .................................................................................................................. 9

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ........................................................................................................ 9

*Hall v. BAC Home Loans*,
  No. 2:12-cv-3720, 2013 WL 2248253 (N.D. Ala. May 21, 2013) .......................... 10

*Hill v. Colorado*,
  530 U.S. 703 (2000) .................................................................................................... 2, 3

*M.S. News Co. v. Casado*,
  721 F.2d 1281 (10th Cir. 1983) ............................................................................... 7, 9

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ...................................................................................................... 10

*New York v. Ferber*,
  458 U.S. 747 (1982) ........................................................................................................ 7

*Reno v. ACLU*,
  521 U.S. 844 (1997) ................................................................................................. 5, 6, 7

*Sable Commc'ns of Cal. v. FCC*,
  492 U.S. 115 (1989) ................................................................................................. 5, 6, 7

*Santini v. Rausch*,
  No. 3:20-cv-00661, 2022 WL 1445217 (M.D. Tenn. May 6, 2022) ..................... 10

*Skilling* v. *United States*,
  561 U.S. 358 (2010) ........................................................................................................ 9

*United States v. Stevens*,
  559 U.S. 460 (2010) ........................................................................................................ 2

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ........................................................................................................ 9

**Statutes**

Tenn. Code Ann. § 39-17-901 ............................................................................................. 4

Tenn. Code Ann. § 39-17-907(c) ......................................................................................... 4

Tenn. Code Ann. § 39-17-911(c) ......................................................................................... 4

Tenn. Code Ann. § 7-51-1401(2) ......................................................................................... 4

Tenn. Code Ann. § 7-51-1404 ............................................................................................. 4

## INTRODUCTION

Plaintiff's Reply effectively abandons the arguments that the temporary restraining order rested on. Plaintiff now mounts a challenge to "Title 39's . . . forty-three-year-old definition of 'harmful to minors' as unconstitutionally burdening the[] right to free expression." ECF No. 61 (Supp. Resp. to MTD) at 870.[1] This sweeping contention fails on every front. Plaintiff presents an indecipherable First Amendment framework, parrots conclusions from inapposite out-of-circuit case law, and conflates statutes *banning* speech with statutes creating a space where only adults can access speech. Put simply, this case involves an improper plaintiff asserting an undeveloped First Amendment theory based on a mischaracterization of the challenged law. The Court should enter judgment in favor of Defendant.

## ARGUMENT

**I.  Plaintiff Lacks Standing.**

For the reasons stated in Defendant's Reply in Support of Motion to Dismiss, ECF No. 64, Plaintiff fails to establish Article III standing and, therefore, this Court lacks jurisdiction.

**II.  The Adult Entertainment Act Is Not Facially Invalid Under the First Amendment.**

Plaintiff disclaims any attempt to show that the Act is invalid in all of its applications. ECF No. 62 (Pltf's Reply) at 876-77. Indeed, Plaintiff does not even respond to Defendant's argument that the Act can be constitutionally applied to restrict performances obscene to both minors *and* adults. ECF No. 58 (State Br.) at 791-93. Instead, Plaintiff invokes the overbreadth doctrine. But, in doing so, it employs an incoherent framework that conflates distinct First Amendment issues.

**A. *Plaintiff Confuses the Overbreadth Inquiry*:** A law is overbroad only if "a substantial number of its applications are *unconstitutional*, judged in relation to the statute's plainly legitimate

---

[1] Pincites to record materials reference the "Page ID" numbers in the ECF file stamps.

sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotations omitted) (emphasis added); *see* State Br. at 803. The inquiry requires courts to identify the unconstitutional applications of a statute and compare those with its constitutional applications.

Plaintiff portrays a context-specific application of that rule as the general standard. It quotes *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002) for the proposition that "[t]he overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Pltf's Reply at 877 (quotations omitted). With that language, Plaintiff contends that "[t]he primary question in the overbreadth analysis is whether the *type* of speech the Act regulates falls within the First Amendment's" protections. *Id.* (quotations omitted). But in *Ashcroft*, the question of whether the statute's applications were constitutional or unconstitutional turned entirely on whether the regulated speech was protected or unprotected[2]; the Court entertained no argument that the protected speech could be constitutionally restricted under strict scrutiny or a lesser standard because, at the time, the government's position was that all child pornography, even that not involving real children, was unprotected. 535 U.S. at 239-40. That is, the statute was constitutionally applied to unprotected speech but unconstitutionally applied to protected speech, so the overbreadth comparison between protected and unprotected speech made sense. But not all restrictions on protected speech are unconstitutional. (Otherwise, courts would not need the tiers of scrutiny.)

