IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

FRIENDS OF GEORGE'S, INC.

PLAINTIFF,

v.

STEVEN J. MULROY, in his official and individual capacity as District Attorney General of Shelby County, TN,

DEFENDANT.

**Case No. 2:23-cv-02163-TLP-tmp**

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF**

Plaintiff, Friends of George's, Inc., (hereinafter "Plaintiff"), by and through its undersigned counsel, submit this Motion for Attorney's Fees and Incorporated Memorandum in Support Thereof. In support of its motion, Plaintiff states as follows:

## *I.* PROCEDURAL HISTORY

Plaintiff is a registered 501(c)(3) nonprofit organization based in Memphis, Tennessee, that produces drag-centric performances, comedy sketches, and plays. On March 27, 2023, after the enactment of Tennessee's "adult cabaret entertainment" law ("AEA") but before its effective date (April 1, 2023), Plaintiff sued under 42 U.S.C. §1983 to enjoin enforcement of the statute, alleging that it was an unconstitutional restriction on free speech under the First Amendment, as incorporated by the states by the Fourteenth Amendment of the United States Constitution. After an hearing, the Court issued a temporary restraining order that enjoined enforcement of the statute in Tennessee. (ECF No. 26.) The Court and Parties agreed to consolidate the preliminary injunction

hearing and the trial on the merits under Federal Rule of Civil Procedure 65(a)(2). (ECF No. 30.) The Parties exchanged briefs and the Court held a bench trial on May 22-23, 2023.

After considering the briefs and evidence presented at trial, the Court found that the AEA was "an **UNCONSTITUTIONAL** restriction on the freedom of speech and **PERMANETLY ENJOIN[ED]** Defendant Steven Mulroy from enforcing the unconstitutional statute." (ECF No. 91, PageID 1395.)

## II. ATTORNEYS' FEES AND EXPENSES

Brice Timmons (hereinafter "Mr. Timmons"), from Donati Law, PLLC, served as lead counsel for this case with his team and worked with additional co-counsel from Apperson Crump, PLC. The case involved condensing what should have been years of litigation and preliminary investigation into seventy-two (72) days from the filing of the Complaint (ECF No. 1). to Judgement (ECF No. 92) in Plaintiff's favor. The case was time sensitive and legal research and briefing heavy. Plaintiff's counsel spent over 540 hours in time to assist Plaintiff, as the Declarations of counsel attest.

Plaintiffs are seeking attorney fees and costs as follows. Each firm is responsible for its own billing and record keeping, and each firm agrees that their applications should be evaluated separately under the appropriate factors for fee awards under 42 U.S.C. §1988:

| Timekeeper | Firm | Hourly Rate | Hours Expended | Total |
|---|---|---|---|---|
| Brice M. Timmons | Donati Law | $450.00 | 140.9 | $63,405.00 |
| Craig Edgington | Donati Law | $275.00 | 27.8 | $7,645.00 |
| Melissa Stewart | Donati Law | $250.00 | 237.3 | $59,325.00 |

| Timekeeper | Firm | Hourly Rate | Hours Expended | Total |
|---|---|---|---|---|
| Jacob Brown | Apperson Crump | $385 | 46.7 | $17,979.50 |
| Sara McKinney | Apperson Crump | $225 | 56.4 | $12,690.00 |
| Joseph Palmore | Morrison-Foerster | $1,650 | 1.75 | $2,887.50 |
| Katie Viggiani | Morrison-Foerster | $1,200 | 19.25 | $23,100.00 |
| Rachel Dolphin | Morrison-Foerster | $1,135 | 7.75 | $8,796.25 |
| Victor Lopez | Morrison-Foerster | $930 | 29.5 | $27,435.00 |
| Shelby Teeter | Morrison-Foerster | $810 | 20.75 | $16,807.50 |

Plaintiff also seeks an award of costs of $1,937.70 for filing fees and transcripts. Plaintiff's counsel did not bill for and has not sought reimbursement for incidental expenses such as online research, printing, or PACER fees and has not sought compensation for paralegal time even though paralegals were involved in the preparation of this case.

