IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **FRIENDS OF GEORGE'S, INC.** ) | |
| ) | |
| ) | |
| **Plaintiff.** ) | |
| ) | |
| vs. ) | |
| ) | No. 2:23-CV-02163 |
| ) | |
| ) | JUDGE PARKER |
| **STEVEN J. MULROY** ) | |
| ) | |
| **Defendant** ) | |

### DECLARATION OF JUSTIN S. GILBERT

1. I am Justin S. Gilbert and I have personal knowledge of the following.

2. I am a lawyer of 29 years. I received my law degrees from Southern Methodist University in 1993, J.D., and a Masters in Law, LL.M., from the University of Edinburgh, Scotland, in 1994.

3. I submit this Declaration on behalf of Brice Timmons, Craig Edgington, and Melissa Stewart, with whom I know well and I have worked as co-counsel in past cases. I also submit this declaration on behalf of the Morrison-Foerster, LLP lawyers: Joseph Palmore, Katie Viggiani, Rachel Dolphin, Victor Lopez and Shelby Teeter, as well as the Apperson Crump attorneys, Jacob Brown and Sara McKinney whom I know by reputation and by reviewing their work product in the above referenced case.

4. I frequently handle civil rights cases in federal courts in Tennessee including cases under 42 U.S.C. §1983. My cases usually involve some type of exclusionary act taken by an arm of the

state, most often in the disability context. I am also frequently called upon by potential clients to examine whether exclusionary actions of the Tennessee legislature—whether COVID laws, transgender laws, and the so-called "drag" law in this case—pass Constitutional muster.[1]

5. I seek to stay up-to-date on the law of attorneys' fees, reviewing decisions from District Courts around the state.  I am filing this Declaration without any compensation.

6. I submit this Declaration in support of the motion for attorney fees filed by the above-referenced Plaintiffs' attorneys.  In this Declaration, I address whether the fees sought are fair, appropriate, and reasonable under applicable case law, and the specific facts and circumstances of the case. To do so, I have examined the docket sheet in this case, reviewed selected substantive pleadings, the deposition of Vanessa Rodley, and the June 2, 2023 Opinion by Judge Parker.  I also spoke with Brice Timmons about challenges in the case itself; that includes legal theories, the organization as plaintiff, proper defendants, statutory construction, and the defenses.

## TIME AND RATE

7. In gauging the reasonableness of the fees sought by the Plaintiffs' attorneys, I have considered all of the factors listed by the Sixth Circuit in *Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2005). I address them in the context of this case below.

    A.    **<u>Time and labor required</u>**. From my review, it appears this matter was handled very efficiently.  Counsel made strategic decisions to join the preliminary hearing with the trial itself, with the court allowing abbreviated discovery.  It is obvious from the time sheets, as well as the result, that counsel devoted considerable effort and appropriate time. Without question, the Defendant is a well-resourced and well-represented party necessitating careful

---

[1] Some noteworthy cases of mine involving exclusion of children include *Knox Cty. v. M.Q.*, 62 F.4th 978 (6th Cir. 2023)(autism); *L.H. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779 (6th Cir. 2018)(Down syndrome);  *Knox Cty. v. M.Q.*, 62 F.4th 978, 990 (6th Cir. 2023); *S.B. v. Lee*, 566 F. Supp. 3d 835 (E.D. Tenn. 2021)(Covid-compromised children with disabilities).

consideration by Plaintiffs' counsel not only to the ultimate inquiry, but also to procedural hurdles like standing, proper defendant, and scope of relief sought.

  B. **Novelty and difficulty of the questions presented**. There is no question in my mind this case was novel and difficult, those terms being an understatement here. Certainly no *other* lawyers filed such a case even though the Adult Entertainment Act (AEA) affected every part of Tennessee. I have personally spoken to many lawyers who *wanted to do something* but either (1) lacked the Constitutional experience; (2) feared public backlash; or (3) both.

  I also know Brice Timmons well, having worked with him on cases involving Tennessee's executive actions and legislation related to COVID. That familiarity provided me the real-time opportunity to speak to him as he developed the case, listening to his Constitutional theory, his thinking about the appropriate party-Plaintiff and party-Defendant, and the sometimes-pernicious issue of "standing." Additionally, as Judge Parker himself observed, the defense became a moving target; it involved more than interpretation of language but Plaintiffs' counsel had to counter the defense's *altered meaning* of language. *Friends of George's, Inc. v. Mulroy*, 2023 U.S. Dist. LEXIS 96766, at *101 (W.D. Tenn. June 2, 2023) ("This is only one of several ways in which Tennessee asked this Court to rewrite the AEA.") All of these factors make rank this case high in novelty and difficulty.

  C. **The skill needed to perform the legal service properly.** No other lawyers came forward. This case required substantial skill relating to the First Amendment which, itself, is exceptionally complex; the complex issue of standing; managing the burdens of preliminary injunction; plus traditional courtroom skills of trial presentation. It should also be remembered this was a case of first impression. As evidenced by the result, the skills were performed at a high level.

**D.     The preclusion of employment by the attorney due to acceptance of the case.**

Mr. Timmons addressed this matter with me directly. The matter was concluded in 57 days—from filing to trial. His office devoted the equivalent of one full-time lawyer working solely on this case. Obviously, the time spent on this case detracted from the ability to consider and accept other cases. Both Mr. Timmons and Mr. Brown did, in fact, decline other hourly-rate representation during this time period, thus making the financial risk associated with accepting this case actual, not hypothetical.

