## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| FRIENDS OF GEORGE'S, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:23-CV-02163 |
| ) | JUDGE PARKER |
| STEVEN J. MULROY, ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF MICHAEL G. MCLAREN

1. I am Michael G. McLaren and I have personal knowledge of the following.

2. I attended Yale University and graduated with a Bachelor of Arts in History in 1972. In 1976 I graduated from Loyola University of Chicago, School of Law, receiving a JD degree. I have been licensed to practice law in Tennessee since 1976, 47 years. I am also licensed to practice before the Supreme Court of the United States of America, United States Court of Appeals for the Sixth Circuit, the United States District Court of Western Tennessee, the United States District Court of Middle Tennessee, and the Court of Federal Claims in Washington, DC.

3. All I have ever done is litigation, beginning in 1976 with the now-defunct firm of Rickey, Shankman, Blanchard, Agee, and Harpster. In 1979 I began practicing with the law firm of Thomason, Crawford, Hendrix, Harvey, Mitchell & Johnson (now known as Lewis Thomason). I was with that firm until 1999, when my current law partner, Stevan L. Black, and I formed the firm of Black McLaren (now known as Black McLaren Jones Ryland & Griffee).

EXHIBIT F

4. My firm and I have represented clients from all over the country in my general litigation practice and in my practice before the United States Court of Federal Claims. The firm has had clients in every state of the country but for Alaska and North Dakota. I have tried cases in Arkansas, Mississippi, Tennessee, Washington, DC, New York City, Massachusetts, Nevada, and Louisiana, among others. I have argued before divisions of the Tennessee Court of Appeals and Sixth Circuit Court of Appeals and briefed to the United State Supreme Court.

5. I am a member of the American Bar Association (a fellow of the American Bar Foundation), the Tennessee Bar Association, the Memphis Bar Association, and the Court of Federal Claims Bar Association. Previously, I was an active member in the International Association of Defense Counsel, was named Lawyer of the Year by Best Lawyers in America in 2019 in the area of medical malpractice, and have been a SuperLawyer for the 16 years that organization has been in existence. I have been named in Best Lawyers of America for the last several years.

6. I have lectured extensively over the years on evidentiary issues, collegiality in the courtroom, briefing issues, and the like. All lectures have been in the field of litigation, because that is all I have ever known. I have had an AV preeminent Martindale-Hubbell Peer Review Rating for decades, which, according to Martindale-Hubbell, means I meet the highest peer rating standard and signifies that many of my peers rank me at the highest level of professional excellence. I have been named a Pillar of Excellence in the practice of law for 2023, one of five lawyers so chosen.

7. I submit this Declaration on behalf of Brice Timmons, Craig Edgington, and Melissa Stewart, with whom I know well and I have worked as co-counsel in past cases. I also submit this declaration on behalf of the Morrison-Foerster, LLP lawyers: Joseph Palmore, Katie

Viggiani, Rachel Dolphin, Victor Lopez and Shelby Teeter, as well as the Apperson Crump attorneys, Jacob Brown and Sara McKinney whom I know by reputation and by reviewing their work product in the above referenced case.

8. I have handled federal court litigation including litigation under federal fee shifting statutes including under Section 1983.

9. I seek to stay up-to-date on the law of attorneys' fees, reviewing decisions from District Courts around the state and nationally, as my practice is often reliant on fee shifting statutes, especially, of a sort, in the Court of Claims in Washington, D.C. I am filing this Declaration without any compensation.

10. I submit this Declaration in support of the motion for attorney fees filed by the above-referenced Plaintiffs' attorneys. In this Declaration, I address whether the fees sought are fair, appropriate, and reasonable under applicable case law, and the specific facts and circumstances of the case. To do so, I have examined the docket sheet in this case, reviewed selected substantive pleadings, the deposition of Vanessa Rodley, and the June 2, 2023 Opinion by Judge Parker.

11. I followed this litigation very closely as general counsel for Playhouse on the Square, because this litigation was of great concern to that organization insofar as it posed a risk to otherwise mainstream performances. I met with my client, Playhouse on the Square, considered filing an amicus brief, and supervised mailings regarding this case.

