# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| G.S., et al., | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )    No. 2:21-cv-02552-SHL-atc |
| | ) |
| GOVERNOR BILL LEE, in his official | ) |
| capacity as GOVERNOR OF TENNESSEE, | ) |
| | ) |
|     Defendant. | ) |

## ORDER GRANTING PLAINTIFFS' RENEWED MOTION AND SUPPLEMENTAL REQUEST FOR ATTORNEY'S FEES AND COSTS

As the Court previously determined that Plaintiffs are the prevailing party in this litigation, this Order addresses the only remaining issue: Plaintiffs' award of attorney's fees and costs. Before the Court are Plaintiffs' Motion for Interim Award of Attorney's Fees and Costs ("Motion for Interim Award"), (ECF No. 101), Defendant Governor Bill Lee's Response,[1] (ECF No. 107), Plaintiffs' Reply, (ECF No. 111), and Plaintiffs' Notice of Renewal of Motion and Memorandum for Attorneys' Fees and Costs and of Supplemental Authority for Same ("Renewed Motion") (ECF No. 128); and Plaintiffs' Supplemental Request for Attorney's Fees, (ECF No. 132), Governor Lee's Response, (ECF No. 133), and Plaintiffs' Reply. (ECF No. 136.) As outlined below, the Court concludes that Plaintiffs are entitled to $129,398.90 in fees and costs.

### BACKGROUND

This Order concludes the litigation between Plaintiffs, the parents of school-aged,

---

[1] The Court dismissed Defendant Shelby County, Tennessee from the case on March 4, 2022, therefore dismissing all of Plaintiffs' claims against them with prejudice. (ECF Nos. 121 & 123.) Thus, this Order only discusses allegations against Governor Lee.

medically vulnerable children in Shelby County, and Governor Bill Lee, regarding Plaintiffs' claim that Governor Lee's Executive Order No. 84[2] and its progeny violated Plaintiffs' rights to access school under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").  (ECF No. 1 at PageID 5.)  By granting Plaintiffs injunctive relief, the Court found it likely that the Executive Order did violate these rights.[3]

After the Court granted the Preliminary Injunction, Plaintiffs moved for an Interim Award of Attorney's Fees and Costs under 42 U.S.C. § 12205 ("Motion for Interim Award") on December 23, 2021.  (ECF No. 101.)  Governor Lee responded two weeks later, (ECF No. 107), and Plaintiffs replied on January 20, 2022, (ECF No. 111).  That Motion was still pending when, after multiple iterations of Governor Lee's Executive Orders, fluctuating rates of COVID-19 infections and new viral variants, and the Tennessee legislature's passage of the COVID Act, Tenn. Code Ann. §§ 14-1-101 to 14-6-104, the Court granted Governor Lee's Motion to Dismiss this lawsuit based on mootness.  (ECF No. 127.)  Plaintiffs then filed their Notice of Renewal of Motion and Memorandum for Attorneys' Fees and Costs and of Supplemental Authority for Same.  (ECF No. 128, "Renewed Motion.")

Plaintiffs' Renewed Motion argued that they should be considered the prevailing party in this matter, entitling them to attorneys' fees totaling $160,423.13, including a 25% enhancement, and costs totaling $2,605.90.  (ECF No. 101-1.)  In response, Governor Lee argued that Plaintiffs are not prevailing parties, their request for fees does not satisfy the lodestar standard, and their

---

[2] Governor Lee's Executive Order No. 84 provided parents and guardians of children in Tennessee the right to opt their children out of wearing masks in schools.  (ECF No. 122-3 at PageID 1748.)

[3] For a more detailed recitation of the underlying facts of this case, see the Court's Order Granting Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 62.)

billing records fail to meet standard billing practices.  (ECF No. 107.)

In its Order granting in part Plaintiffs' Renewed Motion, (ECF No. 131), the Court concluded that Plaintiffs were the prevailing party because they successfully obtained a preliminary injunction that caused a court-ordered, material and enduring alteration in the legal relationship between the Parties.  Id.; see also Miller v. Caudill, 936 F.3d 442, 448 (6th Cir. 2019).  The Court also ordered Plaintiffs to confirm their final requested amount of attorney's fees, which they did on April 27, 2022.  (ECF No. 132 ("Supplemental Request").)  Their Supplement Request sought an additional 19.3 hours of attorney time, or $8,106.00, and no additional costs.  (Id. at PageID 1805.)  Governor Lee responded to their Supplemental Request on May 6, 2022, (ECF No. 133), and Plaintiffs replied to that Response on May 11, 2022, (ECF No. 136).[4]

Combining the amounts in their Renewed Motion and Supplemental Request, Plaintiffs seek a total of $170,555.63 in attorney's fees, inclusive of a 25% upward adjustment, plus $2,605.90 in costs.  (ECF No. 132 at PageID 1805-06.)  They assert that the requested fees are reasonable and appropriate based on the rates charged by counsel, considering their experience, the complexity of the case and the hours they spent litigating.  (Id.)  In response, Governor Lee urges the Court to reduce their fees by 50%, arguing that Plaintiffs seek non-compensable time and use improper billing practices.[5]  (ECF No. 133 at PageID 1813.)

---

[4] While this Motion was pending, a Joint Notice of Settlement was filed on July 18, 2022.  (ECF No. 137.)  However, on September 13, 2022, Governor Lee filed a Notice stating that the settlement was not approved, therefore notifying the Court that it must rule on this pending Motion.  (ECF No. 138.)

[5] Governor Lee continues to argue that Plaintiffs should not be considered "prevailing parties" entitled to an award of attorney's fees.  (ECF No. 133 at PageID 1813.)  However, the Court does not entertain this contention again as that determination was already made.

## LEGAL STANDARD

The prevailing party in an action to enforce civil rights under the ADA is entitled to recover reasonable attorney's fees, including litigation expenses and costs. 42 U.S.C. § 12205. The reasonableness of a fee award is determined by the "lodestar" amount, which is calculated by multiplying the number of hours spent on the litigation by an attorney's hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Parties seeking attorney's fees have the burden of providing evidence of the hours worked and rates claimed. Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 242 (1985). In this district, the Local Rules require parties to submit an affidavit or declaration of counsel detailing the number of hours spent on each aspect of the case and an affidavit or declaration from another attorney in the community, who is not otherwise involved in the case, setting out the prevailing rate in the community for similar services. L.R. 54.1(b)(1)-(2). Trial courts have broad discretion to determine what constitutes a reasonable hourly rate but should assess the prevailing market rate in the relevant community when evaluating a request for attorney's fees. Waldo v. Consumers Energy Co., 726 F.3d 802, 821 (6th Cir. 2013). Once parties seeking attorney's fees establish that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be reasonable and recoverable. Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 552-53 (6th Cir. 2008).