In *Hill v. Colorado*, the Supreme Court held that there must be "a constitutional defect"—not just an application of the statute to protected speech—to show overbreadth. 530 U.S. 703, 730 (2000). The Court acknowledged that, in prior cases, "the government [had] attempted to regulate

---

[2] Courts refer to certain classes of speech as "unprotected"—obscenity, incitement, and fighting words. *See Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 791 (2011).

nonprotected activity, yet because the statute was overbroad," it unconstitutionally restricted protected activity. *Id.* at 731. But, it stated, "[i]n this case, it is not disputed that the regulation affects protected speech"; "the question is [ ] whether" the law satisfies constitutional review. *Id.*

Here, just as in *Hill*, "it is not disputed that [the Act] affects protected speech"—speech obscene to minors but *not* adults. *Id.* The question is what level of scrutiny applies and does the Act fail constitutional review in a substantial number of applications.

**B.** *Plaintiff Fails to Identify a Substantial Number of Unconstitutional Applications*: Initially, Plaintiff sought to identify certain locations where the application of the Act was unconstitutional—in the home, on the internet, at a birthday party, etc. ECF No. 35 (Plaintiff's Br.) at 506. But, given Defendant's rebuttal of those arguments, State's Br. at 803-04, Plaintiff now claims that its location-based contentions go to vagueness, not overbreadth. Pltf's Reply at 877; *see infra* at 9. Plaintiff sets its sights much higher. It does not limit its challenge to certain applications of the Act; it openly "challenges Title 39's . . . forty-three-year-old definition of 'harmful to minors' as unconstitutionally burdening the[] right to free expression." Supp. Resp. to MTD at 870. That contention—and the flawed theories supporting it—should not carry the day.

1. <u>Heightened Scrutiny Is Not Warranted</u>. Plaintiff abandons its original arguments for heightened scrutiny. Its Reply gives up on the assertion that the identity-based clause of the Act imposes a content-based restriction. State's Br. 796-97. And it ignores Defendant's arguments as to the purpose of the Act, providing no explanation for the textual indicators of intent, no response to the extensive legislative cites, and no acknowledgment of the bill's timeline. *Id.* at 797-99.

Instead, Plaintiff contends that this Court should infer an "impermissible purpose" because (1) the Act creates a "new offense" with a "new term"—"adult cabaret entertainment"—that pulls from existing statutory standards, and (2) the penalty imposed for violating the Act is greater than

3

Tennessee's indecent exposure law. Pltf's Reply at 875-76. But the fact that the statute pulls definitions from an existing obscenity statute, Tenn. Code Ann. § 39-17-901, and from an existing adult entertainment statute, *id.* § 7-51-1401(2),[3] to define a new term in no way shows an improper purpose. How does one infer from the use of those definitions that the Act intended to target drag performances? The logical inference is just the opposite: that this bill did not target drag because it used statutory definitions that have been around for decades. State Br. 780-83, 798-99.

And Plaintiff's comparison of penalties is similarly attenuated. As an initial matter, Plaintiff's suggestion that the legislature imposed a heightened penalty through the Act does not hold up. The Act's use of the Class A misdemeanor as the initial penalty for violating the Act matches Tennessee's other laws governing access to content "harmful to minors." Tenn. Code Ann. §§ 39-17-907(c), -911(c). Moreover, the penalty imposed through the Act applies equally to all entertainers—whether they perform drag or not—so the proposed inference does not follow. ECF No. 19-1 (Adult Entertainment Act) at 93. Lastly, Plaintiff identifies no court that has ever used a penalty comparison to infer that the legislature acted with an improper purpose.