In addition to the Joint Declaration of Mr. Timmons, Mr. Edgington, and Ms. Stewart (Ex. A), Plaintiff submits Attorney Jake Brown's (hereinafter "Mr. Brown") Declaration (Ex. B), Attorney Sarah McKinney's (hereinafter "Ms. McKinney") Declaration (Ex. C), and Attorney Katie Viggiani's (hereinafter "Ms. Viggiani") Declaration (Ex. D) in support of their time expended in this matter. Plaintiff additionally submits the declarations of Attorneys Justin Gilbert (Ex. E) and Mike McLaren (Ex. F) as to the reasonableness of the requested awards.

Lead trial counsel in this case charged rates of $450 per hour for Mr. Timmons, whose practice is exclusively focused on civil rights litigation and the representation of individuals with disabilities. The vast majority of his practice is civil rights litigation under the ADA,

Section 1983 and Title IX. Mr. Brown charged $385 per hour and has litigated dozens of jury trials for which his special expertise was sought. Attorney Craig Edgington, Mr. Timmons's associate with significant experience in federal civil rights litigation, charged $275 per hour. Attorneys Melissa J. Stewart, Mr. Timmons's newest associate, charged $250 per hour. Sara McKinney, Mr. Brown's newest associate, both charged $225 per hour for their contributions.

Mr. Timmons has what is likely one of the top-three civil rights practices in the state of Tennessee. Over ninety percent (90%) of his practice is devoted to complex federal civil rights litigation including class action civil rights litigation, Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1972, Title IX of the Civil Rights Act of 1973, and 42 U.S.C. § 1983 suits against state and local governments and government officials. Mr. Timmons has litigated multiple federal class action lawsuits under both the ADA and 42 U.S.C. § 1983, all of which have produced positive results for his clients and has procured millions of dollars in settlements and extensive injunctive relief for plaintiffs, the vast majority of which has been in the federal civil rights context.

### A. As the Prevailing Party, Plaintiffs Are Entitled to Costs, Attorneys' Fees, and Related Expenses.

Under Federal Rule of Civil Procedure 54(d)(2), attorneys' fees and related expenses are available by motion upon a showing of the judgment and statute that entitles the movant to the award and a statement or fair estimate of the amount of such an award. Courts are authorized to award the prevailing party reasonable attorney fees in any action or proceeding to enforce a provision of section 1983. 42 U.S.C. § 1988(b)

Obtaining a "judgment on the merits" makes one a "prevailing party." *Buckhannon Bd. & Care Home v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 603-04 (2001). The

Supreme Court has stressed the importance of awarding attorneys' fees to prevailing parties in civil rights cases in particular, in order to encourage attorneys to act as "private attorneys-general," vindicating the most basic constitutional and congressional policies against discrimination. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968); *see also City of Riverside v. Riveria*, 477 U.S. 561, 574 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). All taxpayers indirectly benefit from the redress and elimination of unconstitutional statutes and practices. *See Newman*, 390 U.S. at 402; *see also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . ."); *Rivera*, 477 U.S. at 574 Fees in civil rights cases need not be proportionate to a monetary recovery. *Id.* In fact, Congress intended for fees in civil rights litigation to be awarded to encourage litigation designed to deter civil rights violations by institutions, just as in the case at bar. *Id*.

**B. <u>Principles for Calculating Attorneys' Fees</u>**

In calculating the initial estimate of reasonable attorneys' fees, the court should use the "lodestar method," multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). This number may then be adjusted in consideration of other factors, such as the difficulty of the case, the type and amount of the attorneys' usual fee, awards in similar cases, and the experience, reputation, and ability of counsel. *Blanchard*, 489 U.S. at 94 (citing the factors laid out in *Johnson v. Georgia Hwy. Exp.*,488 F.2d 714, 717 (5th Cir. 1974)).

The primary concern in an attorney fee case is that the fee awarded be reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum*, 465 U.S. at 893). The award should be "adequately compensatory to attract competent counsel," but also "avoid[] producing a windfall

for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). After the lodestar, "[t]he trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citing *Reed*, 179 F.3d at 471–72). In performing its post-lodestar analysis, the court may consider the twelve factors listed in *Johnson. See Adcock-Ladd*, 227 F.3d at 349 (citing *Hensley*, 461 U.S. at 434 n.9).

In summary, the calculation of attorney's fees is a two-step process. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006). The starting point for determining the amount of a reasonable attorney fee is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the relevant community for such work. *Id*. The court may then, within reason, "adjust the lodestar to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349.