**E.     The customary fee**. There is no "customary" fee, *per se,* in a case of first impression which, for many lawyers in Tennessee, could be viewed as stigmatic. However, for urgent civil rights cases of preliminary injunction, it appears to me that the time spent for all of the attorneys' is certainly appropriate. In terms of rates, I believe the requested rates of the Memphis-lawyers, $450 for Timmons, $275 for Edgington, $250 for Stewart, $385 for Brown, and $225 for McKinney, in view of their skill, experience, and their reputation, fall well within the customary fees charged by lawyers with comparable credentials. My own last fee approval in the Western District was $450 per hour in November of 2021. *B.H. v. Obion Cty. Bd. of Educ.*, 2021 U.S. Dist. LEXIS 226689, at *1 (W.D. Tenn. Nov. 24, 2021).

The Morrison-Foerster-group of lawyers have rates substantially higher, as they are from out-of-state. But in my view, this case required assistance from out-of-state lawyers given the absence of lawyers able to assist in Tennessee, its complexity, and the urgent need for assistance. Certainly, if the out-of-state rates are *not* used, I would recommend the highest local hourly rates be used for the respective experience-levels of attorneys Joseph Palmore, Katie Viggiani, Rachel Dolphin, Victor Lopez and Shelby Teeter.

**F.     Whether the fee is fixed or contingent**. The fee was contingent entirely.

  **G.** **Time and limitations imposed by the client or the circumstances**. I understand time was of the essence as Friends of George's could face loss of business income or even the penalties for the violation of the AEA.

  **H.** **The amount involved and the results obtained**. The result, by any measure, was an unqualified success, a victory that rang not only locally but nationally and even internationally. The Plaintiff's lawyers should be commended for taking a case of such public importance notwithstanding the potential for controversial publicity. The victory in safeguarding the business of Friends of George's while simultaneously obtaining First Amendment protection and checking the legislature's Constitutional overreach is priceless.

  **I.** **The experience, reputation, and ability of the attorneys**. As mentioned, I know the Memphis-group of Timmons, Edgington, and Stewart very well, having been co-counsel with them. They are all top notch. I have stood at the trial podium with Attorney Timmons, switching back and forth, as we cross-examined witness after witness, sight unseen, in matters of public importance. He is among a small inner circle of persons I would consult with complex litigation strategy under Section 1983. I do not know the Morrison-Foerster, LLP lawyers personally, but I do by reputation. I have scouted their biographies and read some of their published results, including Supreme Court arguments handled by Joe Palmore. These lawyers appear to be outstanding in this field.

  **J.** **The "undesirability" of the case**. With substantial financial risk, no "contingency fee" recovery in the form of damages, on a "wedge-issue" involving much publicity, this case was simultaneously highly undesirable for lawyers but immensely important for all Tennesseans. Relying entirely on prevailing-party fee-shifting statutes is highly risky, eliminating all but well-resourced niche practitioners. Again, these are the *only* lawyers who stood up.

  **K.** **The nature and length of the professional relationship with the client**: I understand the relationship held fast through the entirety of the proceeding and remains intact, thus favoring the Plaintiffs.

  **L.** **Awards in "similar" cases**: While this is a case of first impression, my review of the record along with my knowledge of similarly urgent matters suggests the attorneys' fee amounts sought by the Memphis-group are well within the range of fees that have been awarded in litigation of this nature. And for the Morrison-Foerster-group, as I mentioned, their time should at least be compensated at the highest hourly rates within the Western District for their experience-levels, thus landing them within the range of awards for similar cases.

### MULTIPLIER

8. Multipliers, or enhancements, are for rare cases. For exceptional success, I have seen courts increase the hourly rate itself (the lodestar)[2] while, in other cases, I have seen the court use a multiplier on the end-result.[3] In my view, an enhancement for all of the hours, a 1.75 multiplier on the end-result, should be used in this case. This case is at least as important as the cases where such a multiplier has been used (see footnote 3) and, in my view, exceeds those cases in importance. Here the Plaintiffs safeguarded a business, protected all Tennessee citizens from governmental encroachment on the First Amendment, and issued an important warning shot against the culture-war of "anti-drag" laws. No one else did what these lawyers did: They deserve

---

[2] A recent example of this is *S.B. et. al. v. Governor Bill Lee*, No 3:21-cv-317 (E.D. Tenn), D.E. 165, April 28, 2023. There, the court increased my lodestar of $425 to $650 for exceptionally strong results. *Id*. at p. 14.

[3] See *Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005)(using 1.75 multiplier). Additionally, in *Doe v. Bd. of Educ. of Memphis City Sch.*, 2007 U.S. Dist. LEXIS 103207, at *6 (W.D. Tenn. Jan. 9, 2007), the 1.75 multiplier was used, in part, because of bringing about "greater compliance by the School Board" in matters of harassment. *See also Linneman v. Vita-Mix Corp.*, 2019 U.S. Dist. LEXIS 240495, at *20 (S.D. Ohio Sep. 11, 2019) (using 1.81 enhancement, and collecting cases, including *Barnes*).

just compensation with a just enhancement.

     I declare, under penalties of perjury, that the foregoing is true and correct to the best of my knowledge, information, opinion, and belief.

          /s/ *Justin Gilbert*_____
          JUSTIN S. GILBERT

          DATE: June 21, 2023