## TIME AND RATE

12. In gauging the reasonableness of the fees sought by the Plaintiffs' attorneys, I have considered all of the factors listed by the Sixth Circuit in *Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2005). I address them in the context of this case below.

A. **<u>Time and labor required</u>**. This matter was handled as efficiently as possible under the circumstances. The parties engaged in the incredibly rapid preparation of the case for trial over a timeframe of 57 days from filing to trial and moved the case from the initial client contact to filing within a matter of less than two weeks, no small feat for a team that, at that point, consisted of three attorneys. Counsel devoted considerable effort and appropriate time given the fact that this was a case of first impression regarding a major constitutional issue. Defendant is represented by a state attorney general's office with all of the resources that come with that, along with what I presume is a great deal of experience with these types of cases. Opposing counsel consisted of experienced litigators including a former Tennessee Chancellor and a former United States Supreme Court clerk. These opponents also worked diligently, necessitating long hours by the Plaintiff's counsel.

B. **<u>Novelty and difficulty of the questions presented</u>**. This was a case of first impression regarding a constitutional question. Nearly every aspect of the First Amendment's speech clause was implicated in this case, and the litigation presented complex issues of standing, issues that attorneys with less experience litigating against governmental entities would likely have been unable to navigate. This was civil rights litigation of the highest level of complexity and gravity. Plaintiff's counsel were compelled to analyze a complex and byzantine statutory scheme, and it should be noted that even the American Civil Liberties Union publicly stated that it did not view a facial challenge to the Adult Entertainment Act as plausible. This factor should weigh heavily in favor of Plaintiffs' fee application.

C. **<u>The skill needed to perform the legal service properly.</u>** No other lawyers came forward. Again, it is notable that even the American Civil Liberties Union, the organization responsible for litigating several precedents intrinsic to the Court's ruling in this case, declined to

represent Friends of George's. In addition to all of the skills necessary to a litigator, this case required significant expertise in Section 1983 litigation against government entities and experience in both facial challenges to legislation and First and Fourteenth Amendment jurisprudence. These are rare skills, and few lawyers in Tennessee possess them.

  D. **The preclusion of employment by the attorney due to acceptance of the case.** Both Mr. Timmons and Mr. Brown declined other hourly-rate and more traditional contingency fee representation during this time period, thus making the financial risk associated with accepting this case actual, not hypothetical. I am familiar with Mr. Timmons' practice, and his practice group, which operate independently within the Donati Firm and is highly specialized, with the vast majority of cases being contingency fee cases brought under federal fee-shifting statutes. Thus, the risk of taking on high-risk litigation is pronounced, as these cases often take years to litigate while overhead does not abate in the meantime. The compressed timeframe of this case warrants consideration of even additional fees.

  E. **The customary fee**. This case involved an urgent civil rights issue and preliminary injunction. It appears to me that the time spent for all of the attorneys was reasonable and necessary. In terms of rates, I believe the requested rates of the Memphis-lawyers, $450 for Timmons, $275 for Edgington, $250 for Stewart, $385 for Brown, and $225 for McKinney, in view of their skill, experience, and their reputation, fall well within the customary fees charged by lawyers with comparable credentials in Memphis, Tennessee. My own last fee approval in the Western District was $500 per hour in *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877, *32, 2021 WL 5855637. That case was a class action suit brought under Section 1983. In that same case, Mr. Timmons, my co-counsel, was awarded $420 per hour. Since that time, he has fully focused his practice on federal civil rights litigation and, at this point, likely has as much or more

experience litigating federal civil rights cases involving injunctive relief as any attorney in Memphis, Tennessee and should receive an accordingly higher rate.

The Morrison-Foerster-group of lawyers have rates substantially higher, as they are from out-of-state. I am familiar with hourly rates in the Washington D.C. and New York markets, and this case required assistance from out-of-state lawyers given the absence of lawyers able to assist in Tennessee, its complexity, the short time frame for litigation, and the resources of the opponent. I would recommend the highest forum rates be used for the respective experience-levels of attorneys Joseph Palmore, Katie Viggiani, Rachel Dolphin, Victor Lopez and Shelby Teeter.