## ANALYSIS

Plaintiffs' Motion, Renewed Motion, and Supplemental Request together seek an award totaling $173,161.53 in attorney's fees and costs, including a 25% enhancement. (ECF No. 132 at PageID 1805-06.) In support of the reasonableness of their request, Plaintiffs submit an itemized bill detailing their attorneys' fees and costs, (ECF No. 101-2), affidavits from their Counsel attesting to the accuracy of the time billed, (ECF Nos. 101-1, 101-3 & 101-4), and

affidavits from two qualified attorneys in the community certifying that counsel's requested rates are comparable to the market rate.  (ECF Nos. 101-5 & 101-6.)

In their initial Motion for Interim Award, Plaintiffs assert that their counsel incurred 334.2 hours of work on this case, amounting to $128,338.50 of attorney time, plus a 25% upward adjustment to bring the total amount to $160,423.13.  (ECF No. 101 at PageID 1525.)  They also seek $2,605.90 in costs.[6]  (Id.)  In their Supplemental Request, Plaintiffs assert that their counsel incurred an additional 19.3 hours of attorney time, or $8,106.00, and no additional costs.  (ECF No. 132 at PageID 1805.)  Renewing their request for a 25% upward adjustment in fees, Plaintiffs ultimately seek a total of $170,555.63 in attorney's fees plus $2,605.90 in costs.  (Id. at PageID 1805-06.)

Governor Lee contests Plaintiffs' entire request, except the hourly rate requested by Mr. Donati.  He argues that (1) the hourly rates requested by all other counsel should be reduced, (2) Plaintiffs fail to present specific evidence of rare or exceptional circumstances that would justify a 25% enhancement of the lodestar rate, and (3) their billing entries are unreviewably vague, reflect overstaffing of the case and overbilling for the same activities, and impermissibly include time spent vetting potential plaintiffs.  (ECF No. 107.)  In response to Plaintiffs' supplemental fee request, Governor Lee again seeks a 50% reduction, arguing that Plaintiffs request fees for non-billable clerical work, tasks solely related to claims against Shelby County, and "vague, improperly billed, or overstaffed or duplicative time entries."  (ECF No. 133 at PageID 1814.)

---

[6] Governor Lee does not object to this amount, and the Court finds it reasonable.  It therefore **GRANTS** Plaintiffs' request for such an amount.

Based on the nature of this case, the skills of counsel, and the market rate for attorneys in the community, the Court first concludes that Plaintiffs have met their burden of establishing the reasonableness of Mr. Donati's hourly rate.  However, Plaintiffs' requested rates for the other three counsel appear to be an upward adjustment from what the Court considers a reasonable fee. The Court therefore sets a reasonable fee for these three counsel and adjusts the fee slightly upward to account for the risk of loss counsel confronted when taking the case.

The Court also finds that Plaintiffs have met their burden of establishing the reasonableness of hours spent on the case.  While the Court agrees with Governor Lee that attorney hours spent recruiting Plaintiffs or responding to media inquiries are not recoverable and Plaintiffs have not shown cause for a fee enhancement, Plaintiffs' request is otherwise reasonable and appropriate.

Finally, the supplemental fee request – opposed by Governor Lee only as to the reasonableness of hours spent – is primarily decided on the same terms as the original request. Plaintiffs meet their burden of establishing the reasonableness of the hours spent on this matter. However, the Court agrees with Governor Lee that the fees should be reduced to exclude hours that Plaintiff's counsel spent on unrelated issues.

Each issue is addressed in detail below.

**I.   Lodestar Calculation**

    A.   <u>Reasonableness of Rates</u>

District courts maintain broad discretion to determine the reasonableness of an attorney's hourly rate as a component of the lodestar computation.  <u>Wayne v. Vill. of Sebring</u>, 36 F.3d 517, 533 (6th Cir. 1994).  To make that determination, the Court must assess "the prevailing market rate in the relevant community," which is "that rate at which lawyers of comparable skill and

experience can reasonably expect to command within the venue of the court of record." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000).  A court may consider "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests."  Van Horn v. Nationwide Prop. and Cas. Ins. Co., 436 F. App'x 496, 499 (6th Cir. 2011).

Plaintiffs contend that their requested hourly rates for counsel Ashby ($420), Timmons ($420), Edgington ($275), and Donati ($325) are reasonable based on each attorney's experience and their rates from previous cases.  (ECF No. 101-1 at PageID 1532-33 (citing Turnage v. Oldham, No. 2:16-cv-02907, 2021 U.S.  Dist. LEXIS 239877 (W.D. Tenn. Dec. 9, 2021) for Mr. Timmons and Mr. Edgington's rates); ECF No. 111 at PageID 1686 (referring to Goza v. Memphis Light, Gas and Water Div., No. 2:17-cv-2873, 2019 WL 5855705, at *2 (W.D. Tenn. Oct. 8, 2019) for Mr. Ashby's rates).)  While referencing these cases, they equally emphasize that this case "must be assessed on its own merits," given the "novelty and complexity of this case, the extensive work that went into its litigation, and the significant results."  (ECF No. 111 at PageID 1683.)  In addition, they argue specifically that Mr. Ashby is billing $420 per hour "due to the complexity of the matter and due to the fact that representation of Plaintiffs in this matter required him to both set aside cases he was working on and forgo potential new clients." (ECF 101-1 at PageID 1533.)