Plaintiff fares no better in its attempt to undermine Defendant's argument for review under the time-place-manner standard. Plaintiff does not dispute that the Act addresses the secondary effects associated with exposing children to obscene content. *See* State Br. 795-96. It simply claims that the secondary effects were not the Act's "*predominant concern*[]." Pltf's Reply at 875. But Plaintiff provides no argument to support that contention, no cites to the legislative record, no explanation at all. *Id.* And Plaintiff's *ipse dixit* does not hold up. The prevention of the "primary

---

[3] Plaintiff claims that prior to the Act, "this section of Title 7 was a zoning law that contained no criminal penalties." MTD Reply at 854. Not true. Tennessee Code Annotated § 7-51-1404 states that "a violation of this part"—which includes provisions incorporating § 7-51-1401(2)—"is a Class B misdemeanor . . . and a second or subsequent such offense is a Class A misdemeanor."

effects"—the harm to children from viewing the content—and the secondary effects—an increase in sexual exploitation of children—are inextricably intertwined, ECF No. 35-1 (Tr. of Legislative Proceedings) at 525-28, and within the sound judgment of the legislature to address.

Nor does Plaintiff refute Defendant's alternative argument for application of the time-place-manner standard. As explained, when a statute creates an "adult zone" for sexual content, courts decline to apply strict scrutiny; they apply a balancing test similar to time-place-manner scrutiny. State Br. 794-96. A number of cases from the Supreme Court and from the Courts of Appeals have recognized as much. *Id.* (compiling cases); *see also Athenaco, Ltd. v. Cox*, 335 F. Supp. 2d 773, 782 (E.D. Mich. 2004). In this sea of citations, Plaintiff singles out one *cf.* cite to *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115 (1989) and portrays it as Defendant's only support. Pltf's Reply at 873-74. Plaintiff misses the point of the *Sable* citation. While *Sable* invalidated an "outright ban" on indecent telephone messages (hence the *cf.* cite), it recognized "that some limitation on the access of adults to material protected for them but harmful to minors is permissible." *Am. Booksellers v. Webb*, 919 F.2d 1493, 1501 (11th Cir. 1990). Regardless, the other cases cited explicitly decline to apply strict scrutiny when a statute prohibits minors from accessing content, if adults can still obtain the speech. State Br. 794-95.

The Reply's portrayal of *Reno v. ACLU*, 521 U.S. 844 (1997) and *Ashcroft v. ACLU*, 542 U.S. 656 (2004), as "central," "controlling" cases for determining the governing standard is unfounded. Pltf's Reply at 872-74. Neither of these cases involved an adult-only zone—i.e., a statute that prohibited minors from accessing speech while allowing adults access. Rather, the statutes at issue imposed a "blanket restriction on speech" that "resemble[d] the ban" in *Sable*. *Reno*, 521 U.S. at 868, 875; *see also Ashcroft*, 542 U.S. at 667 (referring to "universal restrictions at the source" of the content). And, setting aside the text, the fact that the restriction applied to

5

content on the internet created an outright ban.  "[A]t the time" of these cases, "existing technology did not include any effective method for a sender to prevent minors from obtaining access to its communications on the Internet without also denying access to adults."  *Reno*, 521 U.S. at 876.

Internet restrictions and physical restrictions (in the form of an adult-only zone) for speech differ in kind: "A person's age can be verified [when] that person is physically there, and the disseminator can logically be held responsible for conveying 'sexually explicit matter' to a minor. The Internet does not distinguish between minors and adults in their audience."  *Cyberspace, Commc'ns, Inc. v. Engler*, 55 F. Supp. 2d 737, 747 (E.D. Mich. 1999), *order aff'd and remanded*, 238 F.3d 420 (6th Cir. 2000).  Accordingly, Plaintiff's internet cases are simply not "controlling," Pltf's Reply at 873—as evidenced by their lack of prominence in Plaintiff's opening brief.

2. <u>The Act Satisfies Constitutional Review</u>.  The Act indisputably satisfies the constitutional scrutiny imposed on time-place-manner restrictions.  It even satisfies strict scrutiny.

Plaintiff does not challenge the State's compelling interest "in protecting the physical and psychological well-being of minors" by "shielding [them] from the influence of [sexual content] that is not obscene by adult standards."  *Sable*, 492 U.S. at 126.  The Reply fails to address the issue or respond to Defendant's arguments.  State's Br. 800-01.