The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficult of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

1. **LODESTAR**

A reasonable hourly rate for an attorney is calculated according to the prevailing market rates in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895–96. Plaintiff relies on its declarations filed

in support of this matter in aiding the Court in determining the reasonable hourly rate.

As for time, counsel should be paid "for all time reasonably expended on a matter." *Blanchard*, 489 U.S. at 91. Hours that can be properly billed to a client can be properly billed to an adversary party. *Binta B. v. Gordon*, 710 F.3d 608, 627–28 (6th Cir. 2013). An attorney "is not required to record in great detail how each minute of his time was expended but should at least identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Rather, fee applicants are expected to exercise "billing judgment" and the same ethical billing practices they would use if they were submitting a bill to a client. *NE Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). The Court, in turn, need not act as a "green-eyeshade accountant[]" but rather "must simply do 'rough justice.'" *Id*. at 703. "Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and therefore require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed." *Id*. at 706. Detailed billing records and declarations are sufficient to overcome "conclusory allegations that the award [is] excessive." *Id*. at 705.

### 2. APPLYING THE *JOHNSON* FACTORS

Consideration of the *Johnson* factors is optional but endorsed by the Supreme Court in *Blanchard* and the Sixth Circuit. *See Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006). These factors assess the reasonableness of an award as well as whether enhancement is appropriate. *Id*.

#### a. Time and Labor.

The required effort to procure vindication of Plaintiff's rights was extraordinary. The hours of work are attested to through over ninety-two (92) docket entries filed within seventy-

two (72) days. Combined, the temporary injunction hearing and preliminary injunction hearing/bench trial lasted three (3) days. The issue at hand was hardly run-of-the-mill. This case involved an extremely rare First Amendment facial challenge to a criminal statute and required Plaintiff to repeatedly litigate a plethora of nuanced issues unique to civil rights cases and the First Amendment.

**b. Novelty and Difficulty.**

The difficulty of this case was exceptionally high. Few area attorneys (or even in this state) handle civil rights in general, and even fewer direct their actions against the State of Tennessee due to various standing and immunity issues that afford State actors substantial protections from suit. These cases are often extraordinarily complex, both legally and factually, protracted, and financially and psychologically taxing.

Novelty and difficulty go hand in hand. But difficulty was *increased* here because Donati Law's attorneys began their work without the assistance of groups such as Tennessee's American Civil Liberties Union ("ACLU") or later obtained co-counsel.

Here, the ACLU took the position it would only challenge the AEA if and when it was used to punish a drag performer or shut down a family-friendly LGBTQ event.[1] It was not until after Plaintiff had secured their temporary restraining order that Plaintiff was able to secure the assistance of co-counsel. (*See* ECF No. 51, 68).

Defendant Mulroy was represented by seasoned, experienced lawyers including Jim Newsom, the lead attorney in the Memphis regional office of the Attorney General's Office. Mr. Newsom has served in that role since 2016, prior to that Mr. Newsom was Chancellor for the Chancery Court for the 30th Judicial District, as well as more than 30 years in private

---

[1] ACLU-TN Reaction to Law Targeting Drag Shows - ACLU of Tennessee

practice. Mr. Newsom was joined by Steven J. Griffin, Matthew Rice, and Robert Wilson of the Attorney General's Office.

Mr. Rice graduated from Berkley School of Law before accepting a prestigious clerkship to the Court of Appeals for the Ninth Circuit. He later served as law clerk to Justice Clarence Thomas and held a prestigious associateship at Williams and Connoley, LLP before accepting a position as Associate Solicitor General and Special Assistant to the Solicitor General of Tennessee.

Mr. Griffin graduated *Magna Cum* Laude from the University of Mississippi School of Law in 2009 where he worked on the Law Journal, served on the Dean's Leadership Council, and participated in the Christian Legal Society. Mr. Griffin served as a shareholder in the law firm Daniel Coker Horton & Bell, P.A.. There he managed a diverse litigation defense firm, which emphasized defending government entities, corporations and individuals in Section 1983 civil rights and common law tort litigation. Mr. Wilson was with the firm for 12 years before he began practice as an Assistant Attorney General in 2022.