    **F.**    **Whether the fee is fixed or contingent.** The fee was contingent entirely.

    **G.**    **Time and limitations imposed by the client or the circumstances**. I understand time was of the essence as Friends of George's could face loss of business income or even the penalties for the violation of the AEA. Additionally, as evidenced by the position of the Actors Equity Association in its *amicus curiae* brief, the public interest was imminently impacted by the Adult Entertainment Act. This was also my experience as attorney for Playhouse on the Square, which considered the quick resolution of this issue critical.

    **H.**    **The amount involved and the results obtained**. I concur with my colleague Justin Gilbert that the result was an unqualified success with national implications as a case of first impression on an issue that is currently sweeping the national stage. The Plaintiff's lawyers accepted controversial publicity and protected Friends of George's freedom of expression and that of all Tennesseans. Given the fact that the Actors Equity Association has informed the Court that it could not advise its membership of whether performing certain stage productions in Tennessee would expose them to criminal penalties under the Adult Entertainment Act, the Plaintiff's lawyers did more than simply protect their client. They protected Tennessee's entire theater industry.

**I.     The experience, reputation, and ability of the attorneys.** I know the Memphis-group of Timmons, Edgington, and Stewart very, very well. Timmons is my former law partner, at Black McLaren, where Edgington was also previously employed. I worked very closely with Timmons on several cases while we were partners. I have been co-counsel with all three, and they are as high-caliber a group of civil rights attorneys as can be found in Tennessee and the only firm of which I am aware that is so singularly focused on that type of litigation. Typically, only organizations like the ACLU that have access to outside funding are so specialized in federal civil rights litigation. I do not know the Morrison-Foerster, LLP lawyers personally, but I do by reputation, having reviewed their biographies and read some of their published results, including Supreme Court arguments handled by Joe Palmore, who heads Morrison-Foerster, LLP's Supreme Court and Appellate Practice division. These lawyers appear to be outstanding in this field.

**J.     The "undesirability" of the case.** This case involved substantial financial risk. There was no possibility for a traditional percentage-based recovery in the form of damages. The issues at stake were immensely important for all Tennesseans, especially the theater community, yet the polarizing nature of the issue prevented most theater organizations and lawyers representing them from taking action. Relying entirely on prevailing-party fee-shifting statutes is a risk that most lawyers simply will not take, eliminating all but a few practitioners. At a time when much of the legal community and the theater community wanted to challenge this litigation, only this team of lawyers did so, especially Timmons, Edgington, and Stewart, all of whom took this case on without additional support and obtained the Temporary Restraining Order that made the case desirable enough to develop a larger team. They likely made a substantial slice of the public critical of them, at the least.

**K.     The nature and length of the professional relationship with the client**: The client in this case was a unique non-profit willing to challenge a controversial law, and these were the *only* lawyers who were willing to take on the case. The duration of representation may not be of any great length, but the nature of the relationship is highly unique and should weigh in favor of Plaintiff.

**L.     Awards in "similar" cases**: There are no truly "similar" cases with which to compare this case in recent memory. Facial challenges to criminal statutes under the First Amendment are exceedingly rare. My review of the record along with my knowledge of similarly urgent matters suggests the attorneys' fee amounts sought by the Memphis-group are well within the range of fees that have been awarded in more ordinary Section 1983 litigation or too low. The Morrison-Foerster-group should at least be compensated at the highest hourly rates customary within the Western District for their experience-levels, thus landing them within the range of awards for similar cases.

## MULTIPLIER

13.     Multipliers, or enhancements, are for rare cases. It is my opinion that an enhancement for all of the hours of 1.75 times the Lodestar, should be used in this case. Alternatively, I believe that Timmons, Edgington, and Stewart, as the initial and lead counsel who accepted this case when no one else would do so and then built upon their initial success to get the case across the finish line should be awarded such a multiplier, at a minimum. This case protected all Tennessee citizens from governmental encroachment on the First Amendment and achieved all of the objectives of the Plaintiff unequivocally. The necessity of awarding enhancements in such cases in order to induce private sector attorneys to "act as private attorney's general, the rationale behind Section 1988's fee provision, is clear merely from the fact that no other attorneys, not even public interest

groups like the ACLU, would take on this challenge. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989).

    I declare, under penalties of perjury, that the foregoing is true and correct to the best of my knowledge, information, opinion, and belief.

_____
MICHAEL G. MCLAREN

DATE: June 21, 2023