Plaintiffs also submit affidavits from two lawyers not party to this case who attest that the rates sought by counsel are appropriate in the Western District of Tennessee for work on this specialized issue.  Michael G. McClaren, an attorney at Black McLaren Jones Ryland & Griffee, P.C., opined that the "the current market rate for attorneys handling civil rights cases with the expertise and experience of the attorneys at the Donati Law" is an hourly rate of $425-450 for

7

Mr. Ashby, Mr. Timmons, and Mr. Donati, and a $300-350 hourly rate for Mr. Edgington.  (ECF No. 101-5 at PageID 1569-70.)  He bases his opinion on his own experience and background as a litigator, a review of recent fee rulings in Tennessee and Shelby County, and the 2013 National Law Bar Survey, indicating that, on average, partners at Memphis firms charge a $400 hourly rate.  (Id. at PageID 1566-70.)  Notably, he includes that he customarily charges a $500 hourly rate based on his representation in Turnage, 2021 WL 5855637, at *8, a case in which Mr. Timmons and Mr. Edgington served as co-counsel and received $420 and $275, respectively.  (Id.).

Andrew C. Clarke, an attorney with The Cochran Firm and experienced in civil rights and employment law, echoed his belief in an identical market rate for attorneys handling civil rights cases with the expertise and experience of Plaintiff's counsel.  (ECF No. 101-6 at PageID 1579-80.)  Finally, Plaintiffs note Governor Lee provides "no contravening affidavits or studies demonstrating these rates to be unreasonable."  (ECF No. 111 at PageID 1683.)

In response, Governor Lee argues that, besides Mr. Donati's requested rates, counsel's rates are excessive and should be reduced.  (ECF No. 107.)  First, Governor Lee argues that Mr. Ashby's requested $420 hourly rate is nearly $100 higher than the $325 hourly rate he sought two years ago in Goza, 2019 WL 5855705, and is an upward adjustment from Mr. Ashby's normal hourly billing range of $300 to $375.  (Id. at PageID 1609.)  Further, he argues that the complexity of the case and its priority over other matters are not appropriate to consider as "rare and exceptional" circumstances supporting a fee enhancement.  (Id. at PageID 1609-10.)

As for Mr. Timmons and Mr. Edgington's rates, Governor Lee contends that Plaintiffs' reliance on the awarded fees in Turnage is misplaced because those rates were not contested and were submitted as part of a class action settlement.  (Id. at PageID 1610.)  Instead, he insists that

another recent ADA case, in which Mr. Timmons and Mr. Edgington declared respective hourly rates of $375 and $250, is more analogous.  (Id. (citing Sanders v. Shelby Cnty. Bd. of Educ., No. 2:19-cv-02056-JTF-cgc, 2020 WL 6322811 (W.D. Tenn. Oct. 12, 2021), at ECF 237-1, PageID 4261.)  The Court assesses the reasonableness of each attorneys' hourly rate individually.

### 1.  Mr. Donati

Mr. Donati requests an hourly rate of $325.  Since this rate is uncontested by Governor Lee, and lower than the $425-250 range suggested by Mr. McClaren and Mr. Clarke as the prevailing market rate for someone with his experience, Mr. Donati's hourly rate of $325 is more than reasonable.

### 2.  Mr. Ashby

Mr. Ashby, an experienced practitioner in employment, civil rights, and labor rights issues, (ECF No. 101-1 at PageID 1533), requests an hourly rate of $420.  This request appears to incorporate an upward adjustment based on the "contingency risk assumed by Plaintiff's counsel."  (Id. at PageID 1535.)  Indeed, it departs from Mr. Ashby's normal billing rate of $350 to $375, which is often a starting point for the determination of a valid market rate.  See Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995) (explaining that a shortcut in determining the market rate is to look if the "attorney requesting fees has well-defined billing rates").  There is also no documentation that Mr. Ashby has previously received an hourly rate within the $425-450 range asserted by McClaren and Clarke.  (ECF Nos. 101-5 & 101-6.)

A contingency arrangement is an improper basis to be used for the initial determination of a reasonable fee.  Hamlin v. Charter Twp. of Flint, 165 F.3d 426, 504 (6th Cir. 1999) ("The determination of a reasonable fee is to be conducted by the district court regardless of any

contract between plaintiff and plaintiff's counsel."). The Court therefore reconciles the disparities between the information proffered from affidavits and Mr. Ashby's own billing rates by concluding that an hourly rate of $375 is a fair estimation of the prevailing market rate that would sufficiently encourage competent representation. An hourly rate of $375, the ceiling of Mr. Ashby's normal billing range, is both fair and reasonable in this matter.

Despite the initial non-consideration of a contingency arrangement, the Sixth Circuit has confirmed that

> [T]he contingent nature of the fee may be considered when calculating the reasonable hourly billing rate to provide an allowance for contingent risks assumed by the attorney. . . In other words, the reasonable hourly rate may be adjusted upward to account for the risk of non-payment inherent in a contingency fee arrangement.

Hamlin, 165 F.3d at 438 (emphasis added); see, e.g., Sommers-Wilson v. Samsung SDI Am., Inc., No. 16-14259, 2019 WL 6337619, at *9 (E.D. Mich. Nov. 27, 2019). Considering the risk of non-payment, the Court adjusts Mr. Ashby's hourly rate upward to $400.

### 3. Mr. Timmons

Mr. Timmons, commensurate in experience with Mr. Ashby, (see ECF No. 101-1 at PageID 1532-34), likewise requests an hourly rate of $420. The Court finds that a reduced hourly rate of $375 is also reasonable and fair for Mr. Timmons, but adjusts his hourly rate up to $400 based on the contingency risk in a novel case like this.

Two cases referenced by the Parties are instructive to determining a reasonable hourly rate for Mr. Timmons. Plaintiffs assert that Mr. Timmons should get the same $420 hourly rate as he received in Turnage, 2021 WL 5855637, at *8, a case in which he helped represent a consolidated plaintiff class alleging §§ 1983 and 1988 claims against Defendants involving the Shelby County Jail. That case lasted for five years, and the requested hourly rates by all class

counsel were uncontested (and awarded as fair and reasonable).  Id.

On the other hand, Governor Lee relies on Sanders, 2020 WL 6322811, in which Mr. Timmons successfully represented a plaintiff when a jury found that the Shelby County Board of Education failed to provide reasonable accommodations to a physically disabled student.  There, Mr. Timmons provided representation on a contingency basis and combed through thousands of pages of medical records to understand the plaintiff's medical conditions.  The three-year long litigation required counsel to litigate issues of education, civil rights and disability rights.  Mr. Timmons requested a $375 hourly rate.  (Plaintiff's Motion for Attorney's Fees and Costs and Incorporated Memorandum in Support Thereof, Sanders, 2020 WL 6322811, ECF No. 237-1 at PageID 4249.)  The issue of attorney's fees is still pending in Sanders.