And Plaintiff makes no narrow tailoring argument.  It claims that "The Adult Entertainment Act is Overbroad Because it Criminalizes a Substantial Amount of Protected Speech and is Therefore not Narrowly Tailored."  Pltf's Reply at 876.  But, as Defendant previously explained, narrow tailoring is "distinct" from overbreadth.  State Br. at 802.  Overbreadth compares constitutional applications to unconstitutional applications, whereas narrow tailoring analyzes whether the restriction imposed fits the interest asserted.  *Id.* at 801-02.  And here the fit could not be any tighter:  the interest is in "shielding minors from the influence of [sexual content] that is

6

not obscene by adult standards," *Sable*, 492 U.S. at 126, and the Act restricts performances of such content only where it "could be viewed by a person who is not an adult." Adult Entertainment Act at 93. Plaintiff identifies no less restrictive means of accomplishing the State's interest.

      3. <u>Plaintiff's Remaining Arguments Lack Merit</u>. Plaintiff's Reply throws out a mishmash of other arguments. None warrant the overbreadth doctrine's "strong medicine." *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quotations omitted).

      Plaintiff repeatedly suggests that because the harmful-to-minors restriction in the Communications Decency Act (CDA) and Child Online Protection (COPA) were held unconstitutional, the Adult Entertainment Act should too. *See, e.g.*, Pltf's Reply at 877-78. But Plaintiff ignores that those statutes *banned* content harmful to minors; it did not create an adult-only zone. *See supra* 5-6. Plaintiff ignores the fact that the CDA's definition of "harmful to minors" included "indecent" speech and "patently offensive" material that did not rise to the level of violating the adapted-*Miller* standard. *Reno*, 521 U.S. at 865-66. And Plaintiff overlooks the Tennessee Supreme Court's narrowing construction of "harmful to minors" to include "only to those materials which lack serious literary, artistic, political, or scientific value for a reasonable 17-year-old minor." *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 528 (Tenn. 1993). The CDA and COPA are different statutes imposing different restrictions to different conduct in a different context. A plethora of courts have upheld restrictions on content "harmful to minors" in a variety of different contexts. *See Am. Booksellers Ass'n v. Virginia*, 882 F.2d 125, 127 n.2 (4th Cir. 1989); *Webb*, 919 F.2d at 1503 & n.18 (11th Cir. 1990); *M.S. News Co. v. Casado*, 721 F.2d 1281, 1286-87 (10th Cir. 1983). Plaintiff's reliance on generalities does not suffice.

      And the specific contentions likewise come up short. Plaintiff points out that the Act regulates both commercial and noncommercial speech. Pltf's Reply at 879-80. But how that fact

7

supports Plaintiff's case remains unclear. Application of the Act in the commercial context raises no new First Amendment problems, so this does not show overbreadth. And to the extent Plaintiff intends to make a narrow tailoring argument, it misses the mark. In *ACLU v. Mukasey*, the Third Circuit noted that "although Congress intended COPA to apply solely to commercial pornographers, the [statute's language did] not limit [its] application to commercial pornographers." 534 F.3d 181, 205 (3d Cir. 2008). But here the State intended to protect the physical and psychological well-being of minors by shielding them from sexual content—whether commercial or noncommercial. Nothing about the State's compelling interest depends on whether the performance is commercial or noncommercial, so a tailoring argument makes little sense.

Plaintiff also repeats its claim that "the offense is *merely participating* in a performance that features these entertainers and is 'harmful to minors.'" Pltf's Reply at 880 (emphasis in original). Defendant has already debunked every aspect of that argument when analyzing standing. See ECF No. 64 at 897-99. And, regardless, Plaintiff fails to establish that this scenario—the prosecution of a non-offending party because of an offending performer's actions—constitutes a *substantial* number of applications, as required by the overbreadth doctrine. (Even accepting Plaintiff's atextual reading of the statute and assuming such an unrealistic prosecution would occur, the non-offending performer could raise an as-applied constitutional defense.) This type of speculative, unrealistic assertion of unconstitutionality is exactly why facial overbreadth challenges remain "disfavored." *Connection Distrib. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009).

### III. Plaintiff Presents No Coherent Vagueness Argument.

Plaintiff has effectively abandoned its vagueness argument. Initially, it argued that defining obscenity by reference to the "community" standard rendered the Adult Entertainment Act void-for-vagueness. Plaintiff's Br. at 504. But Defendant explained that binding precedent forecloses that argument, State Br. at 806-08, and Plaintiff's Reply fails to provide any response.