Mr. Wilson graduated in the top 15% of his class from the University of Memphis Cecil C. Humphreys School of Law in 2015. Furthermore, he was an Articles Editor for *The University of Memphis Law Review*. After a short stent in private practice, Mr. Wilson was hired by the Attorney General's Office and has served as an Assistant Attorney General since 2016.

It should also be noted that during the pendency of this case, Attorney General Jonathan Skrmetti announced the hiring of ten (10) more attorneys who would comprise a new "strategic litigation unit" with an average salary of $146,600. That unit's focus will be on "proactive

litigation of defending the separation of powers and the constitutional rights of Tennesseans."[2] It could very well be argued that the attorney general believes Mr. Timmons' team is doing the work of more than a dozen attorneys since he is placing that many attorneys on staff to fight his continually losing constitutional battles.

In the present case, the issues were complex, as reflected above, requiring strong writing, oral advocacy, and trial skills. However, uniquely, this case involved marathon argument sessions on nuanced issues involving nearly every aspect of standing and every aspect of the speech clause of the First Amendment as well as its interplay with the vagueness doctrine of the Fourteenth Amendment. As evidenced by the Court's seventy (70) page ruling, the legal issues in this case required an incredible level of analysis that could only realistically be litigated by experts in their field.

**c. Preclusion of Employment.**

Brice Timmons receives dozens of requests and referrals for representation in Tennessee *each month*, which include nearly all individual civil rights suits. For years he has maintained multiple simultaneous civil rights class action suits, and at the time of trial in this matter was actively engaged in one class action lawsuit filed in Wyoming District Court under the Trafficking Victims Protection Reauthorization Act ("TVPRA") as lead counsel that is now a case of first impression in the United States before the Tenth Circuit regarding the interpretation of the TVPRA as it relates to child labor. It is a staggering workload to balance. This reflects an incredible demand for help within Tennessee's public citizenry and that of other

---

2 https://www.tba.org/?pg=TBAToday&pubAction=viewIssue&pubIssueID=28457&pubIssueItemID=150990&utm_campaign=tba-today&utm_content=thursday-may-4-2023&utm_medium=email&utm_source=membercentralpublications

states that have an even more substantial dearth of civil rights attorneys and, no doubt, the lack of supply of attorneys capable of meeting it. With regard to this case specifically, Mr. Timmons had to pause accepting referral cases from a prominent, nationally recognized civil rights law firm with whom he had recently expended significant time cultivating a relationship in order to focus on this matter. Thus, in any case that Mr. Timmons and his practice group accept, there is always a trade off with work that has a higher (or guaranteed) probability of success whenever he elects to take on public interest litigation like this challenge to the AEA.

**d. Customary Fee.**

The fee rates fall well within the rates for complex litigation and civil rights litigation in the Western District. (Ex. F, McLaren Dec.; and Ex. E. Gilbert Dec.) As mentioned above, this case involved novel issues, presented numerous challenges, and, presented an issue of first impression nationally. Therefore, arguably there is no forum market to determine a customary fee. Plaintiff therefore requests rates consistent with the highest hourly rate awarded to attorneys with their level of expertise in federal civil rights litigation generally in the Western District of Tennessee.

**e. Fixed Fee or Contingent.**

The entirety of this representation was contingent, and all costs were advanced by counsel. All of the risk in this matter was borne by Plaintiff's counsel, and Mr. Timmons personally, Apperson Crump, or Morrison-Foerster bore the expense of salaries for all associate attorneys involved for the entirety of this litigation. Mr. Timmons personally assumed all risk for costs. Mr. Timmons took on an additional degree of risk because the size of his practice group, for which he bears all financial responsibility personally, and because he brought the suit *before* this Court's Temporary Restraining Order counseled a likelihood of success that served

as an inducement to additional counsel joining the litigation.

**f. Time Limitations.**

At the time Mr. Timmons was presented with the case, time was of the essence. Mr. Timmons did not have time to develop the case or investigate as fully as would be typical. The nature of temporary restraining orders and preliminary injunctions, of course, are urgent. On February 27, 2023, Governor Bill Lee signed the AEA into law, to take effect on April 1, 2023. Plaintiff immediately took action and sought legal assistance from organizations such as the ACLU and other qualified attorneys in the state of Tennessee and the surrounding area without success. It was not until March 16, 2023, sixteen (16) days prior to the AEA taking effect, that Plaintiff was able to obtain the services of Mr. Timmons. Despite this short notice, Mr. Timmons altered the entire way his practice was operating, and devoted himself and Ms. Stewart's entire existence to overcoming this unconstitutional infringement of the rights of the citizens of Tennessee.