While the Court does not presume to know how the Sanders court will rule as to the reasonableness of Mr. Timmons' requested fees, its circumstances – including the allegations of ADA violations and student-focused subject matter – are analogous here.  While this litigation involves class representation, unlike Sanders, counsel did not litigate class certification before the case was rendered moot.  The Court finds that the requested fee amount of $375 in Sanders, a comparable case, could parallel these circumstances.  Thus, the Court determines that an hourly rate of $375 is fair and reasonable for Mr. Timmons.  Similar to Mr. Ashby, however, the Court adjusts his hourly rate upward to $400 based on the considerable risk of non-payment.

### 4.  Mr. Edgington

Mr. Edgington's rates are considered similarly to Mr. Timmons but incorporate his level of experience and expertise as a newly minted civil rights lawyer.  (See ECF No. 101-1 at PageID 1533-34.)  The Court again finds the pending Sanders case analogous to this litigation, and the $250 hourly rate requested there by Mr. Edgington is also fair and reasonable for this

11

matter.  (See Sanders, 2020 WL 6322811, ECF No. 237 at PageID 4249.)  In line with the other

upward adjustments, the Court adjusts Mr. Edgington's hourly rate to $260, based on the risk

inherent in this contingency arrangement.

      B.  Reasonableness of Hours Spent

Turning to the second element of a lodestar calculation, the Court evaluates the

reasonableness of the hours Plaintiff's counsel spent on this litigation.  Attorneys seeking fees

and costs are obligated "to 'maintain billing time records that are sufficiently detailed to enable

courts to review the reasonableness of the hours expended.'"  Smith v. Service Master Corp., 592

F. App'x 363, 371 (6th Cir. 2014) (quoting Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169,

1177 (6th Cir. 1990)).  While not required to record the minute-by-minute details of their work,

counsel should "'identify the general subject matter of . . . time expenditures.'"  Id. (quoting

Hensley, 461 U.S. at 437 n.12.).  Thus, billing records will suffice when they offer "'sufficient

detail and probative value' for the court to determine the legitimacy of the hours expended."

Monroe v. FTS USA, LLC, No. 2:08-cv-02100-JTF-cgc, 2014 U.S. Dist. LEXIS 128451, *23-24

(W.D. Tenn. July 28, 2014) (citing Imwalle, 515 F.3d at 553-54 (finding time entries such as

"conference with," "research," "review file," "review documents," etc. sufficiently descriptive

when read in context of whole billing statement and the litigation timeline)).

Plaintiffs have met their initial burden of providing proof as to the actual hours spent by

their counsel.  Disabled Patriots of Am., Inc. v. Beverly Terrace, Ltd., No. 1:06-cv-3063, 2008

WL 4426344, at *4 (N.D. Ohio Sept. 25, 2008).  In their Motion for Interim Fees, Plaintiffs state

that their counsel worked 334.2 hours.  (ECF No. 101-1 at PageID 1531-32.)  Specifically, Bryce

Ashby worked 138.1 hours; Brice Timmons worked 104.2 hours; Craig Edgington worked 66.9

hours; and Robert Donati worked 25 hours.  (Id.)  They assert that these hours were spent

pursuing "largely undeveloped" legal theories, and that counsel interviewed and prepared

plaintiffs; identified, prepared and presented expert testimony; and prepared written pleadings,

pre- and post-hearing briefs, and procedural filings.  (Id. at PageID 1531.)  Overall, they assert

that their counsel "achieved the first injunctive relief in the nation as it pertained to state

overreach into right[s] protected by . . . the ADA and [ ] Section 504."  (Id. at PageID 1531.)

In response, Governor Lee argues for a 50% across-the-board reduction in Plaintiff's

attorney's fees.  (ECF No. 107 at PageID 1618.)  He contends that Plaintiffs' billing entries were

vague, used impermissible block billing, and were duplicative.  (Id. at PageID 1614-15.)  He also

argues that Plaintiffs overstaffed the case, permitting higher-paid attorneys to duplicate efforts

and complete work that a lesser-paid attorney could have done.  (Id. at PageID 1615-17.)  The

Court considers each of Governor Lee's complaints in turn.

### 1.  Block Billing and Vagueness

Governor Lee argues that Plaintiffs' use of vague entries and block billing prevents the

court from "review[ing] the reasonableness of the time spent on a specific task."  (Id. at PageID

1615.)  Relying on Howe v. City of Akron, 705 F. App'x 376, 383 (6th Cir. 2017) (affirming a

fee reduction due to block billing and insufficient descriptions), Governor Lee argues that each

counsel's entries are plagued by vagueness and are therefore insufficient.  Specifically, he

contends that Mr. Donati only billed hours to "communicate;" Mr. Ashby listed "research" for

billed work on three days and billed four hours for emails, conferencing with counsel, and

reviewing filings and declarations; and Mr. Edgington, Timmons, and Ashby each billed 2.2

hours for the unspecified "preparation for temporary restraining order hearing" on August 30,

2021.  (ECF No. 107 at PageID 1615.)

In response, Plaintiffs argue that there are no vagueness concerns when the challenged

billing lines are read within the context of the entire billing statement and the timeline of the litigation.  For instance, they state that Mr. Ashby's "research" and "research claims" entries, when read within this context, refer to the drafting of the Complaint.  (ECF No. 111 at PageID 1685.)  They also argue that a court would only reduce fees based on block-billing "where block-billed entries include non-compensable tasks."  (Id. at PageID 1685-86 (citing Miller v. Davis, 267 F. Supp. 3d 961, 996-97 (E.D. Ky. 2017), aff'd sub nom. Miller v. Caudill, 936 F.3d 442 (6th Cir. 2019)).)  Additionally, Plaintiffs point to instances in which courts have found similar methods of itemization appropriate in other cases, such as itemizing tasks in an entry without dating their specific times.  (Id. at PageID 1686 (citing, inter alia, Goza, 2019 WL 5855705, adopted by 2019 WL 5847849 (W.D. Tenn. Nov. 7, 2019); Oakley v. City of Memphis, No. 06-2276, 2012 WL 2682755, at *3 (W.D. Tenn. June 14, 2012), report and recommendation adopted, No. 06-2276, 2012 WL 2681822 (W.D. Tenn. July 6, 2012), aff'd, 566 F. App'x 425 (6th Cir. 2014)).)