Indeed, Plaintiff's Reply mentions vagueness only twice in passing. First, in its overbreadth analysis, Plaintiff claims that its argument regarding the locations in which the Act applies should be viewed as a vagueness argument, not an overbreadth argument. Pltf's Reply at 877. But even viewing that argument through the lens of vagueness, it fails. "Condemned to the use of words, we can never expect mathematical certainty in our language." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). Just because a statutory phrase may need interpretation or construction does not mean that it is unconstitutionally vague. *See, e.g.*, *Skilling* v. *United States*, 561 U.S. 358, 405 (2010) ("It has long been our practice, . . . before striking a . . . statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction."). And Plaintiff fails to engage with Defendant's interpretation of the challenged location provision, *see* State Br. at 805-06.

Next, again in the overbreadth argument, Plaintiff suggests that the definition of "harmful to minors" is impermissibly vague—again, without any accompanying argument. Pltf's Reply at 878-79. Even assuming this issue has been properly raised, the definition of "harmful to minors" largely incorporates the *Miller* obscenity standard, and the Supreme Court has rejected vagueness challenges to state statutes that mirror its obscenity test. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57 (1989). The tailoring of the *Miller* standard to "minors" does not somehow render it unconstitutionally vague. Numerous courts have rejected vagueness challenges to such statutes. *See Am. Booksellers Ass'n*, 882 F.2d at 127 n.2; *Webb*, 919 F.2d at 1503 & n.18; *M.S. News Co.*, 721 F.2d at 1286-87.

Plaintiff points to the Third Circuit's decision in *Mukasey*, but the court there took issue with the definition of "minor," rather than the modified *Miller* standard more generally. 534 F.3d at 205. Specifically, it recognized that "minor" could cover anyone under the age of 18 and stated

9

that "materials that could have 'serious literary, artistic, political, or scientific value' for a 16-year-old would not necessarily have the same value for a three-year-old." *Id.* But the Tennessee Supreme Court has already resolved that issue by definitively interpreting Tennessee's "harmful to minors" definition to include "only to those materials which lack serious literary, artistic, political, or scientific value for a reasonable 17-year-old minor." *Davis-Kidd*, 866 S.W.2d at 528.

### IV. Plaintiff Forfeits Any Arguments as to the Equitable Factors or Scope of the Injunction.

Under equitable principles, this Court should not grant a permanent injunction. "According to well-established principles of equity, a plaintiff seeking a permanent injunction *must* satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (emphasis added); *Santini v. Rausch*, No. 3:20-cv-00661, 2022 WL 1445217, at *9 (M.D. Tenn. May 6, 2022) (applying *eBay*'s four factor test to a § 1983 claim). That is, "[a]n injunction should issue only if the traditional four-factor test is satisfied," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010), and the Plaintiff bears the burden of satisfying that test, *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Here, Plaintiff has not carried that burden. *See* State Br. at 808-09. Indeed, it ignores *eBay*'s four-factor test altogether.

Plaintiff likewise fails to address the proper scope of the injunction, *see* State Br. at 810-11—meaning that it forfeits the issue. *See ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021). "[I]t is not the job of this Court to make the arguments on Plaintiff['s] behalf." *Hall v. BAC Home Loans*, No. 2:12-cv-3720, 2013 WL 2248253, at *7 (N.D. Ala. May 21, 2013).

### CONCLUSION

The Court should deny the requested injunction and enter judgment in favor of Defendant.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter


s/James R. Newsom III
James R. Newsom III (TN BPR No. 6683)
Special Counsel
J. Matthew Rice (TN BPR No. 40032)
Special Assistant to the Solicitor General
Robert W. Wilson (TN BPR No. 34492)
Senior Assistant Attorney General
Steven J. Griffin (TN BPR No. 40708)
Assistant Attorney General
Office of the Tennessee Attorney General
40 South Main Street, Suite 1014
Memphis, TN 38103
(901) 543-2473
Jim.Newsom@ag.tn.gov
Matt.Rice@ag.tn.gov
Robert.Wilson@ag.tn.gov
Steven.Griffin@ag.tn.gov

*Counsel for Steven J. Mulroy, in his official capacity as District Attorney General for the Thirtieth Judicial District of Tennessee*

## CERTIFICATE OF SERVICE

   I hereby certify that on May 12, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report. Parties may access this filing through the Court's electronic filing system.

                <u>s/James R. Newsom III</u>
                James R. Newsom III
                Special Counsel