**g. Results and Amount of Time Involved.**

While listed as the eighth *Johnson* factor, results should probably be the first factor evaluated. Plaintiff's counselors are *particularly* proud of the result obtained. Plaintiff accomplished what it set out to do: obtain injunctive relief preventing Defendant from enforcing the AEA. Likely more importantly, Plaintiff obtained declaratory relief putting the entire state on notice that the enforcing the AEA would violate the constitutional rights of Tennessee citizens.

There are over ninety (90) docket entries which were filed in seventy-two (72) days. Additionally, Plaintiff's counsel have worked in excess of 540 hours. (Ex. A, B, C, D.)

**h. Experience, Reputation, and Ability of the Attorneys.**

Here, in the context of a fee application, it is required for counsel to address their experience, reputation, etc. The undersigned (Mr. Timmons's) declaration addresses his experience, reputation, and ability in civil rights and disability cases. (*See gen.* Ex. A, Timmons Dec.) Arguably, no private active lawyer in Shelby County has had a greater impact for civil rights, from tackling a misguided efforts by the Governor of Tennessee to prohibit mask mandates within Tennessee schools to prevent the spread of COVID-19, to challenging systematic abuses in the "therapeutic boarding school" and "troubled teen" industry, to assisting students with access to educational facilities, to obtaining more than one "first-in-the-nation" preliminary injunction in the education civil rights context both under Title IX and the ADA. Mr. Timmons also litigates extensively on behalf of incarcerated individuals with disabilities and individuals with disabilities against caregiver institutions such as mental health facilities and group homes. No other lawyer in Tennessee has this constellation of skills, rendering Mr. Timmons a "lawyer of last resort" for many plaintiffs.

Few lawyers bring constitutional facial challenges against an officer of the State of Tennessee. This suit marks the fifth such case in which Mr. Timmons has been counsel of record at the trial or appellate level and his fourth such case to be successful. *See G.S. v. Lee*, 560 F. Supp. 3d 1113, 2021 U.S. Dist. LEXIS 182934, 2021 WL 4268285, at *14 (W.D. Tenn. Sept. 17, 2021); *R.K. v. Lee*, 568 F. Supp. 3d 895, 2021 U.S. Dist. LEXIS 204078, 2021 WL 4942871, at *18 (M.D. Tenn. Oct. 22, 2021); *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 195663, 2021 WL 4755619, at *28 (E.D. Tenn. Oct. 12, 2021); *R.K. v. Lee*, 2022 U.S. App. LEXIS 12622, *7, 2022 FED App. 0194N (6th Cir. 2022), 2022 WL 1467651.[3]

[3] Mr. Timmons and his team initially prevailed in *R.K. v. Lee II* but were reversed on appeal for lack of standing.

To accept such cases is not primarily a monetarily motivated decision; because the lawyers put in most of the time unpaid, and the reward is, at best, being reimbursed for time and risk already outlaid. Over time, unless one prevails in every case, this is a losing economic and business strategy. In order to pursue these types of litigation on behalf of individuals whom few others will represent and can competently represent, Mr. Timmons set aside an hourly-rate general civil litigation practice that earned hundreds of thousands of dollars per year. Following her graduation from Duke Law, Attorney Stewart turned down a lucrative associate position with Morrison-Foerster to accept a compensation package with a fraction the guaranteed salary and the rest of her compensation based on contingency fees in order to take on this type of litigation. Put differently, it is critically important to be paid fully for the victories because the losses are not paid at all. If the purpose of 42 U.S.C. § 1988 is to induce private practice attorneys to act as "private attorneys general" as Congress intended, the amount of compensation must account for these risks and sacrifices. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).

Attorney Brown has significant experience in federal civil rights litigation and has litigated dozens of jury trials. His assistance and that of Attorney McKinney were critical to ensuring that this matter could be successfully litigated in the limited time before the expiration of the Temporary Restraining Order, permitting the efficient administration of justice by avoiding the costly necessity of in interlocutory appeal. Apperson Crump, PLLC bore the expense of Mr. Brown and Ms. McKinney's salaries during the pendency of this litigation and should be compensated for doing so.