Upon review, Plaintiffs' billing records appear sufficiently detailed to determine the reasonableness of each stated task.  See Ne. Ohio Coal. for the Homeless v. Husted, 831 F.3d 686, 705 n.7 (6th Cir. 2016) (holding that block billing "'can be sufficient' if the description of the work performed is adequate").  "Requiring the district court to parse the bills in even greater detail would be tantamount to requiring a complete audit."  Howe, 705 F. App'x at 382.  For instance, logic dictates that tasks of "research" and "research[ing] claims" may predate the development of legal theories used in this litigation, as counsel began to develop these theories on August 23, 2021.  (See ECF No. 101-2 at PageID 1543.)  As for the entries stating that there was "in firm" communication with co-counsel on August 22, 2021, (see id. at PageID 1554), co-counsel may sometimes need to discuss strategy – particularly five days before filing a

complaint.  Further, Plaintiffs' explanation that Mr. Timmons, Ashby, and Edgington prepared for the Temporary Restraining Order hearing for 2.2 hours together is not unreasonable when both Shelby County and Governor Lee filed their Responses right before the hearing took place. (ECF Nos. 24 & 25.)  Finally, Governor Lee does not argue that Plaintiffs' entries include non-compensable tasks, such as clerical work, which would prohibit the Court from discerning the exact amount of non-compensable time included in the requested hours.  See Miller, 267 F. Supp. 3d at 997.  The Court need not audit these records to conclude that an "across-the-board" fee reduction is not warranted on this basis.  See Howe v. City of Akron, No. 5:06-cv-2779, 2016 WL 916701, at *12 (N.D. Ohio Mar. 10, 2016), aff'd, 705 F. App'x 376 (6th Cir. 2017).

## 2.  Overstaffing

Another argument for reduction is Governor Lee's insistence that Plaintiffs' fee entries reflect that they overstaffed the case, billed time for communicating with one another and reviewing "the same documents, on the same day, for the same amount of time," and billed the most hours for the attorney with the highest rate and the fewest hours for the attorney with the lowest.  (ECF No. 107 at PageID 1616-17.)

In response to Governor Lee's portrayal, Plaintiffs assert that the participation of three primary attorneys[7] – the same number of attorneys representing the Governor – was critical during the 45-day intensive litigation, particularly in moments of "all hands on deck" work like formulating a Reply to the Government's Response the night after the hearing on the Temporary Restraining Order.  (ECF No. 111 at PageID 1686-87 (citing ECF No. 28 at PageID 224).)

Hours are not reasonably spent when they are "excessive, redundant, or otherwise

---

[7] The Court presumes that Plaintiffs exclude Mr. Donati here, as he billed only 25 hours.  (See ECF No. 101-1 at PageID 1532.)

unnecessary." Hensley, 461 U.S. at 434.  Along those same lines, there is a concern with the potential "over-utilization of partners and/or senior level attorneys." See Monroe, 2014 U.S. Dist. LEXIS 128451, at *20 (internal citations omitted).  But after examining the time entries and billable hours of Plaintiffs' counsel, the Court does not find that multiple attorneys duplicated efforts when working on a single task.  See id. at *21.  It appears that counsel primarily overlapped when reviewing and drafting significant documents such as the Complaint, the Motion for TRO, and Motion for Class Certification, analyzing Defendants' responses to those motions and preparing replies, preparing witnesses and the presentation of evidence for a hearing on injunctive relief, and reviewing emails regarding legal issues or amicus briefs.  (ECF No. 107-3.)  Moreover, the overlap most frequently occurred when Mr. Edgington, the least senior attorney, had the senior oversight of Mr. Timmons or Mr. Ashby.  (Id.)  As specialists in disability and civil rights law working on a novel application of these laws, counsel's research in these areas and consultations with one another are "quite necessary for the continued competency of an attorney's practice in his or her specialized area of law."  Monroe, 2014 U.S. Dist. LEXIS 128451, at *22.  Moreover, time spent by counsel conferring "does not automatically constitute duplication of efforts."  Sigley v. Kuhn, 205 F.3d 1341, at *8 (6th Cir. 2000) (unpublished table decision).  Here, the billing sheets do not reflect an abundance of intra-office communications that would be deemed excessive.  The Court will not reduce fees on this basis.

In contrast, in the cases cited by Governor Lee, courts were concerned with the excessiveness of hundreds of hours collectively spent by the same attorneys drafting and reviewing non-dispositive motions, especially in light of counsel's experience.  See Howe, 2016 WL 916701, at *10; see also Ky. Rest. Concepts Inc. v. City of Louisville, 117 F. App'x 415,

419-20 (6th Cir. 2004) (affirming a fee reduction when two law firms and out-of-state attorneys represented plaintiffs). Given the different circumstances of this matter, the Court does not find these cases persuasive.

### 3. Pre-Litigation Fees

Governor Lee next argues that Plaintiffs impermissibly billed time for vetting potential plaintiffs. (ECF No. 107 at PageID 1617 (citing, inter alia, Gratz v. Bollinger, 353 F. Supp. 2d 929 at 944 (E.D. Mich. 2005); Kelly v. Corrigan, 890 F. Supp. 2d 778, 786 (E.D. Mich. 2012); Greater Los Angeles Council on Deafness v. Cmty. Television of S. Cal., 813 F.2d 217, 221 (9th Cir. 1987)).) Plaintiffs respond that their pre-litigation fees related to potential plaintiffs should be included because they "required extensive interviews and vetting on behalf of the class due to its issues of standing and IDEA exhaustion," issues that were critical to the success of the litigation. (ECF No. 111 at PageID 1688 (citing Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1251 (10th Cir. 1998) (noting that, "[i]n some instances, such as when the litigation involves particularly difficult questions of standing, mootness, or ripeness, attorneys may be awarded time necessary to determine who should be the appropriate plaintiffs or whether the suit may even be brought.").) The Court agrees with Governor Lee.