The Morrison-Foerster attorneys have substantial litigation experience. Joseph Palmore is the managing partner of their Washington, D.C. office and heads their Supreme Court and

Appellate Practice division where has appeared before the Supreme Court on multiple occasions. Katie Viggiani is a partner in Morrison-Foerster's litigation department; she represents clients in complex federal litigation, including both civil and white-collar criminal litigation. Along with their associates, Attorneys Palmore and Viggiani provided essential, extensive research at a time when Plaintiff's other counsel were already working late into the night to complete projects. (Defendant's trial brief contained numerous citations to 125 individual cases, necessitating hours of citation checking on short notice.) Notably, any fee awarded to Morrison-Foerster will be contributed to their *pro bono* litigation fund ensuring that other individuals and organizations who lack access to justice can receive services.

**i. Nature of the Professional Relationship with the Client.**

Prior to March 16, 2023, Mr. Timmons had no previous relationship with Plaintiff. Civil rights cases typically do not involve repeat litigation for the same client, as in a business relationship case. Counsel have worked diligently, without any conflict at all with their client's goals. Mr. Timmons accepted Plaintiff's case when no other lawyer, not even non-profit civil rights organizations like the ACLU would do so.

**j. Awards in "Similar" Cases.**

The novelty factor, above, is opposite of a "similarity" factor. This matter was the nation's first challenge to a legislatively enacted criminalization of drag performances. As such, there are not *any* reported similar damages or fee award cases that Plaintiff's counsel can provide for this Court. However, Plaintiff's counsel recently obtained injunctive relief against the state in a masking case brought under the ADA with similar time constraints. In that case, Plaintiff's counsel sought and also received injunctive relief against the government. Plaintiff avers that rates ranging from $450/hour for lead counsel and $250/hour for associate counsel are commensurate with rates

recommended or awarded in other, recent federal civil rights litigation against governmental entities across Tennessee.

In *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877, *33, 2021 WL 5855637 1467651 (W.D. Tenn. Dec. 9, 2021) (Mays, J.) awarded Mr. Timmons $420 per hour and Mr. Edgington $275 per hour in a court-approved class action settlement based on a Lodestar calculation with no multiplier. *Turnage* was a desirable case with substantial, calculable damages and a clear-cut path to liability. Numerous firms filed similar lawsuits which were ultimately consolidated with Frank Watson, Bill Burns, Michael G. McLaren, and Timmons acting as co-lead-counsel. In that same case, McLaren and Watson were awarded $500/hour and Burns $495/hour.

In, *G.S. et al, v. Governor Gill Bill Lee,* 2:21-cv-02552-SHL-atc (W.D. Tenn. 2022), a case of similar risk and novelty arose during the COVID pandemic, when the Governor issued Executive Order 84 ("EO 84") which allowed parents to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions, and its progeny in violation of Plaintiffs' rights to access school under the ADA and Section 504 of the Rehabilitation Act, Judge Sheryl H. Lipman awarded attorneys from Donati Law similar rates. (ECF No. 140). There, Mr. Timmons was awarded $400 per hour and Mr. Edgington was awarded $260 per hour. G.S. represents a good comparator case because it involved the same type of relief, similar work, and was also expedited taking only fifty-nine (59) days from the filing of plaintiff's complaint (ECF No. 1) to the court issuing its Judgment (ECF No. 141). There, Judge Lipman's preliminary ruling was issued on September 17, 2021[4], after only

[4] It should be noted that the rates awarded to Mr. Timmons and Mr. Edgington were calculated based off work performed in 2021. Plaintiff's counsel avers that a 6 – 10 percent per annum increase in their annual rates is appropriate in light of increases in experience and substantial inflation since that date.

sixty-two (62) docket entries. (ECF No. 62).