"Recruitment and selection of appropriate plaintiffs is an indispensable part of much public litigation," including when issues related to standing and administrative exhaustion are at stake. See Tennessee State Conf. of the N.A.A.C.P. v. Hargett, No. 3:19-cv-00365, 2021 WL 4441262, at *8–9 (M.D. Tenn. Sept. 28, 2021). However, the caselaw on whether this aspect of civil rights litigation is actually compensable is "mixed." Id.; see Unified Sch. Dist. No. 233, 157 F.3d at 1251 ("In some instances, such as when the litigation involves particularly difficult questions of standing, mootness, or ripeness, attorneys may be awarded time necessary to

determine who should be the appropriate plaintiffs or whether the suit may even be brought.");
but see Kelly, 890 F. Supp. 2d at 786 ("The subject matter of the work done prior to agreeing to
represent an actual client may be relevant to the litigation ultimately initiated but . . . it is not
something that should be included in the attorney fee award under § 1988.").  The choice of
whether these fees are compensable is not simply the principle of whether they should be
awarded, but whether, "in the context of ordinary practices in the legal community," they are
awarded and are therefore reasonable to award.  Hargett, 2021 WL 4441262, at *8.

Here, the Court aligns with those courts that have denied awarding fees for plaintiff
selection.  Practically, a court awards attorney's fees to a prevailing party, and not to counsel
who do not yet represent a party in litigation.  In other words,

> "when a client retains an attorney at a particular rate, he is typically paying for all
> of that attorney's preexisting expertise, including his preparation to take on cases
> of the type at issue.  The rate . . . captures the value of the work performed before
> the representation.  There is no need to pay for that work twice."

Thomas v. Long, No. 3:17-cv-00005, 2020 WL 5530232, at *13 (M.D. Tenn. Sept. 15, 2020);
see also Hargett, 2020 WL 4441262, at *8 ("Client recruitment activities, however, are not made
in furtherance of the claims of any individual client, but rather are done in furtherance of the
organizational mission for which the eventual plaintiffs' claims will serve as a vehicle.").
Indeed, "if the court were to permit recovery for all work that was ultimately necessary to the
plaintiffs' success, there would be very little by way of a limiting principle to stop that process
merely at the client selection and vetting process."  See Thomas, 2020 WL 5530232, at *12.
Finding recruitment efforts non-compensable, the Court will exclude them from its final fee
calculation.

### 4.  Communicating with media

Governor Lee also contends that Plaintiffs impermissibly billed time for communicating

with media.  (ECF No. 107 at PageID 1617 (citing, e.g., Greater Los Angeles Council on Deafness, 813 F.2d).)  Plaintiffs do not respond to this argument, and the Court therefore finds Lee's argument well-taken.  The Court will therefore exclude them from its final fee calculation.

### 5.  Overall reduction

Governor Lee seeks a 50% across-the-board reduction based on the asserted deficiencies in Plaintiffs' fee request.  Plaintiffs respond that Governor Lee's cited cases were "dramatic cases of attorney malfeasance" supporting reduction, not "miscellaneous gripes about attorney's fees."  (ECF No. 111 at PageID 1687 (citing Richard v. Caliber Home Loans, Inc., 832 F. App'x 940 (6th Cir. 2020); Howe, 2016 WL 916701).)

The Court does not find that a reduction of 50% is supported here.  Since Plaintiffs' deficient entries are identifiable, the Court instead reduces their fee amount by each entry related to communication with potential clients and communication with media sources.[8]  After these reductions, Plaintiffs' counsel billed a total of 327.5 compensable hours.

### C.  Lodestar Calculation

As explained above, the Court concludes that (1) Mr. Donati's requested hourly rate of $325 is reasonable, (2) Mr. Timmons and Mr. Ashby are accorded a $400 hourly rate adjusted to reflect the risk of the contingency arrangement, and (3) Mr. Edgington is accorded a $260 hourly rate reflecting the same risk.  The Court also identified specific billing entries including non-compensable communication with media and plaintiff selection and excluded those hours before calculating the following lodestar amount regarding Plaintiffs' Renewed Motion.  For the

---

[8] For Mr. Donati, this results in a collective 2.4 hour reduction for communications he had with potential clients on August 22, 25, 27, 28, 30, and 31, 2021.  For Mr. Edgington and Mr. Timmons, this results in a reduction of .1 hour for both attorneys for communicating with media on August 30, 2021.  And for Mr. Ashby, this results in a 4.1 hour reduction tide to time he spent talking with potential clients on August 20, 2021.  (See ECF No. 107-3.)

requested hours in the Renewed Motion, the Court reduces Mr. Donati's hours from 25 to 22.6 hours; Mr. Ashby's hours from 138.1 to 134 hours; Mr. Timmons' hours from 104.2 to 104.1 hours; and Mr. Edgington's hours from 66.9 to 66.8 hours.  The lodestar determination is therefore:

| Fees | | |
|---|---|---|
| Mr. Donati | 22.6 hours x $325.00 / hour | $7,345.00 |
| Mr. Ashby | 134 hours x $400.00 / hour | $53,600.00 |
| Mr. Timmons | 104.1 x $400.00 / hour | $41,640.00 |
| Mr. Edgington | 66.8 hours x $260.00 / hour | $17,368.00 |
| | | **$119,953.00** |

| Costs | **$2,605.90** |
|---|---|

| TOTAL | **$122,558.90** |
|---|---|

## II.    Fee Enhancement

The Court now turns to Plaintiffs' request for a fee enhancement.  Despite the "strong presumption" that the prevailing party is entitled to its full lodestar fee, see City of Burlington v. Dague, 505 U.S. 557, 562 (1992), a district court also maintains the discretion to adjust the lodestar fee upwards or downwards, depending on the circumstances of the particular case. Moore v. Freeman, 355 F.3d 558, 565 (6th Cir. 2004).  Fee enhancements to the lodestar calculation are permissible only in rare and exceptional circumstances, requiring the party seeking an enhancement to provide specific evidence that the lodestar fee would not have been adequate to attract competent counsel.  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552-53 (2010).

In Hensley v. Eckerhart, the Supreme Court approved the consideration of twelve factors, originally listed in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), for determining whether and to what extent the lodestar should be adjusted.  461 U.S. 424, 430,

n.3 (1983).  The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in the similar cases.  Id.  The "most critical factor [in the adjustment calculation] is the degree of success obtained."  Hensley, 461 U.S. at 436.