In *S.B. a minor student, by and through his parents, M.B. and L.H., et al. v. Governor Bill Lee,* 3:21-cv-317-JRG-dcp (E.D. Tenn. 2019), the masking challenge to EO 84 out of Knoxville, Tennessee, Magistrate Judge Debra C. Poplin recently recommended awarding two attorneys substantially higher rates. Judge Poplin recommended awarding $650 per hour to Justin Gilbert and $500 per hour to Jessica Salonus (ECF No. 165), for substantially similar work Plaintiff's counsel performed in G.S.[5]

**C. <u>Enhancement</u>**

Multipliers, or enhancements, are for rare cases. For exceptional success, courts have discretion to increase the hourly rate itself (the lodestar) [6] or use a multiplier on the end-result.[7] As noted by Attorneys Justin Gilbert and Michael G. McLaren in their affidavits (Ex. E and F), an enhancement of a 1.75 multiplier on the end-result, should be used in this case. Footnote 7 contains a list of cases utilizing a 1.75 or greater multiplier on end results. None of those cases involved the vindication of the constitutional rights of all citizens of the state by way of a facial constitutional challenge to a criminal statute. Certainly, safeguarding the rights of all Tennesseans to a right so fundamental as the freedom of speech is of at least as much importance as successfully vindicating

---

[5] Timmons acted as appellate counsel in this case.

[6] A recent example of this is *S.B. et. al. v. Governor Bill Lee*, No 3:21-cv-317 (E.D. Tenn), D.E. 165, April 28, 2023. There, the court increased my lodestar of $425 to $650 for exceptionally strong results. *Id*. at p. 14.

[7] See *Barnes v. City of Cincinnati* , 401 F.3d 729, 745-46 (6th Cir. 2005)(using 1.75 multiplier). Additionally, in *Doe v. Bd. of Educ. of Memphis City Sch.*, 2007 U.S. Dist. LEXIS 103207, at *6 (W.D. Tenn. Jan. 9, 2007), the 1.75 multiplier was used, in part, because of bringing about "greater compliance by the School Board" in matters of harassment. *See also Linneman v. Vita-Mix Corp.*, 2019 U.S. Dist. LEXIS 240495, at *20 (S.D. Ohio Sep. 11, 2019) (using 1.81 enhancement, and collecting cases, including *Barnes*).

the rights of an individual litigant under Title VII or other statutory schemes. *See Barnes*, 401 F.3d at 745-46. Plaintiff requests a multiplier of 1.75 on the Lodestar.

**D. Costs**

As for expenses, Plaintiffs incurred other expenses for filing fees and transcripts. See: Mr. Timmons and Mr. Brown's declarations. (Ex. A, Timmons Dec.; Ex. B, Brown Dec.) These expenses were necessary for success in Plaintiffs' case. Those costs are $1,937.70.

Counsel did not bill for online research expenses, printing, copying, PACER fees, and other small, incidental expenses for which they are entitled to bill. Neither did counsel bill for any paralegal time despite employing paralegals who actively worked on these cases. Plaintiff asks that the lack of billing for incidental costs and paralegal expenses be considered when determining Plaintiff's hourly rates.

## III. CONCLUSION

For the reasons stated herein and in the contemporaneously filed declarations, Plaintiff requests an award of attorneys' fees and suit expenses as follows:

1. For the work of Donati Law, PLLC $130,375 with a multiplier of 1.75 for fees of $228,156.25 plus costs of $1,937.70, for a total of $230,093.95;
2. For the work of Apperson Crump, PLLC; $30,669.50 with a multiplier of 1.75 for a total of $53,671.63; and
3. For the work of Morrison-Foerster, LLP $79,026.25 with a 1.75 multiplier enhancement for a total of $138,295.94.

Respectfully submitted,

/s/ *Brice M. Timmons*
Brice M. Timmons (#29582)
Craig A. Edgington (#38205)
Melissa J. Stewart (#40638)
Donati Law, PLLC
1545 Union Ave.
Memphis, Tennessee 38104
(901) 278-1004 (Office)
(901) 278-3111 (Fax)
brice@donatilaw.com
craig@donatilaw.com
melissa@donatilaw.com

Jacob Webster Brown (#36404)
Sara Katherine McKinney (#40900)
Apperson Crump, PLC
6000 Poplar Avenue, Suite 150
Memphis, Tennessee 38119
(901) 756-6300 (Office)
(901) 757-1296 (Fax)
jbrown@appersoncrump.com
smckinney@appersoncrump.com

***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon all parties of record via the Court's ECF system on the 21st day of June, 2023.

*/s/ Brice M. Timmons*