Plaintiffs request an upward adjustment of 25%, suggesting that it is appropriate because of the contingency risk assumed by their counsel, the relative resource disadvantage of their counsel as "small firm practitioners" compared to defense counsel, the preclusion of taking on other matters due to the time-intensity of this case, the relative "undesirab[ility]" of this case due to its novelty, and the "outstanding result" achieved by counsel.  (ECF No. 101-1 at PageID 1536-37.)

Governor Lee opposes all of Plaintiffs' justifications.  He first contends that the lodestar rate is not enhanced based on contingency representation.  (ECF No. 107 at PageID 1611 (citing City of Burlington, 505 U.S. at 565; B & G Min., Inc. v. Dir., Off. of Workers' Comp. Programs, 522 F.3d 657, 666 (6th Cir. 2008); Davis v. Mut. Life Ins. Co. of N.Y., 6 F.3d 367, 381 (6th Cir. 1993)).)  Next, emphasizing that "relative resource disadvantage" of a small law firm is not a factor considered under Johnson, he argues that the Sixth Circuit has expressly rejected fee enhancement on this basis.  (Id. (citing Davis, 6 F.3d at 381).)  Alternatively, Governor Lee also opposes an enhancement on this ground, arguing that Plaintiffs fail to present specific evidence of that resource disadvantage or its impact because Plaintiffs were represented by four attorneys

21

compared to the Governor's three.  (Id. at PageID 1612.)

Governor Lee also distinguishes Plaintiffs' relied-upon cases for an enhancement based on preclusion of other employment.  He argues that, contrary to Plaintiffs' reference to Freudeman v. Landing of Canton, No. 5:09-cv-175, 2011 WL 13186128 (S.D. Ohio 2011), where the court awarded an enhancement based on an extensive, three-year litigation that resulted in "significant expenditures of time," here, Plaintiffs' counsel billed the vast majority of their hours in a few weeks, engaged in limited discovery, and actually took on other matters during the course of this litigation.  (ECF No. 107 at PageID 1613-14 (citing the other mask-related cases on which counsel worked, R.K. v. Lee, No: 3:21-cv-00853, 2021 WL 5860924 (M.D. Tenn. Dec. 10, 2021); R.K. v. Lee, No. 3:21-cv-00725, 2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021)).)

As to "undesirability," Governor Lee argues that the 11-day lapse between the issuance of the Executive Order and the filing of Plaintiffs' Complaint, the presence of amicus briefs, and the fact that other attorneys filed a similar challenge to the Executive Order in the Eastern District of Tennessee all undercut Plaintiffs' argument.  (ECF No. 107 at PageID 1612-13.) Finally, Governor Lee paints an inferior picture of the results of the litigation, characterizing the reported infection rates in Shelby County as no different from those across Tennessee and arguing that their "claim that their work . . . laid the foundation for each similar case nationwide is directly contradicted by multiple lawsuits based on nearly identical claims that preceded this one."  (Id. at PageID 1614 (citing E.T. v. Paxton, 19 F.4th 760, 763 (5th Cir. 2021) (filed August 17, 2021); Haynes v. DeSantis, No. 1:21-cv-22863, 2021 WL 4236698, at *2, 5 (S.D. Fla. Sept. 15, 2021) (filed August 6, 2021)).)

To begin, federal fee shifting statutes will not enhance overall attorney's fees to compensate for the risk of loss based on contingency representation.  City of Burlington, 505 U.S. at 561-63; Davis, 6 F.3d at 381.  Likewise, since the Sixth Circuit has rejected fee enhancements justified by the impact of litigation on a small law firm, the Court cannot support enhancing fees due to Plaintiffs' relative resource disadvantage as a small firm.  See Davis, 6 F.3d at 381 ("City of Burlington . . . leads us to reject the enhancement of attorneys' fees on the grounds that the litigation in question impinges significantly on a small law practice.").  Plaintiffs' reliance on Brotherton v. Cleveland, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001), is also misplaced, as that court awarded fees under dissimilar circumstances – the prevailing party was a one-attorney firm who remained in class litigation for eleven years.

The Court also agrees with Governor Lee that Plaintiffs were not precluded from taking on other employment.  Indeed, Plaintiffs' counsel litigated other matters at the time of this litigation – see R.K. v. Lee, No: 3:21-cv-00853, 2021 WL 5860924 (M.D. Tenn. Dec. 10, 2021); R.K. v. Lee, No. 3:21-cv-00725, 2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021) – and the condensed nature of this litigation likely permitted counsel to engage in other matters as soon as the Preliminary Injunction was granted.  Plaintiffs' reliance on Freudeman does not impact the Court's conclusion, as that court relied on attorney's fee factors permissible under Ohio state law, not federal law.  See 2011 WL 13186128, at *11.

The novel nature of this case, however, is readily apparent given the unprecedented, in recent times, COVID-19 pandemic, the health measures taken in response, and the new legal arguments made.  "Cases of first impression," such as this one, "generally require more time and effort on the attorney's part . . . [the attorney] should not be penalized for undertaking a case which may 'make new law.'  Instead, he should be appropriately compensated for accepting the

23

challenge." Johnson, 488 F.2d at 718.  While this factor may sometimes weigh in favor of an enhancement, "the difficulty of prosecuting a novel claim is reflected in the lodestar, both in the numbers of hours and the rate charged."  Lee v. Javitch, Block & Rathbone, LLP, 568 F. Supp. 2d 870, 881 (S.D. Ohio 2008) (citing City of Burlington, 505 U.S. at 562).  This factor is thus baked into the Court's previous lodestar analysis, see supra pp. 6-20, and no enhancement will be awarded based on the novelty of the case.

Next, while this litigation was novel, it was not undesirable.  Counsel leapt into action only days after the Executive Order was issued, just as attorneys across the state also did to challenge the Executive Order in other counties.  No fee enhancement will be awarded on that basis.

Finally, the Court does find that Plaintiffs achieved significant results in this litigation. By obtaining injunctive relief, counsel ensured access to school for medically vulnerable children in Shelby County during a time of both heightened medical threat and an urgent need for continued education.  Even if COVID-19 infection rates were similar across Tennessee, as Governor Lee attests, his cited data does not distinguish between infection rates within schools and within the broader community.  But Plaintiffs show that "[m]ost Germantown schools . . . [saw] a drop in reported cases" after the Preliminary Injunction was issued.[9]  While other factors undoubtedly played a role in that drop and this statistic speaks to some, but not all, schools in the county, causing any reduction in COVID-19 infections is meaningful.  Moreover, even if other lawsuits were lodged in different states, this successful injunction was foundational for the success of other lawsuits lodged in Tennessee and Kentucky.  See, e.g., R.K. by & through J.K.,

---

[9] See Abigail Warren, Germantown schools see fewer COVID-19 cases following judge's order, DAILY MEMPHIAN (Sept. 17, 2021, updated Sept. 20, 2021), available at https://dailymemphian.com/article/24153/masks-and-covid-in-schools-germantown-gmsd

2021 WL 5860924, at *11 (M.D. Tenn. Dec. 10, 2021); <u>S.B. by & through M.B. v. Lee</u>, No. 3:21-cv-00317, 2021 WL 4755619, at *8 (E.D. Tenn. Oct. 12, 2021); <u>K.B. v. Calloway Cnty. Sch. Dist. Bd. of Educ.</u>, No. 5:21-CV-148 (TBR), 2021 WL 4888850, at *2 (W.D. Ky. Oct. 19, 2021).

Based on the litany of factors discussed, the Court concludes that there was great – not outstanding – success obtained in this case. However, the absence of any other factors supporting enhancement leads the Court to reject a fee enhancement of 25%. <u>See</u> <u>Geier v. Sundquist</u>, 372 F.3d 784, 794 (6th Cir. 2004) (finding that "factors such as 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation . . . cannot serve as independent bases for increasing the basic fee award.").

## III.     Supplemental Motion for Payment of Attorneys' Fees

Plaintiffs' Supplemental Motion requests fees for 19.3 hours of attorney time, or $8,106.00, and a renewed request for a 25% enhancement "due to the complexity and risk of this matter." (ECF No. 132 at PageID 1805-06.) Having rejected the 25% enhancement for their original request, the Court similarly denies it here and only considers the reasonableness of the rates and hours involved to calculate the lodestar.

At the outset, Plaintiffs have met their burden of providing evidence of the hours worked and rates claimed in the supplemental request. <u>Webb</u>, 471 U.S. at 242. Governor Lee only opposes the number of hours claimed by Plaintiffs. (ECF No. 133.)

The Governor offers similar arguments in response to Plaintiffs' requested supplemental fees as he did to the first request. (<u>See</u> ECF No. 133 at PageID 1814.) First, Governor Lee argues that Plaintiffs improperly seek fees for clerical work, including electronically filing (1) a Rule 26(f) report, (2) a motion to extend a page limit, (3) a reply, and (4) a motion to set aside an

ADR requirement along with a proposed order.  (Id. at PageID 1815-16.)  Second, he argues that Plaintiffs improperly seek fees for "time spent on work related solely to Shelby County's filings," including a response to Shelby County's motion for judgment on the pleadings when Plaintiffs have not been determined as the "prevailing party" regarding claims against Shelby County.  (Id. at PageID 1816.)  Third, Governor Lee argues that Plaintiffs' supplemental fee request includes unreasonably vague time entries and improper block billing.  (Id. at PageID 1817-19.)  Finally, arguing that Plaintiffs' request includes time when they were overstaffed and duplicating efforts, Governor Lee emphasizes that Mr. Ashby and Mr. Timmons duplicated the review of a scheduling order and a reply in support of a motion to dismiss.  (Id. at PageID 1819.)

Plaintiffs replied specifically to address Governor Lee's characterization of "clerical" tasks.  (ECF No. 136.)  Targeting Governor Lee's complaint of attorneys' time spent filing, Plaintiffs argue that, under Appendix A to the Local Rules, an attorney is required to sign and file documents.  (Id. at PageID 1831-32 (citing W.D. Tenn. L.R., Appx. A Rule 1.3).)  Based on that requirement, Plaintiffs emphasize that this Court found time spent filing to be compensable in a previous case.  (Id. (citing Goza, 2019 WL 5855705).)

The Court first addresses the arguments raised in the supplemental fee request for improper clerical work and time spent on Shelby County-related filings.  Regarding electronic filing, Plaintiffs correctly cite to the Local Rules Appendix, stating that only attorneys who are admitted in the Western District may be an E-Filer. W.D. Tenn. L.R., Appx. A.  This Appendix therefore establishes that, "rather than purely clerical tasks, the attorneys were performing legal work when they drafted, edited, and then filed their documents per the Local Rules."  See Goza, 2019 WL 5855705, at *4.  The Court will not reduce Plaintiffs' award of attorney's fees on this basis.

26

As for the arguments opposing the inclusion of Shelby-County-related filings, Plaintiffs do not address that objection in their Reply, and the Court finds this reasoning persuasive. The Court will therefore exclude attorney's fees based on filings solely related to Shelby County.

Otherwise, the Court views the Governor's arguments about vagueness, improper block billing, and duplication of efforts in the same light as it did for Plaintiffs' original request. The Court finds these entries reasonably detailed and will not reduce the award on these grounds.

The Court therefore reduces Plaintiffs' requested hours in their Supplemental Request as follows: Mr. Ashby's hours are reduced from 12.9 to 11.3 and Mr. Timmons' hours reduced from 6.7 to 5.8 hours. Multiplying these hours by the applicable hourly rates as previously determined, Plaintiffs' lodestar amount for the Supplemental Motion is $6,840 ($4,520 for Mr. Ashby and $2,320 for Mr. Timmons, both at $400/hour rates).

## CONCLUSION

In sum, the amounts awarded to Plaintiffs' counsel are as followed:

| Fees | | |
|---|---|---|
| Mr. Donati | 22.6 hours x $325.00 per hour | $7,345.00 |
| Mr. Ashby | 145.3 hours (Renewed Motion + **Supplemental Motion**) x $400.00 per hour | $58,120 |
| Mr. Timmons | 109.9 hours (Renewed **Motion + Supplemental Motion**) x $400.00 per hour | $43,960 |
| Mr. Edgington | 66.8 hours x $260.00 per hour | $17,368 |
| | | **$126,793.00** |

| Costs | $2,605.90 |
|---|---|

| TOTAL | $129,398.90 |
|---|---|

**IT IS SO ORDERED**, this 30th day of September, 2022.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE

27